1  Alan Himmelfarb (Cal. Bar. No. 90480)
   KAMBEREDELSON, LLP
2  2757 Leonis Blvd.
   Los Angeles, CA 90058
3  (323) 585-8696
   ahimmelfarb@kamberedelson.com
4
5  *Counsel for Plaintiffs*
   [additional counsel appear on signature page]

6           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
7                   SAN JOSE DIVISION

8  JEFFREY SCHULKEN AND JENIFER          )
   SCHULKEN, individuals, on their own   )
9  behalves and on behalf of all others similarly )
   situated,                             )        No.  C-09-02708-JW
10                                        )
             Plaintiff,                    )        **PLAINTIFFS' FIRST AMENDED**
11                                        )        **CLASS ACTION COMPLAINT**
                                          )        **AND JURY DEMAND**
12 v.                                     )
                                          )        Judge:  Hon. James Ware
13 WASHINGTON MUTUAL BANK,                )
   HENDERSON, NEVADA;  JPMORGAN CHASE )
14 BANK, N.A.,                            )
                                          )
15           Defendants.                   )

16
        Jeffrey and Jenifer Schulken (the "Schulkens" or "Plaintiffs"), for their First Amended
17
   Complaint, allege as follows upon information and belief, based upon, *inter alia*, investigation
18
   conducted by their attorneys, except as to those allegations pertaining to Plaintiffs and their
19
   counsel personally, which are alleged upon personal knowledge:
20
                              **Introduction**
21
        1.      This case is about Defendants' use of false pretenses to illegally suspend and
22
   reduce credit limits on home equity lines of credit ("HELOCs") across the country.  JPMorgan
23
   Chase Bank, N.A. ("Chase"), and its recently acquired division, Washington Mutual Bank
24
   ("WAMU") (collectively "Defendants"), in an attempt to limit their exposure to the risk of
25
   collapse in the United States housing market, have violated Regulation Z and the Truth-in-
26
   Lending Act and have broken contractual promises to their HELOC account holders (collectively
27
   the "Class Members") by claiming that their customers' financial circumstances had materially
28

changed (when they in fact had not) such that the customers would not be able to meet their loan obligations (when they in fact would).  Rather than verifying first whether a customer's financial circumstances had materially changed for the worse, Defendants reduced credit limits and froze accounts at the outset, leaving the customer with the option of appealing but without access to the credit for which he or she had bargained.   As a result of the Defendants' "shoot first, ask questions later approach," the Defendants have collectively denied their customers access to hundreds of millions of dollars of credit at a critical time.

2.     Each member of the Class had a HELOC for which Chase or WAMU reduced the available credit in a manner that was both illegal and unfair.  As a result of Defendants' wrongful actions, Plaintiffs bring this class action on behalf of themselves and the putative class for actual and statutory damages and attorneys' fees under Regulation Z of the Truth-in-Lending Act ("TILA") (15 U.S.C. § 1640(a); 12 C.F.R. § 226.5(b)), equitable and injunctive remedies under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et. seq*.) and damages for breach of contract.

**Nature of the Claim**

3.     As recently as March 2009, Defendants sent a form letter to thousands of their HELOC customers, including Plaintiffs and the other class members, demanding verification of income.  The letter stated:

> We need your help updating your financial information related to your Home Equity Line of Credit (HELOC).  Your account documents allow us to request updated information from you.
>
> Complying with our request is easy:
>
> •     Complete and sign the enclosed Internal Revenue Service (IRS) Form 4506-T where indicated for each Borrower shown above.  Instructions for completing the form are on the following page.  This form allows us to obtain a summary of a specified federal tax return from the IRS.
> •     Provide a copy of a recent paystub for each Borrower and any additional current income documentation you would like to provide.  Please indicate if you are self employed.
> •     Return each completed and signed 4506-T and other documents within 14 days of the date of this letter.  You can fax the documents to 1-866-272-9223 or mail them to:  Washington Mutual Bank, a division of JPMorgan Chase Bank, N.A., Account Management MBO402FL, P.O. Box 3990,

Melbourne, FL 32902-3990.

It is important that you provide this information.  Thank you for your cooperation....

(See "March 13, 2009 Income Verification Request," a true and accurate copy of which is attached as Exhibit A.)

