Sean P. Reis (Cal. Bar. No. 184044)
EDELSON MCGUIRE LLP
Lakeview Tower
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123
sreis@edelson.com

*Counsel for Plaintiffs*
[additional counsel appear on signature page]

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| JEFFREY SCHULKEN AND JENIFER SCHULKEN, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON MUTUAL BANK, HENDERSON, NEVADA; JPMORGAN CHASE BANK, N.A.,<br><br>Defendants. | No. C-09-02708-LHK<br><br>**PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Judge: Hon. Lucy H. Koh |

Jeffrey and Jenifer Schulken (the "Schulkens" or "Plaintiffs"), for their Third Amended Complaint, allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by their attorneys, except as to those allegations pertaining to Plaintiffs and their counsel personally, which are alleged upon personal knowledge:

**Introduction**

1.  This case is about Defendants' use of false pretenses to illegally suspend and reduce credit limits on home equity lines of credit ("HELOCs") across the country. JPMorgan Chase Bank, N.A. ("Chase"), and its recently acquired division, Washington Mutual Bank ("WAMU") (collectively "Defendants"), in an attempt to limit their exposure to the risk of collapse in the United States housing market, have violated Regulation Z and the Truth-in-Lending Act and have broken contractual promises to their HELOC account holders (collectively

the "Class Members") by claiming that their customers' financial circumstances had materially changed (when they in fact had not) such that the customers would not be able to meet their loan obligations (when they in fact would). Rather than verifying first whether a customer's financial circumstances had materially changed for the worse, Defendants reduced credit limits and froze accounts at the outset, leaving the customer with the option of appealing but without access to the credit for which he or she had bargained. As a result of the Defendants' "shoot first, ask questions later approach," the Defendants have collectively denied their customers access to hundreds of millions of dollars of credit at a critical time.

2. Each member of the Class had a HELOC for which Chase or WAMU reduced the available credit in a manner that was both illegal and unfair. As a result of Defendants' wrongful actions, Plaintiffs bring this class action on behalf of themselves and the putative class for actual and statutory damages and attorneys' fees under Regulation Z of the Truth-in-Lending Act ("TILA") (15 U.S.C. § 1640(a); 12 C.F.R. § 226.5(b)), equitable and injunctive remedies under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et. seq.*) and damages for breach of contract.

**Nature of the Claim**

3. As recently as March 2009, Defendants sent a form letter to thousands of their HELOC customers, including Plaintiffs and the other class members, demanding verification of income. The letter stated:

> We need your help updating your financial information related to your Home Equity Line of Credit (HELOC). Your account documents allow us to request updated information from you.
>
> Complying with our request is easy:
>
> • Complete and sign the enclosed Internal Revenue Service (IRS) Form 4506-T where indicated for each Borrower shown above. Instructions for completing the form are on the following page. This form allows us to obtain a summary of a specified federal tax return from the IRS.
> • Provide a copy of a recent paystub for each Borrower and any additional current income documentation you would like to provide. Please indicate if you are self employed.
> • Return each completed and signed 4506-T and other documents within 14 days of the date of this letter. You can fax the documents to 1-866-272-

> 9223 or mail them to: Washington Mutual Bank, a division of JPMorgan Chase Bank, N.A., Account Management MBO402FL, P.O. Box 3990, Melbourne, FL 32902-3990.
>
> It is important that you provide this information. Thank you for your cooperation….

(See "March 13, 2009 Income Verification Request," a true and accurate copy of which is attached as Exhibit A.)

4. Plaintiffs submitted the necessary information shortly thereafter. On March 19, 2009, just six days after the date of the Defendants' initial letter, Plaintiffs learned that Defendants had frozen their HELOC while checking their account online. Plaintiffs then received a letter in an envelope post-marked March 19, 2009. Inside was a letter dated March 18, 2009, notifying Plaintiffs that their line was being suspended for their failure to submit all the paperwork specified in the letter of March 13, 2009. (See "Suspension Letter of March 18, 2009," a true and accurate copy of which is attached as Exhibit B.) During repeated telephone calls to Defendants' customer service personnel, Chase and WAMU subsequently explained that they had not received the necessary documentation, despite the fact their Income Verification Request had requested the documents be provided within 14 days. Ultimately, Plaintiffs received a form notice advising them that their HELOC account would remain suspended due to their financial circumstances and purported inability to support the loan amount.

