GEORGE G. WEICKHARDT (SBN 58586)
WENDY C. KROG (SBN 257010)
ROPERS, MAJESKI, KOHN & BENTLEY
201 Spear Street, Suite 1000
San Francisco, CA 94105-1667
Telephone: (415) 543-4800
Facsimile: (415) 972-6301
gweickhardt@rmkb.com
wkrog@rmkb.com

LEANN PEDERSEN POPE
VICTORIA R. COLLADO
MICHAEL G. SALEMI
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash, 22nd Floor
Chicago, IL 60611
Telephone: (312) 840-7000
Fax: (312) 840-7900
lpope@burkelaw.com
vcollado@burkelaw.com
msalemi@burkelaw.com
(Admitted *Pro Hac Vice*)

*Attorneys for Defendant*,
JPMORGAN CHASE BANK, N.A.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

JEFFREY SCHULKEN AND JENIFER
SCHULKEN, individually and on behalf of a
class of similarly situated individuals,

Plaintiff,

v.

WASHINGTON MUTUAL BANK,
HENDERSON, NEVADA; JPMORGAN CHASE
BANK, N.A.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 5:09-cv-02708-LHK

**JPMORGAN CHASE BANK, N.A.'S
OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION**

Judge:         Hon. Lucy H. Koh
Hearing Date:  July 21, 2011
Hearing Time:  1:30 p.m.
Courtroom:     4, 5th Floor

# TABLE OF CONTENTS

I.     THE SCHULKENS' MOTION FOR CLASS CERTIFICATION
       SHOULD BE DENIED BECAUSE THEY LACK STANDING TO
       PURSUE INJUNCTIVE OR DECLARATORY RELIEF. .................................. 11

II.    THE SCHULKENS ARE INADEQUATE CLASS
       REPRESENTATIVES. ........................................................................... 14

III.   THE SCHULKENS' MOTION FOR CLASS CERTIFICATION
       SHOULD BE DENIED BECAUSE THEY HAVE FAILED TO
       ESTABLISH COMMONALITY AND TYPICALITY. ...................................... 16

       A.    The Schulkens' Claims Based On An Alleged Lack Of Material
             Decline In Financial Circumstances Are Not Typical Of Or
             Common To The Class. .............................................................. 16

       B.    The Schulkens' TILA Claims Are Not Typical Because They
             Are Subject To Unique Defenses. ............................................... 21

       C.    The Schulkens' Claims Based On A Material Default Of The
             HELOC Agreements Are Not Common or Typical .............................. 22

IV.    THE SCHULKENS' MOTION FOR RULE 23(B)(2) CLASS
       CERTIFICATION SHOULD BE DENIED BECAUSE INJUNCTIVE
       RELIEF IS UNAVAILABLE UNDER TILA ...................................................... 24

1

2

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Arabian v. Sony Electronics, Inc.,* 05-CV-1741WQH(NLS), 2007 WL 627977
    (S.D. Cal. Feb. 22, 2007) ................................................................................ 22

*Baker v. Arkansas Blue Cross & Blue Shield*, No. CV 08-3974-SBA, 2010 WL
    2557500 (N.D. Cal. June 21, 2010) ............................................................... 13

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ..................................... 11, 13

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) ................................................ 25

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ................... 24

*Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008) ............................................ 24, 25

*Clark v. Experian Info. Solutions, Inc.*, Nos. Civ.A.8:00-1217-24, Civ.A.8:00-
    1218-24, Civ.A.8:00-1219-24, 2001 WL 1946329 (D. S.C. Mar. 19, 2001)............... 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).................................. 18

*Ewert v. eBay, Inc.*, C-07-02198 RMW, C-07-4487 RMW, 2010 WL 4269259
    (N.D. Cal. Oct. 25, 2010) ............................................................................. 22

*Fullmer v. JPMorgan Chase Bank, NA*, No. 2:09-cv-1037 JFM, 2010 WL 95206
    (E.D. Cal. Jan. 6, 2010) ............................................................................... 25

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ................................................ 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 14, 15

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..................................... 18, 20, 22

*Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) ....................................... 14

*Hawecker v. Sorensen*, No. 1:10-cv-00085 OWW JLT, 2011 WL 98757 (E.D.
    Ca. Jan. 12, 2011)........................................................................................ 12

*Hodgers-Durgin v. de la Vina,* 199 F.3d 1037 (9th Cir. 1999)............................................. 14

*Hofstetter v. Chase Home Fin.*, LLC, C 10-01313 WHA, 2011 WL 1225900
    (N.D. Cal. Mar. 31, 2011) ............................................................................ 25

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323
    (S.D.N.Y. 2002) .......................................................................................... 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Quarterdeck Office Sys., Inc. Sec. Litig.*, 1993 WL 623310 (C.D. Cal. Sept. 30, 1993)..................................................................................... 15, 21

*Jobie O. v. Spitzer*, No. 03 Civ. 8331(CM), 2007 WL 4302921 (S.D.N.Y. 2007).......... 12, 13

*Kennerly v. U.S.*, 721 F.2d 1252 (9th Cir. 1983) ..................................................... 15

*Levin v. Citibank, N.A.,* C-09-0350 MMC, 2009 WL 3008378,  at *3 (N.D. Cal. Sept. 17, 2009) ............................................................................................. 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992) ...................... 13

*Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433 (5th Cir. 2000)......................... 25

*Reeder v. HSBC USA, Inc.*, No. 09-cv-2043, 2009 WL 4788488 (N.D. Ill. Dec. 8, 2009)....................................................................................................... 25

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002)....................................... 13

*Sherlock v. Herdelin*, CIV. A. 04-CV-3438, 2008 WL 732146 (E.D. Pa. Mar. 17, 2008)....................................................................................................... 21

*State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317 (9th Cir. 1997)................. 18

*Volovnik v. Benzel-Busch Motor Car Corp.*, No. 09 Civ. 10595 (DAB)(JLC), 2010 WL 3629819 (S.D.N.Y. July 29, 2010) ............................................... 25

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271 (C.D. Cal. 2002)....................................................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*, No. 10-277, — S.Ct. —, 2011 WL 2437013 (U.S. June 20, 2011) ............................................................................... passim

*Watkinson v. MortgageIT, Inc.*, No 10-CV-327-IEG (BLM), 2010 WL 2196083 (S.D. Cal. June 1, 2010) ......................................................................... 25

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001) ........................... 10

**Federal Statutes**

15 U.S.C. § 1647(c)(2)(C) ...................................................................................... 17

15 U.S.C. § 1647(c)(2)(D) ...................................................................................... 22

**Federal Rules**

Fed. R. Civ. P. Rule 23(a)................................................................................. passim

Fed. R. Civ. P. Rule 23(b)................................................................................. passim

**Federal Regulations**

12 C.F.R. § 226.5b ................................................................................................ 17, 22

12 C.F.R. Part 226, Supp. I, ¶ 5b .................................................................... 17, 22

**Other Authorities**

FRB Official Interpretations to Regulation Z ........................................................ 17

1

## SUMMARY OF ARGUMENT

2  The Schulkens, who closed their HELOC account months ago, move for a Rule 23(b)(2)

3 class seeking declaratory and injunctive relief, requiring Chase to reopen credit lines of

4 borrowers nationwide.  The claims the Schulkens seek to certify differ from the claims brought

5 on behalf of purported classes in their pending Third Amended Complaint ("TAC").  In their

6 TAC, the Schulkens seek certification of a class under Rule 23(b)(3) to recover actual damages

7 from Chase's purported breach of contract and TILA violations. Their pending motion for class

8 certification, however, does not seek any actual damages, and instead requests certification

9 under Rule 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or

10 declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or

11 declared unlawful only as to all of the class members, or as to none of them."  *Wal-Mart Stores,*

12 *Inc. v. Dukes*, No. 10-277, — S.Ct. —, 2011 WL 2437013 at *12 (U.S. June 20, 2011).  The

13 United States Supreme Court's recent decision in *Wal-Mart* confirms that the Schulkens' motion

14 to certify classes of HELOC borrowers for injunctive and declaratory relief under Fed. R. Civ.