4.      Plaintiffs submitted the necessary information shortly thereafter.  On March 19, 2009, just six days after the date of the Defendants' initial letter, Plaintiffs learned that Defendants had frozen their HELOC while checking their account online.  Plaintiffs then received a letter in an envelope post-marked March 19, 2009.  Inside was a letter dated March 18, 2009, notifying Plaintiffs that their line was being suspended for their failure to submit all the paperwork specified in the letter of March 13, 2009.  (See "Suspension Letter of March 18, 2009," a true and accurate copy of which is attached as Exhibit B.)  During repeated telephone calls to Defendants' customer service personnel, Chase and WAMU subsequently explained that they had not received the necessary documentation, despite the fact their Income Verification Request had requested the documents be provided within 14 days.  Ultimately, Plaintiffs received a form notice advising them that their HELOC account would remain suspended due to their financial circumstances and purported inability to support the loan amount.

5.      Chase and WAMU lacked a sound factual basis for sending these letters and reducing or freezing their customers' HELOC limits.  Defendants knowingly and intentionally falsely claimed that their customers' financial circumstances had changed so as to "trigger" Chase and WAMU's right to freeze or lower the credit limits.  As a result, Defendants, in violation of federal law, reduced the credit limits and/or froze the HELOC accounts of many homeowners, including Plaintiffs, whose financial circumstances had not materially worsened so as give Defendants a reasonable basis for concluding the Plaintiffs and other accountholders would be unable to meet the terms of their loans.

6.      Although federal law allows the creditor to freeze or reduce the line where the creditor reasonably believes that the consumer will be unable to make payments as agreed because of a material change in the consumer's financial circumstances, this exception requires <u>both</u> a

material change in a borrower's financial situation <u>and</u> the creditor's reasonable belief that the borrower will not be able to repay the HELOC account as agreed.  With respect to Plaintiff and the Class, Defendants froze accounts and reduced credit limits where no material changes in the borrowers' financial situations had occurred and the Defendants did not have a reasonable belief that the borrowers would be unable to repay their HELOC accounts as agreed.  As a result, Defendants' intentional systematic, freezing and mass reduction on the limits on their customers' HELOCs, as well as their use of standards that are inconsistent with Regulation Z, was and remains illegal.

7.      Defendants' HELOC reductions are not only illegal; they are patently unconscionable.  On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343.  As part of this law, Chase obtained, on information and belief, approximately $25 billion from an unprecedented $700 billion bailout funded entirely by American taxpayers.  The rationale advanced for the bailout by its proponents was that the banks needed the money to ensure liquidity in the face of the worsening subprime mortgage disaster.

8.      Despite Chase's statements to Congress to the contrary, Defendants have intentionally failed to meet their obligations to their customers and have intentionally deprived those customers of crucial affordable consumer credit at a critical time.

9.      In stark contrast, Defendants' HELOC borrowers such as Plaintiffs, like most American consumers, are struggling in a faltering economy, yet they continue to meet their mortgage obligations.  These customers have incurred appraisal fees, an increased price of credit and reduced credit scores, lost interest and other damages.

**Parties**

10.      **Plaintiffs Jeffrey and Jenifer Schulken:**  Plaintiffs maintain their primary residence in Cupertino, CA (the "subject matter property").  In or around October 2005, Plaintiffs obtained a HELOC in the amount of $250,000 secured by the subject matter property.

11.      **Defendant Washington Mutual Bank, Henderson, Nevada:**  WAMU is a national banking association with its main office located at 2273 North Green Valley Parkway

Henderson, Nevada, 89014.  On September 25, 2008, the United States Office of Thrift Supervision (OTS) seized WAMU from its holding company, Washington Mutual, Inc., and placed WAMU into the receivership of the Federal Deposit Insurance Corporation ("FDIC").  The FDIC sold the banking subsidiaries, minus unsecured debt or equity claims, to Chase for $1.9 billion.  Chase specifically assumed "all mortgage servicing rights and obligations of" WAMU, including WAMU's HELOC accounts.  WAMU is now operated as a subsidiary and/or division of co-Defendant Chase.

12.    **Defendant JPMorgan Chase Bank, N.A.:**  Chase is a national banking association with its main office located at 1111 Polaris Parkway Columbus, OH 43240.  Under the Purchase and Assumption Agreement, Chase specifically assumed "all mortgage servicing rights and obligations of" WAMU, including WAMU's HELOC accounts.  Chase operates and/or controls WAMU as a subsidiary and/or division.

**Jurisdiction and Venue**

13.    This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).  This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendants.  On information and belief, the aggregate of these claims exceeds the sum or value of $5,000,000.  This Court further has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1647, 12 C.F.R. § 226.5(b).  This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

14.    a.    Defendant WAMU is a national banking association whose main offices are in Nevada, and is considered a citizen of Nevada for the purposes of diversity jurisdiction under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).

b.    Defendant Chase is a national banking association whose main offices are in Ohio, and is considered a citizen of Ohio for the purposes of diversity jurisdiction under 28 U.S.C. § 1348 and *Wachovia Bank*, 546 U.S. 303.