5. Chase and WAMU lacked a sound factual basis for sending these letters and reducing or freezing their customers' HELOC limits. Defendants knowingly and intentionally falsely claimed that their customers' financial circumstances had changed so as to "trigger" Chase and WAMU's right to freeze or lower the credit limits. As a result, Defendants, in violation of federal law, reduced the credit limits and/or froze the HELOC accounts of many homeowners, including Plaintiffs, whose financial circumstances had not materially worsened so as give Defendants a reasonable basis for concluding the Plaintiffs and other accountholders would be unable to meet the terms of their loans.

6. Although federal law allows the creditor to freeze or reduce the line where the creditor reasonably believes that the consumer will be unable to make payments as agreed because

of a material change in the consumer's financial circumstances, this exception requires <u>both</u> a material change in a borrower's financial situation <u>and</u> the creditor's reasonable belief that the borrower will not be able to repay the HELOC account as agreed. With respect to Plaintiff and the Class, Defendants froze accounts and reduced credit limits where no material changes in the borrowers' financial situations had occurred and the Defendants did not have a reasonable belief that the borrowers would be unable to repay their HELOC accounts as agreed. As a result, Defendants' intentional systematic, freezing and mass reduction on the limits on their customers' HELOCs, as well as their use of standards that are inconsistent with Regulation Z, was and remains illegal.

7. Defendants' HELOC reductions are not only illegal; they are patently unconscionable. On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343. As part of this law, Chase obtained, on information and belief, approximately $25 billion from an unprecedented $700 billion bailout funded entirely by American taxpayers. The rationale advanced for the bailout by its proponents was that the banks needed the money to ensure liquidity in the face of the worsening subprime mortgage disaster.

8. Despite Chase's statements to Congress to the contrary, Defendants have intentionally failed to meet their obligations to their customers and have intentionally deprived those customers of crucial affordable consumer credit at a critical time.

9. In stark contrast, Defendants' HELOC borrowers such as Plaintiffs, like most American consumers, are struggling in a faltering economy, yet they continue to meet their mortgage obligations. These customers have incurred appraisal fees, an increased price of credit and reduced credit scores, lost interest and other damages.

**Parties**

10. **Plaintiffs Jeffrey and Jenifer Schulken:** Plaintiffs maintain their primary residence in Cupertino, CA (the "subject matter property"). In or around October 2005, Plaintiffs obtained a HELOC in the amount of $250,000 secured by the subject matter property.

11. **Defendant Washington Mutual Bank, Henderson, Nevada:** WAMU is a

- 4 -

national banking association with its main office located at 2273 North Green Valley Parkway Henderson, Nevada, 89014. On September 25, 2008, the United States Office of Thrift Supervision (OTS) seized WAMU from its holding company, Washington Mutual, Inc., and placed WAMU into the receivership of the Federal Deposit Insurance Corporation ("FDIC"). The FDIC sold the banking subsidiaries, minus unsecured debt or equity claims, to Chase for $1.9 billion. Chase specifically assumed "all mortgage servicing rights and obligations of" WAMU, including WAMU's HELOC accounts. WAMU is now operated as a subsidiary and/or division of co-Defendant Chase.

12. **Defendant JPMorgan Chase Bank, N.A.:** Chase is a national banking association with its main office located at 1111 Polaris Parkway Columbus, OH 43240. Under the Purchase and Assumption Agreement, Chase specifically assumed "all mortgage servicing rights and obligations of" WAMU, including WAMU's HELOC accounts. Chase operates and/or controls WAMU as a subsidiary and/or division.

**Jurisdiction and Venue**

13. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2). This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendants. On information and belief, the aggregate of these claims exceeds the sum or value of $5,000,000. This Court further has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under Regulation Z of the Truth in Lending Act, 15 U.S.C. § 1647, 12 C.F.R. § 226.5(b). This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

14. a. Defendant WAMU is a national banking association whose main offices are in Nevada, and is considered a citizen of Nevada for the purposes of diversity jurisdiction under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).

b. Defendant Chase is a national banking association whose main offices are in Ohio, and is considered a citizen of Ohio for the purposes of diversity jurisdiction under 28 U.S.C. § 1348 and *Wachovia Bank*, 546 U.S. 303.

15. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

16. This Court has personal jurisdiction over Defendants under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed in California (specifically in Santa Clara County, California), and because Defendants are registered to do business in this state and actively conduct business in this District.