15 P. 23(b)(2) should be denied for several reasons.

16  First, the Schulkens terminated their HELOC with Chase in November 2010.  Because

17 they have no current HELOC with Chase, they "have no more need for prospective relief" and

18 lack standing to seek declaratory relief regarding Chase's 4506-T income verification program

19 or to seek injunctive relief requesting reinstatement of the HELOC that they have already

20 terminated.  *Wal-Mart*, at *14 (former named plaintiffs and about half of purported class

21 members no longer employed by Wal-Mart "have no claim for injunctive or declaratory relief at

22 all").

23  Second, even if they did have standing to pursue claims for injunctive and declaratory

24 relief, the Schulkens are not adequate class representative because they have a conflict of

25 interest with absent class members.  In their motion for class certification, the Schulkens seek

26 only declaratory and injunctive relief under Rule 23(b)(2), abandoning any claims for actual or

27 compensatory damages for the allegedly wrongful HELOC suspensions.  While this Rule

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK

23(b)(2) strategy may have been adopted to avoid meeting the more stringent predominance and superiority requirements of Rule 23(b)(3), it also removes the ability of absent class members to recover actual damages and further eliminates the notice and opt-out protections Rule 23(b)(3) provides for absent class members.  In electing to proceed exclusively under Rule 23(b)(2), the Schulkens have succumbed to the "perverse incentives for class representatives to place at risk potentially valid claims for monetary relief."  *Wal-Mart* at *14 (rejecting plaintiffs' attempt to use (b)(2) class that would preclude compensatory damages, where absent class members have no opportunity to opt out of (b)(2) class).

Third, even if the Schulkens' claims for prospective relief were not moot, the Schulkens cannot avoid the individual borrower-by-borrower issues raised by their claims by purporting to seek a Rule 23(b)(2) class rather than a 23(b)(3) class.  To the contrary, they must establish commonality and typicality under Rule 23(a).  As the Supreme Court has explained, what matters in class certification is *not* the "raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart* at *7 (internal citations omitted, emphasis in original). The question presented by the Schulkens here is whether their HELOC was improperly suspended because of a material change in financial circumstances.  The Schulkens have failed to establish, however, that resolution of *their* claim that their financial circumstances did not change, would drive the resolution of the determination of whether *any other* HELOC borrower's financial circumstances changed.  Whether any other HELOC borrower was justifiably suspended because of a material change in their financial circumstances would necessarily turn on individual issues such as borrower's income at origination, debt at origination, income at suspension, debt at suspension, payment history, and other circumstances surrounding their ability to repay draws on their HELOC.  Because resolution of any absent class members' claim would involve examination of each borrower's individual financial information, there is no "glue" holding all of the suspension decisions together, and it is

1  "impossible to say that examination of all the class members' claims for relief will produce a

2  common answer to the crucial question[.]"  *Id.*

3       For all of these reasons, explained in more detail below, the Schulkens' motion for class

4  certification should be denied.

5                                   <u>**SUMMARY OF RECORD EVIDENCE**</u>

6       ***The Schulkens obtain a HELOC from State Farm Bank to purchase a 15-passenger***

7  ***van and renovate their home for "Wee Ones," their home daycare business.*** From

8  approximately 2000 through at least May 2011, Jenifer Schulken operated the "Wee Ones" day

9  care out of the Schulkens' house located at 10415 Calvert Drive, Cupertino, California 95014.

10 (Jeffrey Schulken Dep. 17:6-17, 32:2-15 (attached as Ex. A to the Declaration of Michael G.

11 Salemi); Jenifer Schulken Dep. 14:13-15:6 (attached as Ex. B to Salemi Decl.).)   In

12 approximately 2002, the Schulkens applied for and obtained a home equity line of credit

13 ("HELOC") from State Farm Bank secured by their property.  (Mr. Schulken Dep. 25:4-10,

14 25:23-26:6.)   The Schulkens planned on using draws from that HELOC to remodel their

15 property to add a family room (*id.* at 26:10-21; 33:21-34:1) and they completed the renovation

16 adding the family room in approximately December 2004.  (*Id.* at 27:13-15; 34:3-4: 36:10-13.)

17 At that time, Ms. Schulken operated the Wee Ones daycare using the entire house, including

18 using the new family room during the day with the Wee Ones children.  (*Id.* at 34:2-16, 36:10-

19 19, 39:24:-40:25; Ms. Schulken Dep. 20:25-21:2, 21:9-16.)  After adding the family room, the

20 Schulkens also drew on the State Farm HELOC to pay for other renovations to their house,

21 including remodeling the kitchen, installing new carpet and flooring.  (Mr. Schulken Dep.

22 34:17-35:3.)

23       The Schulkens also used their State Farm HELOC to purchase a 15-passenger Ford van

24 in approximately 2003.  (Mr. Schulken Dep. 41:1-11, 42:20-22.)  The Schulkens purchased this

25 15-passenger van to accommodate the children Ms. Schulken cared for through Wee Ones.  (*Id.*

26 at 41:23:42:15; Ms. Schulken Dep. 22:23-23:20.)

27

28

---

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK

***The Schulkens apply for and obtain a HELOC from Washington Mutual.***   In approximately September 2005, Mr. Schulken went to the WaMu branch where he banked and a teller told him about lower interest rates WaMu offered for HELOCs.  (Mr. Schulken Dep. 47:20-48:22).  Mr. Schulken then spoke with a loan representative named Tran Pham, who took Mr. Schulken's application in person on her computer.  (*Id*. at 48:23-50:4.)  Mr. Schulken does not recall specific questions asked or the answers he gave, other than telling Ms. Pham that he wanted to borrow about $130,000 and that the primary reason he wanted the HELOC was to pay off the prior State Farm HELOC and to get a lower interest rate.  (*Id*. at 50:21-51:4.)  Mr. Schulken also believes Ms. Pham asked him basic information, such as where the Schulkens worked and how much money they made and owed.  (*Id*. at 51:5-19.)  At that time, Mr. Schulken worked for Rodda Electric as an apprentice electrician and Ms. Schulken was self-employed at Wee Ones.  (*Id*. at 29:5-20, 51:18-52:2.)

Mr. Schulken believes Ms. Pham asked him about the Schulkens' income, but he does not remember what he told her.  (Mr. Schulken Dep. 52:3-52:21, 77:8-25.)  A WaMu "Comment Summary" regarding the Schulkens' HELOC application shows the Schulkens as having a combined monthly income of $11,200:  $6,000 per month for Mr. Schulken's salary and $5,200 per month for Ms. Schulken's salary.  (Ex. V to Woodrow Decl. at 00111 – 112.)  Mr. Schulken testified that the Schulkens did not make this much money in October 2005.  (Mr. Schulken Dep. 75:25-76:1.)

After meeting with Ms. Pham, the Schulkens obtained a HELOC from WaMu with a credit limit of $250,000 in October 2005.  (*See* WaMu Equity Plus Agreement and Disclosure, Schulken Dep. Ex. 4 (attached as Ex. A-4 to Salemi Decl.); Mr. Schulken Dep. 80:9-82:3.)  The HELOC was secured by a mortgage on the Schulkens' Cupertino property.  (WaMu Equity Plus Deed of Trust, Schulken Dep. Ex. 5 (attached as Ex. A-5 to Salemi Decl.); Mr. Schulken Dep. 87:5-88:1)  The Schulkens' purpose for entering into the WaMu HELOC to pay off the prior State Farm HELOC, including the purchases the Schulkens made using the prior State Farm HELOC.  (Mr. Schulken Dep. 50:21-51:4.)  After they entered into the WaMu HELOC, the

Schulkens also used the HELOC to pay for other expenses, including every month to pay the balances on their Amazon and Costco credit cards.  (*Id.* at 97:2-18, 100:23-25, 119:1-23; Ms. Schulken Dep. 27:18-23.)  Other than when Mr. Schulken had cash on hand, the Schulkens used their Amazon and Costco credit cards to pay for all of their business expenses for Wee Ones. (Mr. Schulken Dep. 130:19-23.)