15.    Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as a

1    substantial part of the events, circumstances, and omissions giving rise to these claims occurred in

2    this District.

3          16.      This Court has personal jurisdiction over Defendants under Cal. Code Civ. Proc. §

4    410.10 because some of the acts alleged herein were committed in California (specifically in Santa

5    Clara County, California), and because Defendants are registered to do business in this state and

6    actively conduct business in this District.

7                          **Allegations as to Plaintiffs' Individual Claims**

8          17.      In October 2005, Plaintiffs obtained a HELOC agreement secured by the subject

9    matter property in the amount of $250,000.  Plaintiffs obtained the HELOC primarily for personal,

10   family and/or household purposes, including home renovations.

11         18.      On March 13, 2009 Plaintiffs received an Income Verification Request letter from

12   Defendants seeking certain financial information within 14 days.  (See Ex. A.)

13         19.      Plaintiffs complied with the Income Verification Request and submitted financial

14   information over the next several days via facsimile.

15         20.      On March 19, 2009, Plaintiffs discovered, while checking their account via the

16   Defendants' website, that their HELOC had been suspended.  The next day, Plaintiffs received a

17   letter apparently mailed March 19, 2009 and dated March 18, 2009 that notified the Plaintiffs that

18   their line was being suspended for their failure to submit all the paperwork specified in the letter

19   of March 13, 2009.  (See Ex B.)

20         21.      Prior to the HELOC suspension but before notice, Plaintiffs had issued a check to

21   pay their credit card.  This check was dishonored and the Plaintiffs incurred finance charges as a

22   result.

23         22.      Following the suspension, Plaintiffs repeatedly contacted customer service and

24   were provided confusing and often conflicting reasons for how Defendants had determined the

25   Plaintiffs' income justified the suspension.  Plaintiffs were also given inconsistent information

26   with respect to the papers needed by the Defendants to review the account for potential

27

28

1  reinstatement.  Plaintiffs ultimately sent via facsimile over 75 pages worth of financial

2  documentation to Defendants, who steadfastly refused to remove the suspension.

3      23.    At no time did Plaintiffs' income materially change or decrease, and at no time did

4  the Defendants' have a reasonable basis for concluding Plaintiffs, who had always made timely

5  payments on all their loans, would not be able to meet the terms of their loan agreement.  Despite

6  repeated requests, Defendants have refused to remove the suspension.

7      24.    Plaintiffs' HELOC with Defendants was their primary line of credit.  Defendants'

8  reduction of the credit limits on the Schulkens' HELOC dramatically increased the ratio of credit

9  the Schulkens used to the amount of credit he had available.  In turn, on information and belief,

10  Defendants' acts drove up the Schulkens' Credit Utilization Rate ("CUR"), a major component of

11  their credit rating.  In addition to depriving the Schulkens of the availability of their HELOC,

12  Defendants' acts damaged their credit rating and increased the cost of credit to them.

<strong>Class Certification Allegations</strong>

14      25.    Plaintiffs seek certification of a class and one subclass under both Fed. R. Civ. P.

15  23(b)(2) and Rule 23(b)(3).

16      26.    **Definition of the Class:**  Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this

17  Complaint against Defendants on behalf of the "Class," consisting of:

18  All WAMU and Chase HELOC borrowers in the United States who received from
    WAMU or Chase a letter requesting that the borrower submit financial information
19  within 14 days who then had their HELOC credit line suspended or reduced.

20  Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of

21  their families; 2) Defendants, Defendants' subsidiaries, parent companies, successors,

22  predecessors, and any entity in which Defendants or their parent companies have a controlling

23  interest and their current or former employees, officers and directors; 3) persons who properly

24  execute and file a timely request for exclusion from the class; and 4) the legal representatives,

25  successors or assigns of any such excluded persons.

26      Plaintiffs anticipate that amending the Class definition may become necessary following

27  discovery.

28

27.     **Numerosity:**  The exact number of the members of the Class is unknown and is not available to the Schulkens, but it is clear that individual joinder is impracticable.  Defendants sent their generic letters to thousands of mortgagors, and a substantial percentage of the recipients of these letters fall into the definition of the Class.  Class members can be easily identified through Defendants' records and public records.