**Allegations as to Plaintiffs' Individual Claims**

17. In October 2005, Plaintiffs obtained a HELOC secured by the subject matter property in the amount of $250,000. According to Chase's own website, HELOC customers can utilize HELOC funds for a variety of needs, including, for example, home improvements, consolidating credit card debt, and paying college tuition. *See* CHASE, HOME EQUITY LINE OF CREDIT, https://www.chase.com/index.jsp?pg_name=ccpmapp/home_equity/products/page/line_of_credit (last visited Mar. 16, 2010). Plaintiffs' HELOC was for personal, family and household purposes. Plaintiffs obtained the HELOC for the primary purpose of paying down personal debt obligations relating to personal, family and household purchases. Among other personal and household uses, Plaintiffs used the HELOC funds to pay down personal debt incurred on the purchase of a motorcycle for personal use, the purchase of a van for family use, the renovation of their master bedroom in their home, the purchase and installation of carpet and flooring throughout their house, and the purchase of home appliances, including a washer and dryer.

18. On March 13, 2009 Plaintiffs received an Income Verification Request letter from Defendants seeking certain financial information within 14 days. (See Ex. A.)

19. Plaintiffs complied with the Income Verification Request and submitted financial information over the next several days via facsimile.

20. On March 19, 2009, Plaintiffs discovered, while checking their account via the Defendants' website, that their HELOC had been suspended. The next day, Plaintiffs received a

letter apparently mailed March 19, 2009 and dated March 18, 2009 that notified the Plaintiffs that their line was being suspended for their failure to submit all the paperwork specified in the letter of March 13, 2009. (See Ex B.)

21. Prior to the HELOC suspension but before notice, Plaintiffs had issued a check to pay their credit card. This check was dishonored and the Plaintiffs incurred finance charges as a result.

22. Following the suspension, Plaintiffs repeatedly contacted customer service and were provided confusing and often conflicting reasons for how Defendants had determined the Plaintiffs' income justified the suspension. Plaintiffs were also given inconsistent information with respect to the papers needed by the Defendants to review the account for potential reinstatement. Plaintiffs ultimately sent via facsimile over 75 pages worth of financial documentation to Defendants, including the requested documents other than paystubs because the Schulkens are self-employed. Defendants steadfastly refused to remove the suspension.

23. At no time did Plaintiffs' income materially change or decrease, and at no time did the Defendants' have a reasonable basis for concluding Plaintiffs, who had always made timely payments on all their loans, would not be able to meet the terms of their loan agreement. Despite repeated requests, Defendants have refused to remove the suspension.

24. Plaintiffs' HELOC with Defendants was their primary line of credit. Defendants' reduction of the credit limits on the Schulkens' HELOC dramatically increased the ratio of credit the Schulkens used to the amount of credit he had available. In turn, on information and belief, Defendants' acts drove up the Schulkens' Credit Utilization Rate ("CUR"), a major component of their credit rating. In addition to depriving the Schulkens of the availability of their HELOC, Defendants' acts damaged their credit rating and increased the cost of credit to them.

**Class Certification Allegations**

25. Plaintiffs seek certification of a class and one subclass under both Fed. R. Civ. P. 23(b)(2) and Rule 23(b)(3).

26. **Definition of the Class:** Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this

Complaint against Defendants on behalf of the "Class," consisting of:

> All WAMU and Chase HELOC borrowers in the United States who had their respective HELOCs reduced or suspended due to WAMU's or Chase's conclusion that the borrower would be unable to fulfill their payment obligations due to a purported material adverse change in financial circumstances.

Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parent companies have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

Plaintiffs anticipate that amending the Class definition may become necessary following discovery.

27. **Numerosity:** The exact number of the members of the Class is unknown and is not available to the Schulkens, but it is clear that individual joinder is impracticable. Defendants sent their generic letters to thousands of mortgagors, and a substantial percentage of the recipients of these letters fall into the definition of the Class. Class members can be easily identified through Defendants' records and public records.