The Schulkens' credit card bills reflect that they used those credit cards for commingled personal and business expenses, including purchases of tools, cleaning supplies, groceries, and educational supplies used for Wee Ones.  *See* fn. 9 *infra*.  In addition, the Schulkens sometimes transferred funds from their WaMu HELOC to their checking account to pay for business expenses.  (Ms. Schulken Dep. 49:6-13.)  These business purchases are "all intermixed" with personal purchases and the Schulkens have no way of verifying whether a checking account transfer was for personal or business purposes short of looking at the actual receipts for each transaction.  (*Id.* at 49:14-22.)

***In October 2006, Mr. Schulken stops working at Rodda Electric and begins working with Ms. Schulken at Wee Ones***.  In approximately October 2006, Mr. Schulken stopped working at Rodda Electric and began working with Ms. Schulken at the Wee Ones daycare. (Mr. Schulken Dep. 30:5-8, 97:19-98:6.)  Since that time, the Schulkens have earned all of their income from the daycare.  (Schulken Dep. Ex. 28 Resp. No. 17 (attached as Ex. A-28 to Salemi Decl.); Mr. Schulken Dep. 240:24-15.)

***The Schulkens' HELOC agreement permits the lender to request updated Financial Information and suspend further draws if the borrower fails to provide the information or if there is a material change in financial circumstances.***  The Schulkens' HELOC agreement required the Schulkens to provide WaMu "with a current financial statement, a new credit application or both, at any time upon our request."  (Schulken Dep. Ex. 4, p. 5, ¶ 17; Mr. Schulken Dep. 80:9-82:3.)  If the Schulkens failed to provide "documents and information to [WaMu] (such as updated financial information)," they would be in material default of the HELOC agreement, and Defendants could suspend additional advances or reduce their credit

limit.  (Schulken Dep. Ex. 4, p. 5, ¶ 14(b)(iii).)  Mr. Schulken understood "updated financial information" to include the Schulkens' current income.  (Mr. Schulken Dep. 85:25-86:24.)

The HELOC agreement also permitted WaMu to "suspend additional advances … or reduce your Credit Limit during any period in which … "[w]e reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances."  (Schulken Dep. Ex. 4, p. 5, ¶ 14(b)(ii).)

Before the Schulkens opened their HELOC account, they also signed an Authorization for Release of Information authorizing WaMu "to verify [the Schulkens'] employment record(s), banking accounts, credit history and/or any other information which any of them finds necessary in connection with [the Schulkens'] loan" and acknowledging that the Schulkens understood "that this verification may be completed prior to loan closing as a part of the application process and/or after closing as a part of the lender's quality control program or in collection of the loan."  (Authorization for Release of Information, Schulken Dep. Ex. 6 (attached as Ex. A-6 to Salemi Decl.); Mr. Schulken Dep. 89:13-25; Ms. Schulken Dep. 33:7-25.)  Ms. Schulken testified she understood that the lender could request their income information at the time of the application and agreed that the lender could also do so after the loan closed.  (Ms. Schulken Dep. 37:14-38:13.)  The Schulkens also certified that their loan application information was true and complete, and that they made no misrepresentation or omitted any pertinent information. (Authorization for Release of Information, Schulken Dep. Ex. 6.)[1]

***In March 2009, Chase requests that the Schulkens provide updated financial information.***  On March 13, 2009, Chase sent the Schulkens a letter requesting certain financial information within 14 days.  (Schulken Dep. Ex. 13 (attached as Ex. A-13 to Salemi Decl.); Mr. Schulken Dep. 134:19-135:20.)  The letter requested that the Schulkens complete and sign Internal Revenue Service Form 4506-T, which would permit Chase to obtain a summary of the

---

[1]   In September 2008, the United States Office of Thrift Supervision seized WaMu and placed it into the receivership of the Federal Deposit Insurance Corporation.  (TAC ¶ 11.)  The FDIC then sold certain WaMu assets and liabilities to Chase.  (Dkt. No. 30, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, p. 5.)  Chase acquired the Schulkens' HELOC agreement in this transaction.  (TAC ¶¶11-12.)

Schulkens' tax returns from the IRS.  (Schulken Dep. Ex. 13.)  The letter also requested "a copy of a recent paystub for each Borrower and any additional current income information documents you would like to provide," and asked the Schulkens to "indicate if you are self employed." (*Id.*)

In response, Mr. Schulken faxed Chase a signed 4506-T form.  (Schulken Dep. Ex. 13; Mr. Schulken Dep. 135:21-136:1.)   Mr. Schulken did not, however, include paystubs or evidence that the Schulkens were self-employed.  (Mr. Schulken Dep. 135:21-136:21, 138:13-21.)  Rather, Mr. Schulken says he circled the words "[p]lease indicate if you are self employed" on the letter.  (*Id*. at 135:21-136:1, 138:13-20.)  Soon thereafter, the Schulkens received a letter from Chase dated March 18, 2009 notifying them that their HELOC had been suspended effective March 18, 2009.  (Schulken Dep. Ex. 15 (attached as Ex. A-15 to Salemi Decl.); Mr. Schulken Dep. 149:12-20.)  That letter notified the Schulkens that:

> [WaMu] carefully considered the information you provided in response to our request for updated information.  We have not received all of the information requested in our letter dated 03/13/2009:  a signed Internal Revenue Service (IRS) 4506-T form and the most current pay-stubs. Therefore, your HELOC account has been suspended from additional advances effective 03/18/2009.  The primary reason for this suspension is we are unable to verify that your income is sufficient to satisfy your debt obligations.

(Schulken Dep. Ex. 15.)  This letter also included a page with answers to "Frequently Asked Questions," informing the Schulkens that the information WaMu "recently received was not sufficient to determine if the income is the same as the income information provided when you applied for your credit line."  (*Id*.)  The letter and FAQ also informed the Schulkens they could appeal the suspension and informed them how to request reinstatement.  (*Id*.)

After submitting further financial information to Chase (Mr. Schulken Dep. 142:5-14, 155:1-23, 160:1-161:2) the Schulkens received a letter advising that Chase had considered the Schulkens' information and had determined that there had been a material adverse change in their financial circumstances and that their HELOC would remain suspended:

> A careful review of updated income information together with additional information from the credit reporting agency listed below indicates that

there has been a material adverse change in your financial circumstances. Therefore, your HELOC account has been suspended from additional advances effective 03/27/2009. The primary reason for this suspension is that your income does not appear to be sufficient to satisfy your debt obligations.

(Schulken Dep. Ex. 18 (attached as Ex. A-18 to Salemi Decl.); Mr. Schulken Dep. 164:1-25.)