28.     **Commonality:**  Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members.  These common questions include:

(a)     What were Defendants' criteria for reducing or suspending the credit limits on their HELOCs;

(b)     Whether Defendants reduced or suspended HELOC accounts based on purported material changes in income without a reasonable basis for concluding such a material change had in fact occurred;

(c)     Whether Defendants' criteria for reducing HELOC credit limits and/or suspending HELOC accounts based on phantom material changes in accountholder finances violated Regulation Z;

(d)     Whether Defendants' reduction of the credit limits or account suspensions for purported material changes in income breached the terms of its HELOC agreements;

(e)     Whether Defendants' HELOC agreement terms imposed contractual obligations on Defendants to comply with Regulation Z;

(f)     Whether Defendants' reduction or suspension of the credit limits on their HELOC agreements was unfair and unlawful;

(g)     Whether in those cases where a material change in financial circumstances had in fact occurred, Defendants had a reasonable basis for concluding the material changes would render such customers unable to meet the terms of their HELOC agreements.

(h)     Whether Defendants' contracts and policies improperly purport to allow them to reduce credit limits or freeze HELOC accounts due to immaterial declines in property values or otherwise use triggering events inconsistent with federal law;

(i)     Whether the Schulkens and the Class members are entitled to relief, and the nature of such relief.

29.     **Typicality:**  The Schulkens' claims are typical of the claims of other members of the Class as the Schulkens and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly to the Schulkens and the public.  The California and federal laws under which the Schulkens' claims arise do not conflict with the laws of any other state in any material way.

30.     **Adequate Representation:**  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel competent and experienced in complex class actions.  Plaintiffs have no interest antagonistic to those of the Class or the Subclasses and Defendants have no defenses unique to Plaintiffs.

31.     **Predominance and Superiority:**  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants.  It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendants.  Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

32.     **Policies Generally Applicable to the Class:**  This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to Class as a whole.  The policies of Defendants challenged herein apply and affect members of both Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

### Count I:  Declaratory Relief Under TILA and Regulation Z

33.     Plaintiffs incorporate the above allegations by reference.

34.     The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) prohibit Defendants from changing any of the terms of a mortgage or HELOC, including the credit limit.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).

35.     There is an exception under TILA and Regulation Z for any period in which the creditor reasonably believes that the consumer will be unable to make payments as agreed because of a material change in the consumer's financial circumstances.   This exception requires both a material change in a borrower's financial situation and the creditor's reasonable belief that the borrower will not be able to repay the HELOC account as agreed.  15 U.S.C. § 1647; 12 C.F.R. § 226.5(b(f)(3)(vi), comment 7.  Regulation Z permits an association to suspend or reduce a HELOC account only when the designated circumstances exist, and the regulatory commentary emphasizes that credit privileges must be timely reinstated when those circumstances cease.

36.     Before reducing the limits of their customers' HELOCs, Defendants had the obligation to both ensure that the customers' financial circumstances had in fact materially changed and that if those circumstances had materially changed, that they would reasonably render the customer unable to meet the terms of the agreement.  The Defendants' practice of asking for financial documentation within a certain number of days, and then suspending the line prior to the expiration of those deadlines, and then claiming they have not been provided the necessary information, violates these duties.  Additionally, Defendants reduced the credit limits and/or froze the HELOC accounts of the Class members, including Plaintiffs, whose financial circumstances

1   had not materially worsened and/or where Defendants lacked a reasonable basis for concluding

2   that the accountholders would be unable to meet the terms of their loans.

3      37. Plaintiffs and the Class members have been harmed by being denied credit at a

4   necessary time and incurred damages, such as returned/dishonored check fees and finance charges,

5   due to the Defendants' unfair notice scheme.

6      38. Plaintiffs and the other members of the Class have additionally been harmed

7   because Defendants have knowingly failed to disclose information that would permit Plaintiff and

8   the Class members to fairly determine whether to seek reinstatement, including but not limited to:

9      a. how Defendants determine or define a material change in income or financial

10       circumstances,

11      b. how Defendants compute an accountholder's ability to meet the terms of his or her

12       loan agreement,

13      c. Defendants' actual and specific reasons for the reduction or suspension of the

14       HELOCs,

15      d. the process, procedures, and guidelines pursuant to which Defendants implemented

16       their reduction /suspension of the HELOCs,

17      e. other necessary and material information.

18      39. The Class and Defendants have adverse legal interests, and there is a substantial

19   controversy between the Class and Defendants of sufficient immediacy and reality to warrant the

20   issuance of a declaratory judgment as to whether Defendants' mass reduction of credit limits

21   violates TILA and Regulation Z.

22      40. The Schulkens, on their own behalf and behalf of the other Class members, seek a

23   declaratory judgment under 27 U.S.C. § 2201 that Defendants' mass reduction or suspension of

24   HELOC credit limits in connection with their letters violates TILA and Regulation Z.

**Count II: Violation of TILA and Regulation Z**

26      41. Plaintiffs incorporate the above allegations by reference.