28. **Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

(a) What were Defendants' criteria for reducing or suspending the credit limits on their HELOCs;

(b) Whether Defendants reduced or suspended HELOC accounts based on purported material changes in income without a reasonable basis for concluding such a material change had in fact occurred;

(c) Whether Defendants' criteria for reducing HELOC credit limits and/or suspending HELOC accounts based on phantom material changes in accountholder finances violated Regulation Z;

    (d) Whether Defendants' reduction of the credit limits or account suspensions for purported material changes in income breached the terms of its HELOC agreements;

    (e) Whether Defendants' HELOC agreement terms imposed contractual obligations on Defendants to comply with Regulation Z;

    (f) Whether Defendants' reduction or suspension of the credit limits on their HELOC agreements was unfair and unlawful;

    (g) Whether in those cases where a material change in financial circumstances had in fact occurred, Defendants had a reasonable basis for concluding the material changes would render such customers unable to meet the terms of their HELOC agreements.

    (h) Whether Defendants' contracts and policies improperly purport to allow them to reduce credit limits or freeze HELOC accounts due to immaterial declines in property values or otherwise use triggering events inconsistent with federal law;

    (i) Whether the Schulkens and the Class members are entitled to relief, and the nature of such relief.

29. **Typicality:** The Schulkens' claims are typical of the claims of other members of the Class as the Schulkens and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly to the Schulkens and the public. The California and federal laws under which the Schulkens' claims arise do not conflict with the laws of any other state in any material way.

30. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class or the Subclasses and Defendants have no defenses unique to Plaintiffs.

31. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient

adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants. It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendants. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

32. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to Class as a whole. The policies of Defendants challenged herein apply and affect members of both Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

**Count I: Declaratory Relief Under TILA and Regulation Z**

33. Plaintiffs incorporate the above allegations by reference.

34. The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) prohibit Defendants from changing any of the terms of a mortgage or HELOC, including the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).

35. There is an exception under TILA and Regulation Z for any period in which the creditor reasonably believes that the consumer will be unable to make payments as agreed because of a material change in the consumer's financial circumstances. This exception requires <u>both</u> a material change in a borrower's financial situation <u>and</u> the creditor's reasonable belief that the borrower will not be able to repay the HELOC account as agreed. 15 U.S.C. § 1647; 12 C.F.R. §

226.5(b(f)(3)(vi), comment 7. Regulation Z permits an association to suspend or reduce a HELOC account only when the designated circumstances exist, and the regulatory commentary emphasizes that credit privileges must be timely reinstated when those circumstances cease.

36. Before reducing the limits of their customers' HELOCs, Defendants had the obligation to both ensure that the customers' financial circumstances had in fact materially changed and that if those circumstances had materially changed, that they would reasonably render the customer unable to meet the terms of the agreement. The Defendants' practice of asking for financial documentation within a certain number of days, and then suspending the line prior to the expiration of those deadlines, and then claiming they have not been provided the necessary information, violates these duties. Additionally, Defendants reduced the credit limits and/or froze the HELOC accounts of the Class members, including Plaintiffs, whose financial circumstances had not materially worsened and/or where Defendants lacked a reasonable basis for concluding that the accountholders would be unable to meet the terms of their loans.

37. Plaintiffs and the Class members have been harmed by being denied credit at a necessary time and incurred damages, such as returned/dishonored check fees and finance charges, due to the Defendants' unfair notice scheme.

38. Plaintiffs and the other members of the Class have additionally been harmed because Defendants have knowingly failed to disclose information that would permit Plaintiff and the Class members to fairly determine whether to seek reinstatement, including but not limited to:

    a. how Defendants determine or define a material change in income or financial circumstances,

    b. how Defendants compute an accountholder's ability to meet the terms of his or her loan agreement,

    c. Defendants' actual and specific reasons for the reduction or suspension of the HELOCs,

    d. the process, procedures, and guidelines pursuant to which Defendants implemented their reduction /suspension of the HELOCs,

e. other necessary and material information.

39. The Class and Defendants have adverse legal interests, and there is a substantial controversy between the Class and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendants' mass reduction of credit limits violates TILA and Regulation Z.

40. The Schulkens, on their own behalf and behalf of the other Class members, seek a declaratory judgment under 27 U.S.C. § 2201 that Defendants' mass reduction or suspension of HELOC credit limits in connection with their letters violates TILA and Regulation Z.

**Count II: Violation of TILA and Regulation Z**

41. Plaintiffs incorporate the above allegations by reference.

42. Defendants knowingly lacked a sufficient factual basis for reducing Plaintiffs' and the Class's credit limits or prohibiting additional extensions of credit. Defendants lacked a sound factual basis for concluding the financial circumstances had materially changed for the Schulkens and other Class members sufficiently to support reducing the credit limits or prohibiting additional extensions of credit. Defendants also used improper triggering events for determining when such a "material change" had occurred.