**Mr. Schulken writes letters to Chase and to the OCC confirming the business purpose of the Schulkens' HELOC.** In a March 2009 fax to Chase, Mr. Schulken wrote that since the Schulkens "run our own business we use our HELOC on a regular basis and appreciate its flexibility." (Schulken Dep. Ex. 16 at 00165 (attached as Ex. A-16 to Salemi Decl.); Mr. Schulken Dep. 155:1-156:1, 156:17-22.) In an April 2009 letter to Chase, Mr. Schulken wrote that the "majority" of the charges on his Chase Amazon Visa and Costco credit cards are "business expenses." (Schulken Dep. Ex. 19 (attached as Ex. A-19 to Salemi Decl.); Mr. Schulken Dep. 179:14-180:4, 181:20-24.) Finally, in an April 2009 complaint Mr. Schulken sent to the Office of the Comptroller of the Currency, Mr. Schulken wrote that the Schulkens pay their "2 credit cards in full each month and they are used primarily for business expenses…." (Schulken Dep. Ex. 21 at 00224 (attached as Ex. A-21 to Salemi Decl.); Mr. Schulken Dep. 186:4-23.)[2]

**The Schulkens pay off and terminate their WaMu HELOC.** In November 2010, the Schulkens paid off and closed their HELOC. (Ms. Schulken Dep. 93:3-7, 87:17-89:12; Mr. Schulken Dep. 193:22-194:16.) The Schulkens now have a HELOC with another lender. (Pls.' Mot. at 9.) The Schulkens currently do not have a HELOC with Chase and have no plans or desire to apply for or open one. (Ms. Schulken Dep. 94:10-14; Mr. Schulken Dep. 196:7-197:20.) In the future, "hypothetically, maybe" they may want to reopen another Chase HELOC (Mr. Schulken Dep. 196:21-197:11), but only if Chase's business practices changed, Chase

---

[2] Mr. Schulken testified he "misstated" this information and that the statements he made to Chase and the OCC were not accurate. (Mr. Schulken Dep. 181:20-182:19, 248:19-250:14.) At the time of his deposition, Mr. Schulken understood that one of the requirements for his TILA claim is that the line of credit be fore personal, family, or household purposes. (*Id.* at 256:11-15.) In April 2009, when Mr. Schulken wrote to Chase and the OCC about the business purposes for his HELOC, he did not know this. (*Id.* at 256:16-23.)

---

1   apologized, and Chase offered a HELOC with a lower interest rate.  (Pls.' Mot. at 28; Ms.

2   Schulken Dep. 93:13-94:14; Mr. Schulken Dep. 246:23-25.)

3       ***Chase's 4506-T income verification program.***  The Schulkens' HELOC was reviewed

4   and ultimately suspended as part of Chase's "4506-T program."  (Ex. G to Woodrow Decl. at

5   02119-02140.)   The purpose of the program was to help decrease losses in the Chase Home

6   Equity Portfolio.   (*Id.* at 02119.)   Under the program, Chase sought updated financial

7   information – specifically a signed 4506-T form and a recent paystub – from its WaMu home

8   equity borrowers.  (*Id.* at 02120.)  The 4506-T form allows Chase to obtain the borrowers'

9   federal tax transcripts. (*Id.* at 02128.)   Together with the paystubs, Chase uses the updated

10  financial information to analyze whether the borrowers suffered a material adverse change in

11  financial circumstances since originating the HELOC such that they would no longer be able to

12  fulfill their debt obligations.  (*Id.* at 02129.)

13      For a borrower who only provides either a signed 4506-T form or paystubs, but not both,

14  within the 14-day period specified by the letter requesting the documents (an "Incomplete

15  Responder"), Chase suspends the HELOC.  (Ex. C to Woodrow Decl. at 24:10-25:5)  Chase

16  subsequently sends the borrower a letter explaining that the HELOC has been suspended

17  because Chase cannot verify the borrower's income.  (Schulken Dep. Ex. 15.)  For a borrower

18  who does not respond at all to Chase's request for financial information (a "Non-Responder"),

19  Chase sends a letter stating that the HELOCs has been suspended because the  borrower's failure

20  to respond is a default of the HELOC agreement.  (M. Gill Decl., ¶ 3, Ex. A.)  For a borrower

21  who provides Chase with the requested 4506-T form and paystubs (if not self-employed), Chase

22  will review the information together with information from the borrower's credit report to

23  determine the borrower's debt-to-income ("DTI") ratio.  (Ex. G to Woodrow Decl. at 02120.)

24  Chase then compares the DTI ratio at origination to the current DTI based on the updated

25  financial information. (Ex. B. to Woodrow Decl. at 18:12-19:8.)   Borrowers at or above a

26  certain high DTI are suspended, borrowers below a lower DTI are not suspended.   Borrowers

27  with DTIs between the high and low DTI ranges are further individually reviewed by

28

---

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK

1   underwriters with discretion to determine if the HELOC should be suspended.  (Ex. C to

2   Woodrow Decl. at 67:17-68:5.)

3        WaMu originated the Schulkens' HELOC based on a stated income of $11,200 per

4   month.  (Ex. V to Woodrow Decl. at 0113; Mr. Schulken Dep. 168:14-169:21; 174:4-175:10.)

5   The Schulkens allege their income was not that high at origination and that they did not provide

6   WaMu with this figure; rather, they claim WaMu inflated their income at origination.  (Mr.

7   Schulken Dep. 168:14-169:21.)   In March 2009 when the Schulkens provided Chase with

8   updated financial information, their income as verified by this information was $5,780 per

9   month.  (Woodrow Decl. ¶ 7.)   Chase determined – based on the difference between their

10  $11,200 stated income and 26% DTI at origination and their $5,780 verified income and 49%

11  DTI at the time of review – that the Schulkens' had experienced a material adverse change in

12  financial circumstances that warranted suspension of their HELOC.  (Ex. Z to Woodrow Decl.

13  at 00202.)

14        **STANDARDS FOR DETERMINING CLASS CERTIFICATION**

15        The party seeking certification must provide facts sufficient to satisfy Rule 23(a) and (b)

16  requirements.  *Wal-Mart Stores, Inc. v. Dukes*, No. 10-277, — S.Ct. —, 2011 WL 2437013, at

17  *5 (U.S. June 20, 2011).  Thus, the district court must conduct a rigorous analysis to determine

18  that the prerequisites of Rule 23 have been met.  *Id*. at *7 (*citing Gen. Tel. Co. of S.W. v.

19  Falcon*, 457 U.S. 147, 161 (1982)).  The Schulkens bear the burden of demonstrating they have

20  met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule

21  23(b).  *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

22  "Rule 23 does not set forth a mere pleading standard."   *Wal-Mart*, 2011 WL 2437013 at *7.

23  Rather, a party seeking certification must prove that the requirements of Rule 23 have in fact

24  been met. *Id*.

25        Rule 23(a) requires the district court must find:  (1) numerosity of the class; (2) common

26  questions of law or fact: (3) the named plaintiffs' claims and defenses are typical; and (4) the

27  named plaintiff can adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Here, the

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK

1   Schulkens seek certification under Rule 23(b)(2).  Rule 23(b)(2)  requires the district court to

2   find that "the party opposing the class has acted or refused to act on grounds that apply

3   generally to the class, so that final injunctive relief or corresponding declaratory relief is

4   appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

5       This Court must specifically examine the elements of the Schulkens' claims, the *evidence*

6   relevant to prove those claims – not the unsubstantiated arguments in the class motion – and

7   then determine whether the class claims can be proved on a class-wide basis.  *Dukes*, 2011 WL

8   2437013 at *7.  For the reasons discussed below, the Schulkens' motion for class certification

9   should be denied because the Schulkens have not – and cannot – satisfy the Rule 23 elements.

10   <u>**ARGUMENT**</u>

11   **I.    THE SCHULKENS' MOTION FOR CLASS CERTIFICATION SHOULD BE**
12   **DENIED BECAUSE THEY LACK STANDING TO PURSUE INJUNCTIVE OR DECLARATORY RELIEF.**

13       The Schulkens no longer have a HELOC with Chase; therefore they have no standing to

14   pursue claims for injunctive and declaratory relief.  There is no injury or threat of injury to the

15   Schulkens that can be redressed through the declaratory or injunctive relief that they seek.

16   Specifically, the Schulkens seek injunctive relief requiring Chase to reinstate allegedly

17   improperly suspended HELOCs.  (*See* Pls.' Mot. at 31.)  They also seek a declaratory judgment

18   that Chase (i) cannot request updated financial information from HELOC borrowers and (ii)

19   cannot use stated income to determine whether a borrower has experienced a material adverse

20   change in financial circumstances.  (*Id*. at 31.)  Here, the Schulkens lack standing to seek this

21   relief because they have no HELOC with Chase to reinstate, and there is no risk that Chase will

22   request updated financial information from them or review their financial circumstances.