27      42. Defendants knowingly lacked a sufficient factual basis for reducing Plaintiffs' and

28

the Class's credit limits or prohibiting additional extensions of credit.  Defendants lacked a sound factual basis for concluding the financial circumstances had materially changed for the Schulkens and other Class members sufficiently to support reducing the credit limits or prohibiting additional extensions of credit.  Defendants also used improper triggering events for determining when such a "material change" had occurred.

43.      Defendants' suspension of the HELOC for the Schulkens and other Class members' HELOCs violated the Truth-in-Lending Act and Regulation Z.

44.      Defendants' violations of the Truth-in-Lending Act and Regulation Z damaged the Schulkens and the other Class members.  These damages occurred in the form of the increased price of credit, loss of the bargained-for use of the credit line, adverse effects on credit scores, dishonored check and finance charges, and other damages.

45.      The Schulkens, on their own behalf and behalf of the other Class members, seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with a reasonable attorney's fees under 15 U.S.C. § 1640(a)(3).

### Count III: Violation of TILA and Regulation Z

46.      Plaintiffs incorporate the above allegations by reference.

47.      Where a creditor prohibits additional extensions of credit or reduces the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected.  The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action."  Regulation Z, 12 C.F.R. § 226.9(c)(3).

48.      Defendants provided Plaintiffs and, on information and belief, the members of the Class with notices of their HELOC reductions and suspensions that lacked sufficient and necessary information, including the specific reasons for Defendants' actions.

49.      Defendants' initial demand for financial information required that borrowers provide certain financial information within 14 days but failed to apprise borrowers of the consequences of failing to timely respond or that responding timely but with "incomplete"

1   information would result in the immediate suspension of their accounts.

2         50.    Defendants' notices failed to adequately identify the specific reasons for their

3   actions.  The HELOC suspension notices sent by Defendants to Plaintiffs and the Class are further

4   deficient because they do not indicate what change in financial circumstances Defendants consider

5   "material" and do not include what adverse information Defendants obtained from credit agencies

6   that purportedly justified account suspension or reduction.  Without this information, Plaintiffs

7   and other Class members were deprived of critical information needed to determine whether to

8   challenge Defendants' actions and seek account reinstatement.

9         51.    Defendants' violations of the Truth-in-Lending Act and Regulation Z damaged the

10  Schulkens and the other Class members.  These damages occurred in the form of the increased

11  price of credit, adverse effects on credit scores, loss of the bargained-for use of the credit line,

12  dishonored check and finance charges, and other damages.

13        52.    The Schulkens, on their own behalf and behalf of the other Class members, seek

14  actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)

15  (B), and costs of the action, together with a reasonable attorney's fee under 15 U.S.C. §

16  1640(a)(3).

17                                    **Count IV:  Breach of Contract**

18        53.    Plaintiffs incorporate the above allegations by reference.

19        54.    The Schulkens and the other Class members obtained HELOCs from Defendants.

20  The terms of these HELOCs constitute a contract between the Class members and Defendants.

21        55.    The HELOC agreements contain a term that tracks Regulation Z and provides that

22  Defendants may reduce or suspend additional extensions of credit during times when the

23  Defendants "(b) …reasonably believe that you will be unable to fulfill your payment obligations

24  under this Agreement due to a material adverse change in your financial circumstances."

25        56.    The Schulkens and the other Class members made all payments due to Defendants

26  and otherwise fully performed under their HELOCs with Defendants.

27        57.    The availability of credit and the triggering events the lender could use to suspend

28

credit extensions were material terms.

58.     Defendants materially breached the terms of the HELOCs by suspending the HELOC accounts for the Schulkens and other Class members' HELOCs where no material adverse change in financial circumstances had first occurred that would give Defendants a reasonable basis for believing the borrowers would be unable to fulfill their payment obligations under their agreements.

59.     As a result, the Schulkens and the other Class members have suffered damages in the form of the increased price of credit, lost interest, attorneys' fees, adverse effects on credit scores, finance charges and dishonored check fees, the loss of the bargained-for use of the credit limit, and other damages.

60.     The Schulkens, on their own behalf and behalf of the other Class members, seek damages for Defendants' breach of contract, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### Count V: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200

61.     Plaintiffs incorporate the above allegations by reference.

62.     Defendants' reduction or suspension of the credit limit for the Schulkens and other Class members' HELOCs violated TILA and Regulation Z.  With respect to the Class, Defendants' practice of requesting financial information by a deadline, and then proceeding to suspend accounts based on purported failures to submit the requested information well before the deadline was unlawful, unfair, and deceptive.  These unlawful, deceptive, and unfair acts and practices constitute unfair competition in violation of the UCL.