43. Defendants' suspension of the HELOC for the Schulkens and other Class members' HELOCs violated the Truth-in-Lending Act and Regulation Z.

44. Defendants' violations of the Truth-in-Lending Act and Regulation Z damaged the Schulkens and the other Class members. These damages occurred in the form of the increased price of credit, loss of the bargained-for use of the credit line, adverse effects on credit scores, dishonored check and finance charges, and other damages.

45. The Schulkens, on their own behalf and behalf of the other Class members, seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with a reasonable attorney's fees under 15 U.S.C. § 1640(a)(3).

## Count III: Violation of TILA and Regulation Z

46. Plaintiffs incorporate the above allegations by reference.

47. Where a creditor prohibits additional extensions of credit or reduces the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected. The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action." Regulation Z, 12 C.F.R. § 226.9(c)(3).

48. Defendants provided Plaintiffs and, on information and belief, the members of the Class with notices of their HELOC reductions and suspensions that lacked sufficient and necessary information, including the specific reasons for Defendants' actions.

49. Defendants' notices failed to adequately identify the specific reasons for their actions. The HELOC suspension notices sent by Defendants to Plaintiffs and the Class are further deficient because they do not indicate what change in financial circumstances Defendants consider "material" and do not include what adverse information Defendants obtained from credit agencies that purportedly justified account suspension or reduction. Without this information, Plaintiffs and other Class members were deprived of critical information needed to determine whether to challenge Defendants' actions and seek account reinstatement.

50. Defendants' violations of the Truth-in-Lending Act and Regulation Z damaged the Schulkens and the other Class members. These damages occurred in the form of the increased price of credit, adverse effects on credit scores, loss of the bargained-for use of the credit line, dishonored check and finance charges, and other damages.

51. The Schulkens, on their own behalf and behalf of the other Class members, seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with a reasonable attorney's fee under 15 U.S.C. § 1640(a)(3).

## Count IV: Breach of Contract

52. Plaintiffs incorporate the above allegations by reference.

53. The Schulkens and the other Class members obtained HELOCs from Defendants. The terms of these HELOCs constitute a contract between the Class members and Defendants.

54. The HELOC agreements contain a term that tracks Regulation Z and provides that Defendants may reduce or suspend additional extensions of credit during times when the Defendants "(b) …reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances."

55. The Schulkens and the other Class members made all payments due to Defendants and otherwise fully performed under their HELOCs with Defendants.

56. The availability of credit and the triggering events the lender could use to suspend credit extensions were material terms.

57. Defendants materially breached the terms of the HELOCs by suspending the HELOC accounts for the Schulkens and other Class members' HELOCs where no material adverse change in financial circumstances had first occurred that would give Defendants a reasonable basis for believing the borrowers would be unable to fulfill their payment obligations under their agreements.

58. As a result, the Schulkens and the other Class members have suffered damages in the form of the increased price of credit, lost interest, attorneys' fees, adverse effects on credit scores, finance charges and dishonored check fees, the loss of the bargained-for use of the credit limit, and other damages.

59. The Schulkens, on their own behalf and behalf of the other Class members, seek damages for Defendants' breach of contract, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count V: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

60. Plaintiffs incorporate the above allegations by reference.

61. Defendants' reduction or suspension of the credit limit for the Schulkens and other Class members' HELOCs violated TILA and Regulation Z. With respect to the Class, Defendants' practice of requesting financial information by a deadline, and then proceeding to suspend accounts based on purported failures to submit the requested information well before the deadline was unlawful, unfair, and deceptive. These unlawful, deceptive, and unfair acts and

practices constitute unfair competition in violation of the UCL.

62. Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices as set forth above.

63. Defendants have violated the "unlawful" prong of the UCL in that Defendants' conduct was undertaken in violation of TILA and Regulation Z, as alleged above.

64. Defendants have also violated the "unfair" prong of the UCL by suspending or reducing the HELOC accounts without providing any advance notice (in its notice letters or in its HELOC agreements) that failure to timely provide the requested financial information could constitute grounds for account suspension. Defendants further acted unfairly and deceptively by requiring that certain financial information be submitted within 14 days but then suspending Plaintiffs' HELOC in only 5 days. Mandating an arbitrary deadline without identifying the potential ramifications for noncompliance, and then suspending accounts prior to the expiration of that deadline, is an unfair, deceptive and unscrupulous action.