23       To establish standing in a class action case, the plaintiff must demonstrate that:  (1)

24   [T]he plaintiff suffered an injury in fact, *i.e.*, one that is sufficiently 'concrete and particularized'

25   and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the

26   challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'  *Bates*

27   *v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citations omitted) (noting that

28

---

the plaintiff must demonstrate standing with respect to each type of relief sought).   With respect to the Schulkens' claims for injunctive and declaratory relief, there is no imminent future harm from any Chase activities that could be redressed with prospective relief.

While the Schulkens had a HELOC with Chase when they initiated this action, they have since terminated the HELOC and obtained a new HELOC through another lender.   (*See* Pls.' Mot. at 9.)   The Schulkens have no standing to pursue their claim for injunctive relief, because they no longer have a suspended HELOC that Chase could reinstate.   *Wal-Mart,* 2011 WL 2437013, at *14 (plaintiffs no longer employed by Wal-Mart lacked standing to seek injunctive or declaratory relief; former named plaintiffs and "about half the members of the class . . . have no claim for injunctive or declaratory relief at all); *Hawecker v. Sorensen*, No. 1:10-cv-00085 OWW JLT, 2011 WL 98757, at *3-*4 (E.D. Ca. Jan. 12, 2011) (denying class certification where plaintiffs' claims for injunctive and declaratory relief to prevent property owner's discrimination became moot after they moved out of defendant's rental properties prior to moving for certification); *Jobie O. v. Spitzer*, No. 03 Civ. 8331(CM), 2007 WL 4302921, at *6 (S.D.N.Y. 2007) (dismissing case where plaintiff was released from jail prior to moving for class certification and therefore was not awaiting diversion into the rehabilitation program complained of in claim for injunctive relief).

Similarly, the Schulkens also lack standing to pursue a declaration that Chase cannot request updated financial information from HELOC borrowers and cannot use stated income to determine whether a borrower has experienced a material adverse change in financial circumstances.   (*See* Pls.' Mot. at 31.)   Because the Schulkens no longer have a HELOC with Chase, they will not be asked for updated financial information from Chase, and Chase will not use their stated income to determine if they experienced a material adverse change in financial circumstances.   Thus, no possibility of future harm exists that can be redressed by the declaratory relief the Schulkens seek.   *Levin v. Citibank, N.A.,* C-09-0350 MMC, 2009 WL 3008378,   at *3 (N.D. Cal. Sept. 17, 2009) (plaintiff who terminated his HELOC lacked standing to seek declaratory judgment regarding lender practices for suspending HELOCs); *RK*

*Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1055 (9th Cir. 2002) (plaintiffs who sold their business no longer had standing to challenge public nuisance ordinance); *Baker v. Arkansas Blue Cross & Blue Shield*, No. CV 08-3974-SBA, 2010 WL 2557500, at *3 (N.D. Cal. June 21, 2010) (where no possibility of future harm existed based on past stockholder vote, plaintiff had no standing to seek declaratory relief).

The Schulkens' attempt to salvage their standing by arguing that they hypothetically may reapply for a HELOC, but this argument is insufficient to establish standing. (*See* Pls.' Mot. at 28.) Ms. Schulken confirmed they have no plans to apply for a HELOC with Chase (Ms. Schulken Dep. 94:10-14) and Mr. Schulken testified he currently has no desire to open a HELOC with Chase, and it was only hypothetical to say that he may want to open one in the future. (Mr. Schulken Dep. 197:7-20.) To have standing, the Schulkens must demonstrate the threat of suffering from the same injury again is *imminent*, not conjectural or hypothetical. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992); *Bates*, 511 F.3d at 985. The Schulkens argue they might accept another Chase HELOC *if* Chase "fixed its business practices, offered a competitive interest rate, and apologized" (Pls.' Mot. at 28). For there to be a "threat" of the Schulkens suffering the same alleged injury again, and thus be any position to benefit from the injunctive and declaratory relief they seek, the Schulkens would have to decide at some point in the future to (1) apply for and/or be offered a Chase HELOC, (2) determine that the interest rate was "competitive," (3) receive an apology from Chase, (4) determine that Chase's business practices were acceptable, and (5) ultimately accept the HELOC. These contingencies for the Schulkens to have another HELOC with Chase are too conjectural and hypothetical to present any real or imminent threat of harm. *See, e.g.*, *Jobie O.*, 2007 WL 4302921 at *15 (claims of future harm too conjectural where plaintiff would have to be paroled, arrested on a parole violation, taken to a New York jail, and be placed in an rehabilitation program to suffer the same harm again).

Where the named plaintiff's claims become moot because they no longer have standing to seek prospective relief, they cannot represent a class seeking the same declaratory and

injunctive relief.  *Wal-Mart*, 2011 WL 2437013 at \*14; *Hodgers-Durgin v. de la Vina,* 199 F.3d 1037, 1045 (9th Cir. 1999) (where named plaintiffs lacked standing to seek injunctive relief because likelihood of future injury was too speculative, they could not represent class seeking such relief; any injury of absent class members was irrelevant).   Accordingly, the Schulkens' motion to certify their claims for injunctive and declaratory relief under Rule 23(b)(2) should be denied.[3]

## II.     THE SCHULKENS ARE INADEQUATE CLASS REPRESENTATIVES.

The Schulkens are not adequate class representatives because they have abandoned any pursuit of a Rule 23(b)(3) class for damages for their TILA and breach of contract claims in favor of pursuing only a Rule 23(b)(2) class for injunctive and declaratory relief on a class-wide basis.[4]   In doing so, the Schulkens were apparently attracted by the "perverse incentives for class representatives to place at risk potentially valid claims for monetary relief."  *Wal-Mart* at \*14.   While the Schulkens may have employed the (b)(2) strategy to avoid the additional burdens of establishing a Rule 23(b)(3) class, in seeking only declaratory and injunctive relief, they have created a conflict between themselves and the class they seek to represent.

Rule 23(a)(4) requires that the representative plaintiff fairly and adequately protect the interests of the class.  To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment that binds them.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (*citing Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).   "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and

---

[3]   The Schulkens suggest they could amend their complaint to add new plaintiffs that have standing to pursue prospective relief.  (Pl. Mot. 28, n. 20.)  This request should be denied as untimely.

[4]   The Schulkens' motion for class certification does not seek certification of a Rule 23(b)(3) class and does not seek class treatment for any of their claims for actual damages.   As far as money damages, they seek $500,000 in TILA statutory damages, which they characterize as "incidental" to their claim for injunctive and declaratory relief. (*See* Pls.' Mot. at 31.)  Because the Schulkens lack standing to pursue injunctive and declaratory relief, they cannot seek TILA statutory damages as "incidental" to that relief.

(2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* at 1020 (citation omitted). [5]

Here, the Schulkens have chosen to specifically pursue injunctive and declaratory relief on a class-wide basis in the hopes of securing class certification while forsaking any actual damages for their TILA and breach of contract claims. (*Compare* Pls.' Mot. at 31 *with* TAC ¶¶ 45, 51, 59.) To that end, the Schulkens have abandoned any pursuit of a (b)(3) class in favor of only pursuing a (b)(2) class. (*Compare* Pls.' Mot. at 1 *with* TAC ¶ 25.) The Schulkens have effectively precluded individual class members' damages claims by pursuing a strategy to only pursue injunctive and declaratory relief in hopes to succeed on class certification – a decision over which absent class members had no control. *Wal-Mart*, 2011 WL 2437013 at *14. As the Supreme Court emphasized in *Wal-Mart*, certification of individualized monetary claims belong in Rule 23(b)(3) classes, where class members are provided additional protections, such as mandatory notice and the opportunity to opt out. *Id.* at *13. In the (b)(2) class the Schulkens propose, borrowers do not receive notice, or the opportunity to opt out, and yet their claims for damages "would be precluded by litigation they had no power to hold themselves apart from." *Id.* at *14.