63.     Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices as set forth above.

64.     Defendants have violated the "unlawful" prong of the UCL in that Defendants' conduct was undertaken in violation of TILA and Regulation Z, as alleged above.

65.     Defendants have also violated the "unfair" prong of the UCL by suspending or reducing the HELOC accounts without providing any advance notice (in its notice letters or in its

1   HELOC agreements) that failure to timely provide the requested financial information could

2   constitute grounds for account suspension.  Defendants further acted unfairly and deceptively by

3   requiring that certain financial information be submitted within 14 days but then suspending

4   Plaintiffs' HELOC in only 5 days.  Mandating an arbitrary deadline without identifying the

5   potential ramifications for noncompliance, and then suspending accounts prior to the expiration of

6   that deadline, is an unfair, deceptive and unscrupulous action.

7          66.     Additionally, Defendants' actions caused substantial injury to Plaintiffs and the

8   Class members.  The injury caused by Defendants' conduct is not outweighed by any

9   countervailing benefits to consumers or competition; Defendants' actions benefitted only

10  Defendants while causing nothing but injury to the Class members by wrongfully depriving them

11  of access to affordable credit at a critical time.  The injury caused by Defendants' conduct could

12  not reasonably have been avoided by the Class members themselves, as Defendants exercised their

13  discretion unilaterally to suspend or reduce the HELOC accounts.

14         67.     Defendants have also violated the "fraudulent" prong of the UCL in that

15  Defendants' statements or material omissions to their HELOC customers whose lines Chase

16  and/or WaMu suspended or reduced, made both in writing through their HELOC notices and

17  letters and orally over the telephone through their customer service representatives when

18  aggrieved customers contacted Defendants to discuss the suspensions or reductions, were false and

19  were likely to deceive a reasonable consumer, including Defendants' statements:

20         a.      regarding the availability of credit through the HELOCs;

21         b.      indicating that any potential future reduction of credit through the HELOCs would

22                 only occur through a material adverse change in financial condition;

23         c.      concerning the amount of time that a customer has to respond to Chase's request

24                 for financial information, including the potential consequences of not fully

25                 complying with its information request within the stated 14-day period –

26                 particularly in light of Chase' illustrated willingness to suspend accounts in less

27                 than half that time; and

28

d.      regarding Defendants' purported authority under the customers' HELOC

agreements to demand the customer submit IRS Form 4506T.

68.      Defendants' violations of the UCL damaged Plaintiffs and the Class by causing the

Schulkens and the other Class members to pay money to Defendants in the form of fees, lost

interest, lost opportunity, adversely impacted credit, loss of the bargained-for use of the credit

limit, and other damages.

69.      Plaintiffs and the Class members have also suffered adverse effects to their credit

scores, finance charges from dishonored checks, attorneys' fees and other damages.

70.      The Schulkens, on their own behalf and behalf of the other Class members, seek an

order preliminarily and permanently enjoining Defendants' unfair competition alleged herein and

requiring Defendants to restore HELOC credit limits and cease suspending or reducing HELOCs

in violation of Regulation Z, and individual restitution of property gained at the expense of the

Class members by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as

well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiffs pray that the Court enter judgment and Orders in their favor and

against Defendants as follows:

(a)      Certifying the action as a class action and designating Plaintiffs and their counsel as

representatives of the Class;

(b)      Entering declaratory judgment under 27 U.S.C. § 2201 on Count I that the

Defendants' HELOC reductions violate federal law;

(c)      Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Counts II and III;

(d)      Awarding actual damages on Counts II, III, IV, and V for the Class including but

not limited to appraisal fees, loss of the bargained-for use of the credit limit, the

increased price of credit, dishonored check and finance charges, attorneys' fees,

interest and other damages in an amount to be proved at trial;

(e)      Awarding preliminary and permanent equitable and injunctive relief for the Class,

including enjoining the Defendants from further violations of Regulation Z,

1    restoration of HELOC credit limits, restitution of property gained by the unfair

2    competition alleged herein, and an order for accounting of such property;

3    (f)    Awarding Plaintiffs and the Class reasonable costs and attorneys' fees;

4    (g)    Awarding pre- and post-judgment interest;

5    (h)    Awarding punitive damages; and

6    (i)    Granting such other and further relief as the Court may deem just and proper.