65. Additionally, Defendants' actions caused substantial injury to Plaintiffs and the Class members. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition; Defendants' actions benefitted only Defendants while causing nothing but injury to the Class members by wrongfully depriving them of access to affordable credit at a critical time. The injury caused by Defendants' conduct could not reasonably have been avoided by the Class members themselves, as Defendants exercised their discretion unilaterally to suspend or reduce the HELOC accounts.

66. Defendants have also violated the "fraudulent" prong of the UCL in that Defendants' statements or material omissions to their HELOC customers whose lines Chase and/or WaMu suspended or reduced, made both in writing through their HELOC notices and letters and orally over the telephone through their customer service representatives when aggrieved customers contacted Defendants to discuss the suspensions or reductions, were false and were likely to deceive a reasonable consumer, including Defendants' statements:

    a. regarding the availability of credit through the HELOCs;

| | | |
|---|---|---|
|1| b. | indicating that any potential future reduction of credit through the HELOCs would only occur through a material adverse change in financial condition; |
|3| c. | concerning the amount of time that a customer has to respond to Chase's request for financial information, including the potential consequences of not fully complying with its information request within the stated 14-day period – particularly in light of Chase' illustrated willingness to suspend accounts in less than half that time; and |
|8| d. | regarding Defendants' purported authority under the customers' HELOC agreements to demand the customer submit IRS Form 4506T. |

67. Defendants' violations of the UCL damaged Plaintiffs and the Class by causing the Schulkens and the other Class members to pay money to Defendants in the form of fees, lost interest, lost opportunity, adversely impacted credit, loss of the bargained-for use of the credit limit, and other damages.

68. Plaintiffs and the Class members have also suffered adverse effects to their credit scores, finance charges from dishonored checks, attorneys' fees and other damages.

69. The Schulkens, on their own behalf and behalf of the other Class members, seek an order preliminarily and permanently enjoining Defendants' unfair competition alleged herein and requiring Defendants to restore HELOC credit limits and cease suspending or reducing HELOCs in violation of Regulation Z, and individual restitution of property gained at the expense of the Class members by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiffs pray that the Court enter judgment and Orders in their favor and against Defendants as follows:

    (a)     Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Class;

    (b)     Entering declaratory judgment under 27 U.S.C. § 2201 on Count I that the Defendants' HELOC reductions violate federal law;

| | | |
|---|---|---|
| (c) | Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Counts II and III; |
| (d) | Awarding actual damages on Counts II, III, IV, and V for the Class including but not limited to appraisal fees, loss of the bargained-for use of the credit limit, the increased price of credit, dishonored check and finance charges, attorneys' fees, interest and other damages in an amount to be proved at trial; |
| (e) | Awarding preliminary and permanent equitable and injunctive relief for the Class, including enjoining the Defendants from further violations of Regulation Z, restoration of HELOC credit limits, restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property; |
| (f) | Awarding Plaintiffs and the Class reasonable costs and attorneys' fees; |
| (g) | Awarding pre- and post-judgment interest; |
| (h) | Awarding punitive damages; and |
| (i) | Granting such other and further relief as the Court may deem just and proper. |

**JURY TRIAL DEMAND**

The Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 27, 2010

JEFFREY AND JENIFER SCHULKEN,
individually and on behalf of
a class of similarly situated individuals

By: /s/ Sean P. Reis
Sean P. Reis
EDELSON MCGUIRE LLP
Lakeview Tower
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123
sreis@edelson.com

Evan M. Meyers (*pro hac vice*)
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654
(312) 589-6370
emeyers@edelson.com

- 17 -

## PROOF OF SERVICE

I hereby certify that on October 27, 2010, I electronically filed the foregoing *Plaintiffs' Third Amended Class Action Complaint and Jury Demand* with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

George G. Weickhardt
Wendy C. Krog
Ropers, Majewski, Kohn & Bentley
201 Spear Street, Suite 1000
San Francisco, California 94105
gweickhardt@rmkb.com
wkrog@rmkb.com

LeAnn Pedersen Pope
Danielle J. Szukala
Michael Salemi
Victoria R. Collado
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Ave., 22nd Floor
Chicago, Illinois 60611
lpope@burkelaw.com
dszukala@burkelaw.com
msalemi@burkelaw.com
vcollado@burkelaw.com

/s/ Sean P. Reis