Here, the Schulkens' decision to abandon any claims for actual damages establishes a conflict of interest with other putative class members, rendering them inadequate class representatives. *See, e.g., W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class."); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 338-40 (S.D.N.Y. 2002)

---

[5] The Schulkens' lack of standing also prevents them from being adequate representatives of the class. *See Kennerly v. U.S.*, 721 F.2d 1252, 1260 (9th Cir. 1983) (where named plaintiff's claim becomes moot prior to moving for class certification, he no longer has a personal stake in injunctive relief and cannot adequately show he will provide vigorous advocacy); *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, CV 92-3970-DWW(GHKX), 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993) (plaintiffs lacked standing to bring Securities Act claim where they did not hold registered stock, and thus they could not adequately represent the class on that basis).

1   (actual conflicts between proposed class representatives who seek injunctive relief and members

2   of the proposed class who have already experienced personal injuries render the representatives

3   inadequate); *Clark v. Experian Info. Solutions, Inc*., Nos. Civ.A.8:00-1217-24, Civ.A.8:00-

4   1218-24, Civ.A.8:00-1219-24, 2001 WL 1946329, at *4 (D. S.C. Mar. 19, 2001)

5   (representatives inadequate where they chose to forego actual damages under Fair Credit

6   Reporting Act:  "the potential prejudice to class members who may wish to pursue claims and

7   relief other than those advanced by Plaintiffs guides the court to conclude that the interests of

8   Plaintiffs are not aligned with those of the class").

9   **III.    THE SCHULKENS' MOTION FOR CLASS CERTIFICATION SHOULD BE
10          DENIED BECAUSE THEY HAVE FAILED TO ESTABLISH COMMONALITY
          AND TYPICALITY.**

11         The Schulkens' motion for class certification should be denied because they cannot meet

12   the commonality and typicality requirements of Rule 23(a).  Under Rule 23(a)(2) the Court must

13   find that "there are questions of law or fact common to the class;" under (a)(3), the Court must

14   find that "the claims or defenses of the representative parties are typical of the claims or

15   defenses of the class."  Fed. R. Civ. P. 23(a).  "The commonality and typicality requirements of

16   Rule 23(a) tend to merge."  *Wal-Mart*, 2011 WL 2437013 at *7. n. 5 (internal citations omitted).

17   To satisfy the commonality requirement, the "claims must depend on a common contention" that

18   "must be of such a nature that it is capable of classwide resolution – which means that

19   determination of its truth or falsity will resolve an issue that is central to the validity of each one

20   of the claims in one stroke."  *Id.* at *7.  Even if the Schulkens did have standing to pursue their

21   claims for prospective relief (they do not), their claims lack commonality and typicality with the

22   claims of the "Inability to Verify Class" or the "Stated Income Class."

23         **A.    The Schulkens' Claims Based On An Alleged Lack Of Material Decline In
               Financial Circumstances Are Not Typical Of Or Common To The Class.**

24         The Schulkens' TILA and breach of contract claims based on an alleged lack of material

25   decline in financial circumstances cannot satisfy the commonality and typicality requirements of

26   Rule 23(a).  The Schulkens allege that Chase violated TILA and breached class members'

27

28

---

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK

HELOC agreements by suspending their HELOCs where no material change in circumstances occurred.[6]   (*See* TAC ¶¶ 42, 57.)   Resolution of the Schulkens' claim, however, will not determine whether any other purported class member did or did not suffer a material decline in their financial circumstances.   Whether any other class member suffered a material decline in financial circumstances can only be determined by reviewing the personal financial information of each absent class member.

The Schulkens seek to certify a "Stated Income Class" of WaMu HELOC borrowers whose HELOCs were originated based upon stated income but were suspended using the borrowers' verified financial income, where Chase determined there was a material adverse change in financial circumstances.   (*See* Pls.' Mot. at 13.)   In the Schulkens' case, their HELOC was originated by WaMu based on a stated income of $11,200 per month in 2005.   (*Id*. at 9.) Chase suspended the Schulkens' HELOC in 2009 based upon their verified income, which was determined to be $5,420 less per month than at origination.   (*Id*. at 9-10.)   The Schulkens argue this comparison of stated versus verified income to determine whether a borrower had experienced a material adverse decline in financial circumstances was flawed and does not give Chase a "reasonable" belief that a borrower experienced a material adverse change in financial circumstances.   (*Id*. at 13)   With respect to their situation, the Schulkens allege their original

---

[6]   TILA and Regulation Z permit a creditor to prohibit additional extensions of credit on a HELOC "during any period in which the creditor has reason to believe that the consumer will be unable to comply with the repayment requirements of the account due to a material change in the consumer's financial circumstances."   *See* 15 U.S.C. § 1647(c)(2)(C); 12 C.F.R. § 226.5b(f)(3)(vi)(B).   The FRB Official Interpretations to Regulation Z explain that two conditions must be met for this provision to apply:

> First, there must be a 'material change' in the consumer's financial circumstances, such as a significant decrease in the consumer's income.   Second, as a result of this change, the creditor must have a reasonable belief that the consumer will be unable to fulfill the payment obligations of the plan.   A creditor may, but does not have to, rely on specific evidence (such as the failure to pay other debts) in concluding that the second part of the test has been met.

12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 7.   Similarly, the Schulkens' HELOC agreement provides that the lender may suspend advances or reduce the credit limit during any period in which the lender "reasonably believe[s] [the borrower] will be unable to fulfill [its] payment obligations under this Agreement due to a material adverse change in [the borrower's] financial circumstances."   (Schulken Dep. Ex. 4, p. 5, ¶ 14(b)(ii).)

---

stated income was inflated, therefore they actually did *not* experience a material adverse change in financial circumstances.  (*Id.* at 9.)  An analysis of the Schulkens' claim reveals several flaws with the Schulkens' assertion that their claims are typical and common to all Stated Income Class borrowers.

As a threshold matter, the Schulkens' TILA and breach of contract claim fails because Chase will establish that the change from $11,200 in stated income per month to $5,780 of verified income per month is clearly a material decline in financial circumstances.  That Chase refused to extend further credit to the Schulkens as a result of this decline is not a violation of TILA or the HELOC.  This is a defense that is unique to the Schulkens, which destroys typicality.  Class certification is inappropriate where "a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *see also State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997).

In an attempt to fashion a claim that Chase wrongly determined a material decline in financial circumstances for all members of the Stated Income Class, the Schulkens argue Chase wrongly compared stated income at origination to verified income provided in tax returns, citing the opinion of their purported expert, Richard George.  (*See* Pls.' Mot. at 23-24.)  Mr. George's opinion, however, fails the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) test because he admittedly has no expertise with respect to HELOCs (George Dep. 63:10-13, 67:1-4, 81:7-21, 134:4-15); did not base his opinion on established mortgage lending standards (*id.* at 84:20-85:7, 128:2-129:18, 131:11-133:22); and simply concluded that Chase's 4506-T program did not meet the "smell test" (*id.* at 133:23-134:3).  *See Wal-Mart*, 2011 WL 2437013 at *8 (questioning plaintiffs' expert's qualifications under *Daubert*).

Yet even if the Court were to consider Mr. George's opinion, it does not support the Schulkens' claim that a comparison of stated income to verified income results in an unjustified HELOC suspension.  In fact, Mr. George carefully qualified his opinion to make clear that this comparison *did not* always result in an unjustified suspension:

> Because of the **risk** of inaccurate income information at the time of origination on stated income loans, comparing verified current income to unverified stated income at origination was not sound line management. Such a policy and practice **increased the risk** that a comparison of the two incomes **would falsely** demonstrate a decline in income, **potentially** prompting unjustified account suspensions.