7    **JURY TRIAL DEMAND**

8    The Plaintiffs hereby demand a trial by jury of all issues so triable.

9

10   Dated: December 14, 2009                    JEFFREY AND JENIFER SCHULKEN,
                                                 individually and on behalf of
11                                               a class of similarly situated individuals

12
                                                 By:___/s/ Alan Himmelfarb_____
13                                               Alan Himmelfarb
                                                 KAMBEREDELSON, LLP
14                                               2757 Leonis Blvd.
                                                 Los Angeles, CA 90058
15                                               (323) 585-8696
                                                 ahimmelfarb@kamberedelson.com
16
                                                 Jay Edelson (*pro hac vice pending*)
17                                               Steven L. Lezell (*pro hac vice pending*)
                                                 Mike McMorrow (*pro hac vice pending*)
18                                               KAMBEREDELSON, LLC
                                                 350 North LaSalle, Suite 1300
19                                               Chicago, IL 60654
                                                 (312) 589-6370
20                                               jedelson@kamberedelson.com
                                                 slezell@kamberedelson.com
21                                               mjmcmorrow@kamberedelson.com

22

23

24

25

26

27

28

# EXHIBIT A

 **WaMu**

PO Box 100569
Florence, SC  29502-0569

03-13-2009

Schulken, Jeffrey D                          Loan Number Ending In:
~~_____~~

                                             Additional Borrowers:
                                             Schulken, Jenifer I

Property Address:  ~~_____~~

Dear Customer:

Thank you for being a valued customer.

We need your help updating your financial information related to your Home Equity Line of Credit (HELOC). Your account documents allow us to request updated information from you.

Complying with our request is easy.

- Complete and sign the enclosed Internal Revenue Service (IRS) Form 4506-T where indicated for each Borrower shown above. Instructions for completing the form are on the following page. This form allows us to obtain a summary of a specified federal tax return from the IRS.
- Provide a copy of a recent paystub for each Borrower and any additional current income documentation you would like to provide. Please indicate if you are self employed.
- Return each completed and signed 4506-T and other documents within 14 days of the date of this letter.  You can fax the documents to 1-866-272-9223 or mail them to: Washington Mutual Bank, a division of JPMorgan Chase Bank, N.A., Account Management MB0402FL, P.O. Box 3990, Melbourne, FL 32902-3990.

*2008*
*Sched. C's*
*+ 1040*

It is important that you provide this information. Thank you for your cooperation. If you have additional questions, please contact us toll free at (877) 750-8825, Monday through Friday 5:00 a.m. to 6:00 p.m. and Saturday 5:00 a.m. to 2:00 p.m., Pacific Time. If you are a hearing impaired customer, please contact us at (800) 841-1743 (TDD), Monday through Friday 6:00 a.m. to 7:00 p.m. and Saturday 6:00 a.m. to 5:00 p.m., Pacific Time.

Sincerely,

*"Decrease Line"*
*per CSR - "oops"*

Washington Mutual Bank, a division of
JPMorgan Chase Bank, N.A.

TQ1BCLD                                                    1 of 2

 **WaMu**

PO Box 100569
Florence, SC  29502-0569

## Answers to Frequently Asked Questions:

**Q:** You did not require income/financial information at the time of loan request.   How can you require it now?

**A:** Your HELOC documents require you to provide updated information upon request.

**Q:** What is a 4506-T?

**A:** The 4506-T is an authorization to order a transcript, or summary, of the requested tax years from the IRS, and is a common form used in the mortgage industry.   It is not a copy of the actual tax returns you filed.

**Q:** Can I just provide you my tax returns for the requested years vs. signing the 4506-T?

**A:** Unfortunately no.   While you can provide any additional documentation that would support your current financial information, Chase/WaMu will still require you to complete and return the 4506-T.

## How to Complete the 4506-T:

**1**

### Provide your information:

**Line 1a:** Name shown on tax return, if you filed a joint return enter the name shown first
**1b:** First social security number on tax return.

**Line 2a:** If a joint return enter spouse's name shown on return.
**2b:** Second social security number if joint tax return.

**Line 3:** Current name, address, city, state and ZIP code.

**Line 4:** Previous address shown on the last return filed if different from line 3.

**2**

### Review the information we provided:

**Line 5:** The IRS will send the tax transcript to the address shown.

**Line 6:** Transcript requested - We have selected 1040, since it is the most common form. If you file a different form or need an additional 4506-T, call us at 877-750-6825 and we will gladly assist you.

**Line 6a:** Return Transcript - This allows us to receive a transcript of your most recent tax returns.

**Line 9:** Year or period requested – We are requesting transcripts for the two most recent tax years.

## Sign and date the form:

**3**

If a joint return, only one signature is required.