(Ex. K to Woodrow Decl. at 9 (emphasis added).)  According to the Schulkens' own expert, this comparison created the "risk" of inaccurate income information "increasing a risk" of "false decline" and "potentially prompting" an unjustified suspension.[7]  The George Report does not establish that the Stated Income Class shares a common question because it does not establish that any Chase policy uniformly resulted in unjustified suspensions, at best his opinion is that the Chase policy *potentially* prompted unjustified suspensions for *some* borrowers.  Indeed, the George Report does not establish whether *any* HELOC suspensions were unjustified based on a comparison of stated income to verified income, thus does not advance the Schulkens' theory of commonality.  *See Wal-Mart*, 2011 WL 2437013 *8 (expert testimony that Wal-Mart's "strong corporate culture" made it "vulnerable" to "gender bias" does nothing to establish "whether 0.5 percent or 95 percent of the employment decisions at Wal-Mart might be determined by stereotyped thinking," thus Court can "safely disregard what he has to say") (internal citations omitted).  Mr. George's opinions fall short of the "significant proof" needed to demonstrate that the Schulkens' claims are common and typical of the class.  *Id.*

Further, Mr. George acknowledged that the Schulkens' specific situation – where their stated income allegedly had been inflated and was significantly higher than their verified income – does not necessarily hold true for other class members.  (George Dep. 165:8-10 ("Q. Is it your understanding that all stated income loans were inflated?  A.  No.").)  He recognized that some borrowers' stated income may actually be correct, and thus would be equal to verified income.  (*Id.* at 198:1-6.)  In those situations, a suspension where the verified income showed a material adverse decline in financial circumstances would not be unjustified.  (*See id.* at 174:5-

---

[7]  Eliminating any possibility that the George report can be used to establish a common issue for class certification, Mr. George further testified in his deposition: "Q:  [I]s it your opinion that comparing verified income to unverified income results in– always results in an unjustified account suspension? A:  That is not my opinion." (George Dep. 161:2-5.)

---

1   14 (noting that "most borrowers in this country are, fundamentally, honest and responsible").)

2   Still other borrowers may not have disclosed all of their income at origination, in which case

3   their stated income would be lower than their verified income at origination and a finding of a

4   adverse decline based on verified income would not be unjustified. (*Id.* at 198:7-14.)  Similarly,

5   changes in borrowers' debt, irrespective of any changes in income can also be a material decline

6   in financial circumstances.  (*Id.* at 148:19-149:17.)  This testimony confirms the Schulkens'

7   liability theory is not common or typical to the class, as it will not resolve a central issue "in one

8   stroke." *Wal-Mart*, 2011 WL 2437013 at *7.

9          Additionally, for borrowers who ultimately provided Chase with the requested financial

10  information and were determined to have a DTI in a certain range, individual Chase

11  underwriters reviewed all of the borrowers' financial information to make individualized

12  determinations of whether the borrower had experienced a material adverse change in financial

13  circumstances to justify suspension.  (*See* George Dep. 113:13-114:1.)  Mr. George agreed that

14  to determine whether those borrowers' HELOCs suspensions were justified, one would need to

15  look at the borrowers' "track record," their other assets, and what they needed the line of credit

16  for.  (*Id.* at 158:15-159-1.)  The validity of any determination of a material decline in financial

17  circumstances does not turn on the propriety of comparing a borrower's stated income at

18  origination to verified income.  Rather, resolution of whether a borrower suffered a material

19  decline in financial circumstances involves examination of borrower specific information, such

20  as the borrower's income at origination, debt at origination, income at suspension, debt at

21  suspension, payment history, and other circumstances surrounding their ability to repay their

22  HELOC.

23         Because the Schulkens have not demonstrated that their claims align with the Stated

24  Income Class, they fail to meet the commonality and typicality requirements of Rule 23(a).

25  *Wal-Mart*, 2011 WL 2437013 at *11; *Hanon*, 976 F.2d at 508.

26

27

28

---

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK

**B.    The Schulkens' TILA Claims Are Not Typical Because They Are Subject To Unique Defenses.**

The Schulkens are not typical of the class because their TILA claims are subject to unique defenses relating to their lack of standing to seek injunctive and declaratory relief and the use of their HELOC for business purposes.

The Schulkens' claims are not typical or common of those of absent class members because they lack standing to bring their claims for prospective injunctive and declaratory relief. *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993) (plaintiffs' lack of standing indicated that their claims are not typical).

The Schulkens' TILA claims are also not typical because resolution of these claims will require determination of Chase's defense that the Schulkens used their HELOC primarily for business purposes.  To bring a TILA claim, a plaintiff must establish their HELOC was used "primarily for personal, family, or household purposes."  (Dkt. No. 30, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, p. 7.)  To determine whether a loan is for business or consumer purposes, courts look "at the ultimate purpose for which the funds were used." *Sherlock v. Herdelin*, CIV. A. 04-CV-3438, 2008 WL 732146, at *6 (E.D. Pa. Mar. 17, 2008).  Here, the Schulkens concede they used their HELOC in part for expenses relating to the daycare business they run out of their home.  (*See* Pls.' Mot. at 7.)[8]  The Schulkens have only recently produced individual receipts evidencing the use of their HELOC which will need to be examined in detail.[9]  The evidence relating to the Schulkens' use of their HELOC is unique to

---

[8] The Schulkens testified they used their HELOC to pay for:
- tools that Mr. Schulken may have purchased for use either in his work at Rodda Electric, for personal use, or for both, or tools that he purchased and sold to third parties (Mr. Schulken Dep. 99:23-103:24, 107:25-110:2);
- business expenses for Wee Ones, such as cleaning or gardening supplies (*Id.* at 105:12-15, 113:14-20, 115:22-116:5, 120:3-121:1)
- "commingled" groceries for both personal use and for Wee Ones (*Id.* at 105:12-106:4);
- toys and educational supplies for both personal use and for Wee Ones (Ms. Schulken Dep. 43:5-24, 44:12-45:1).

[9] To determine whether a particular credit card transaction was for personal expenses or for business expenses, the Schulkens would have to go through each transaction and any accompanying receipts. (Mr. Schulken Dep. 112:3-19, 121:2-122:8; Ms. Schulken Dep. 43:25-44:11, 45:2-9, 81:15-83-16, 110:13-23. 111:22-113:13.)

---

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK

the Schulkens' TILA claims, and will not determine any absent class members' claim.  The Schulkens cannot establish their claims are typical of the class where, as here, they are subject to unique defenses that will take up significant time and "threaten[s] to become the focus of the litigation."  *Hanon*, 976 F.2d at 508; *see also Arabian v. Sony Electronics, Inc.,* 05-CV-1741WQH(NLS), 2007 WL 627977, at *5 (S.D. Cal. Feb. 22, 2007) (named plaintiffs failed to satisfy typicality requirement where they would be subject to unique defenses including whether they were "consumers" because plaintiffs made purchases for commercial purposes); *cf. also Ewert v. eBay, Inc.*, C-07-02198 RMW, C-07-4487 RMW, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010) ("By failing to show how class members' consumer status can be determined without individualized inquiry, plaintiffs have failed to meet their burden of establishing that common questions of law and fact predominate over individual questions...").  Consequently, the Schulkens have failed to satisfy the typicality requirement of Rule 23(a).

C.     **The Schulkens' Claims Based On A Material Default Of The HELOC Agreements Are Not Common or Typical**

The Schulkens' claims are also not typical or common of the "Inability to Verify Class" again because they lack standing to seek prospective relief, and also because the class includes Incomplete Responders with claims different from theirs, borrowers with different HELOC contracts than the Schulkens, and borrowers who were later suspended for different reasons. (*See* Pls.' Mot. at 10, 12-13.)  The Schulkens allege Chase violated TILA and breached HELOC agreements like theirs where Chase suspended borrowers' HELOCs for those who did not provide Chase with either a complete IRS For 4506-T, paystubs, or both, upon Chase's request.[10]  (*See* Pls.' Mot. at 12.) [11]  The Schulkens' claims are not typical of the class they seek to certify.

---

[10]  TILA and its implementing Regulation Z permit a creditor to prohibit additional extensions of credit on a HELOC "during any period in which the consumer is in default with respect to any material obligation of the consumer under the agreement."  *See* 15 U.S.C. § 1647(c)(2)(D); 12 C.F.R. § 226.5b(f)(3)(vi)(C).  The Federal Reserve Board's Official Staff Commentary to Regulation Z permit a creditor to "specify events that would qualify as a default of a material obligation" under this provision. *See* 12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(vi) at 8.  The Schulkens' HELOC agreement required them to provide "a current financial statement, a new credit application or both, at any time upon our request."  (Schulken Dep. Ex. 4, p. 5, ¶ 17.)