# EXHIBIT B

 **WaMu**

PO Box 100569
Florence, SC 29502-0569

03/18/2009

SCHULKEN, JEFFREY D


Loan Number Ending In:
~~~~~~~~~~~~

Additional Borrowers:
SCHULKEN, JENIFER I

Property Address: 

### IMPORTANT NOTICE ABOUT YOUR HOME EQUITY LINE OF CREDIT

Dear Customer,

We are committed to the financial well-being of our customers and assisting them to achieve and preserve homeownership. As a valued customer we are contacting you with important information regarding the Home Equity Line of Credit (HELOC) referenced above.

We have carefully considered the information you provided in response to our request for updated income information. We have not received all the information requested in our letter dated 03/13/2009: a signed Internal Revenue Service (IRS) 4506-T form and the most current pay-stubs. Therefore, your HELOC account has been suspended from additional advances effective 03/18/2009. The primary reason for this suspension is we are unable to verify that your income is sufficient to satisfy your debt obligations.

What does this mean for you?

- At this time you may no longer obtain any additional advances on your HELOC account.
- You still need to make your minimum monthly payment by the specific due date to maintain your account in good standing.
- For questions or disputes about information in your credit bureau report, please contact TransUnion Consumer Relations at (800) 888-4213.
- If you feel we have made this decision in error, we offer an appeal process. Please see the FAQ section on the following page for information regarding the appeal process.
- We understand this action may affect your financial goals. Therefore, while we truly appreciate your business, should you choose to payoff and close your account within 90 days of this notice, we will waive any associated cancellation fees upon your request.

We strive to provide our customers with the highest level of service. Many commonly asked questions are answered via the FAQ section on the following page. If you have additional questions please contact us toll free at (877) 750-6825, Monday through Friday 5:00 a.m. to 8:00 p.m. and Saturday 5:00 a.m. to 2:00 p.m., Pacific Time. If you are a hearing impaired customer, please contact us at (800) 841-1743 (TDD), Monday through Friday 6:00 a.m. to 7:00 p.m. and Saturday 6:00 a.m. to 5:00 p.m., Pacific Time.

Sincerely,

Washington Mutual Bank, a division of
JPMorgan Chase Bank, N.A.

1 of 2

 **WaMu**

PO Box 100569
Florence, SC 29502-0569

## Frequently Asked Questions

**Q: Why has my credit line been suspended?**
A: The information we recently received was not sufficient to determine if the income is the same as the income information provided when you applied for your credit line. We will be able to review your request once you have provided us with an Internal Revenue Service (IRS) Form 4506-T and a recent pay-stub. if you need an additional copy of the IRS Form 4506-T, please contact us at the number provided on the previous page and we will be happy to send one to you.

**Q: What if I think you have made this decision in error, how do I begin the appeal process to have my line reinstated?**
A: Please call us via the contact information on the previous page to initiate your request for reinstatement. A written request for reinstatement, along with all supporting documentation, should be faxed to 1-866-272-9223, or mailed to the address below, for review.

Washington Mutual Bank, a division of
JPMorgan Chase Bank, N.A.
Account Management MB0118FL
P.O. Box 3990
Melbourne, FL 32902-3990

**Q: Where in my loan documents does it say that you can suspend my credit line?**
A: Suspension of the credit line is made in accordance with the terms of your HELOC agreement as noted under *Termination and Acceleration; Suspension of Advances and Reduction of Credit Limit; Other Remedies*. As long as your line of credit is open, we may exercise our rights under this section whenever any of the specified conditions are in effect.

### Fair Credit Reporting Act

Our decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons for this action. You also have a right to receive a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

TransUnion Consumer Relations,   2 Baldwin Place   P.O. Box 1000   Chester, PA 19022-1000   (800) 888-4213

### Equal Credit Opportunity Act

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is; Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney St., Suite 3450, Houston, Texas 77010-9050.

1

## **PROOF OF SERVICE**

2

3        I hereby certify that on December 14, 2009, I electronically filed the foregoing *Plaintiff's*

4  *First Amended Class Action Complaint and Jury Demand* with the Clerk of the Court using the

5  CM/ECF system.  Notice of this filing is sent to the following parties by operation of the Court's

6  electronic filing system.  Parties may access this filing through the Court's system:

7  George G. Weickhardt
   Wendy C. Krog

8  Ropers, Majewski, Kohn & Bentley
   201 Spear Street, Suite 1000

9  San Francisco, California 94105

10

11 LeAnn Pedersen Pope
   Danielle J. Szukala

12 Victoria R. Collado
   Burke, Warren, MacKay & Serritella, P.C.

13 330 N. Wabash Ave., 22nd Floor
   Chicago, Illinois 60611

14

15

16                                        /s/ Alan Himmelfarb

17

18

19

20

21

22

23

24

25

26

27

28