---

First, after Chase suspended the Schulkens' HELOC based on their failure to provide Chase with the 4506-T form and paystubs or evidence of self-employment as requested, the Schulkens eventually submitted additional financial information.  (*See* Pls.' Mot. at 8.)  Chase evaluated this information and determined the Schulkens experienced a material adverse change in their financial circumstances warranting the suspension of their HELOC.  (Schulken Dep. Ex. 18.)  Thus, the Schulkens received a letter stating their HELOC would remain suspended based on a material adverse change in financial circumstances, which is permitted under both TILA and their HELOC agreement.  (*Id.*)  Their situation therefore differs from those Incomplete Responders who did not submit any additional financial information.  Their claims also differ from those who later submitted additional financial information and were reinstated.

Second, the Schulkens are not typical of those borrowers who had HELOC agreements that were silent as to whether Chase could collect financial information.  The Schulkens' HELOC agreement – and the Authorization they signed at closing – allowed Chase to request certain financial information to verify their income.  (*See* Schulken Dep. Ex. 4, p. 5, ¶ 17.)  Their HELOC agreement also specified that failure to provide such financial information would put them in default of their agreement and permit Chase to suspend their HELOC.  (*Id.*, p. 5,

---

The agreement specified that the Schulkens' failure to provide "documents and information to [the lender] (such as updated financial information)," would put them in material default of the HELOC agreement and permit Chase to suspend additional advances from their account.  (*Id.*, p. 5, ¶ 14(b)(iii).)

[11] The Schulkens appear to have abandoned their claim that Chase violated TILA by failing to provide sufficient notices of the HELOC suspensions.  (*See* TAC ¶¶ 48-49.)  In their TAC, they seek actual and statutory damages, but not injunctive or declaratory relief for this claim.  (*Id.* ¶¶ 50-51.)  Their motion for class certification does not address this claim.  To the extent the Schulkens attempt to resuscitate their TILA notice claim in reply, this claim cannot be certified because the Schulkens are not typical of the Inability to Verify Class which includes Non-Responders.  The Schulkens are Incomplete Responders because their HELOC was suspended as a result of their failure to submit all requested documents.  (*See* Pls.' Mot. at 22.)  The Schulkens and other Incomplete Responders received letters indicating their HELOC accounts were suspended because Chase was "unable to verify" income. (*See* Schulken Dep. Ex. 15.)  The Non-Responders eventually received letters stating that because Chase had not received any of the requested financial information, their HELOCs were being suspended because their failure to provide the requested financial information constituted a "default" of their HELOC agreement.  (*See* M. Gill Decl. ¶ 3, Ex. A.)  The Incomplete Responders received different letters than the Non-Responders and the Schulkens cannot challenge the Non-Responder letter because it was never sent to them.

---

¶ 14(b)(iii).)   But borrowers with HELOC agreements that were silent as to whether Chase could request this information have different claims and are subject to different defenses than the Schulkens.  *See, e.g., Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (plaintiffs lacked typicality to bring contract claims for other franchisees with different contract language because of the "possibility that there was a breach of contract with some class members, but not with other class members").  Here, if the Court were to certify the proposed class and finds that the Schulkens' contract does allow Chase to collect updated financial information through 4506-T forms and paystubs, the Court will not have addressed any contract that is *silent* with respect to whether Chase could request this information.  Such a decision would impermissibly bind those class members with contracts different from the Schulkens'.

Third, the Schulkens claims are not typical of the Inability to Verify Class (or the Stated Income Class) because those classes include borrowers whose HELOCs were subsequently actioned for other reasons (such as a borrower default on their payment obligation), and still other borrowers who terminated their HELOCs and (like the Schulkens) have no standing to pursue claims for prospective relief.

For all of these reasons, the Schulkens have failed to establish the elements of Rule 23(a) and their motion to certify the Inability to Verify Class and the Stated Income Class to pursue declaratory and injunctive relief under Rule 23(b)(2) should be denied.

## IV. THE SCHULKENS' MOTION FOR RULE 23(B)(2) CLASS CERTIFICATION SHOULD BE DENIED BECAUSE INJUNCTIVE RELIEF IS UNAVAILABLE UNDER TILA

The Schulkens' request for certification of their TILA claims under Rule 23(b)(2) should be denied because injunctive relief is not an available remedy for TILA claims.  *See* 28 U.S.C. § 1640(a); *see also Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) ("Because we do not expect Congress to 'expressly preclude' remedies, we do not read TILA to confer upon private litigants an implied right to an injunction or other equitable relief such as restitution or disgorgement. ... Because injunctive relief is not a remedy available under TILA to

Christ and the plaintiff class, Rule 23(b)(2) certification under TILA was improper.") (citation omitted). "[T]he unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion." *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n. 39 (5th Cir. 2000).  Accordingly, the Schulkens' request for certification of a (b)(2) class under TILA should therefore be denied.[12]

**CONCLUSION**

For the foregoing reasons, defendant JPMorgan Chase Bank, N.A. respectfully requests that the Court deny the Schulken's Motion for Class Certification.

Dated:  June 23, 2011                              By:     /s/Michael G. Salemi

LEANN PEDERSEN POPE                  GEORGE G. WEICKHARDT (SBN 58586)
VICTORIA R. COLLADO                     WENDY C. KROG (SBN 257010)
MICHAEL G. SALEMI                         ROPERS, MAJESKI, KOHN & BENTLEY
BURKE, WARREN, MACKAY                201 Spear Street, Suite 1000
  & SERRITELLA, P.C.                          San Francisco, CA 94105-1667
330 North Wabash, 22nd Floor              Telephone: (415) 543-4800
Chicago, IL 60611                               Facsimile: (415) 972-6301
Telephone: (312) 840-7000                   Email: gweickhardt@rmkb.com
Fax: (312) 840-7900                                     wkrog@rmkb.com
Email: lpope@burkelaw.com
         vcollado@burkelaw.com
         msalemi@burkelaw.com
Admitted *Pro Hac Vice*

*Attorneys for Defendant*,
JPMORGAN CHASE BANK, N.A.

---

[12] Numerous courts have followed *Christ* and hold that injunctive relief is unavailable under TILA.  *See, e.g., Watkinson v. MortgageIT, Inc.*, No 10-CV-327-IEG (BLM), 2010 WL 2196083, at *11 (S.D. Cal. June 1, 2010) (injunctive and equitable relief are not  remedies available under TILA); *Fullmer v. JPMorgan Chase Bank, NA*, No. 2:09-cv-1037 JFM, 2010 WL 95206, *9 (E.D. Cal. Jan. 6, 2010) ("Injunctive relief is not a remedy provided in [TILA] and should not be read into it."); *Volovnik v. Benzel-Busch Motor Car Corp.*, No. 09 Civ. 10595 (DAB)(JLC), 2010 WL 3629819, *9 (S.D.N.Y. July 29, 2010) (declining to read injunctive relief into TILA and recognizing that the trend among courts is to consider TILA's stated remedies for actual damages, costs, statutory damages, and attorneys fees the exclusive remedies available under the statute); *Reeder v. HSBC USA, Inc.*, No. 09-cv-2043, 2009 WL 4788488, *9 (N.D. Ill. Dec. 8, 2009) (dismissing TILA class claim: "[T]o the extent that Plaintiffs do seek injunctive relief, the Eleventh Circuit's recent opinion in [*Christ*], explains why such relief is not available to private litigants under TILA."). *Cf. Hofstetter v. Chase Home Fin.*, LLC, C 10-01313 WHA, 2011 WL 1225900, at *10 (N.D. Cal. Mar. 31, 2011) (summarily accepting argument for allowing injunctive relief without discussing or distinguishing *Christ* or its progeny).

---

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 5:09-cv-02708-LHK