1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY SCHULKEN, et al., | Case No.: 09-CV-02708-LHK |
| Plaintiffs, | |
| v. | ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS |
| WASHINGTON MUTUAL BANK, HENDERSON, NV, et al., | LEAVE TO AMEND |
| Defendants. | |

I.      INTRODUCTION

Jeffrey Schulken and Jenifer Schulken (collectively, "Plaintiffs") bring this putative class

action against Washington Mutual Bank ("WaMu") and JPMorgan Chase ("Chase") (collectively,

"Defendants"), alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et*

*seq*., and its implementing statute, Regulation Z, 12 C.F.R. 226.1, *et seq*.; violations of California's

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; and breach of

contract.  Generally, Plaintiffs allege that Defendants improperly suspended and reduced credit

limits on home equity lines of credit ("HELOCs").

Plaintiffs filed a motion for class certification on June 2, 2011, as scheduled in the Case

Management Order entered by this Court on February 9, 2011.  *See* Dkt. No. 69.  Also on June 2,

2011, the Court held a Case Management Conference (CMC).  At the CMC, Plaintiffs stated that

they intended to amend their Third Amended Complaint to change the class definitions to match

1

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

1       the definitions submitted in their motion for class certification.  The Court asked the parties to

2       stipulate to the proposed amendments if possible.  On June 9, 2011, Plaintiffs filed a motion for

3       leave to file a fourth amended complaint (4AC).  Mot., Dkt. No. 90.  The hearing on this motion

4       was set for September 8, 2011.  The Court finds this matter suitable for decision without oral

5       argument, and hereby VACATES the September 8, 2011 hearing.  *See* Civ. L. R. 7-1(b).  For the

6       reasons set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' motion

7       for leave.

8           II.       BACKGROUND

9               The proposed 4AC adds significant factual detail to the allegations in the Third Amended

10      Complaint (TAC).   In addition, the 4AC adds several claims and amends the original class to

11      define two classes, each with one subclass.  The TAC asserted that Plaintiffs obtained a $250,000

12      HELOC from WaMu in October, 2005.  TAC ¶ 10.  The HELOC was secured by their primary

13      residence, and Plaintiffs allege it was used primarily for personal family and household purposes.

14      TAC ¶ 17.  On September 25, 2008, the United States Office of Thrift Supervision seized WaMu

15      and put it into FDIC receivership.  TAC ¶ 11.  After this, Chase purchased and assumed "all

16      mortgage servicing rights and obligations of" WaMu, including the Plaintiffs' HELOC account.

17      TAC ¶ 12.

18              On March 13, 2009, Plaintiffs received an "Income Verification Request" letter from Chase

19      requesting certain financial information.  TAC ¶ 18.  In response to the letter, Plaintiffs submitted

20      financial information.  TAC ¶ 19.  On March 19, 2009, Plaintiffs discovered that their HELOC had

21      been suspended.  TAC ¶ 20.  The following day, Plaintiffs received a letter from Chase stating that

22      their HELOC had been suspended for failure to submit the financial information requested on

23      March 13, 2009.  TAC ¶ 20.  Plaintiffs alleged that their income did not materially change or

24      decrease at any time, and that the Defendants had no reasonable basis to conclude that Plaintiffs

25      would be unable to meet the terms of their HELOC.  TAC ¶ 23.

26              On the basis of these allegations, Plaintiffs sought (in the TAC) to represent a class

27      consisting of "All WAMU and Chase HELOC borrowers in the United States who had their

28      respective HELOCs reduced or suspended due to WAMU's or Chase's conclusion that the

2

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    borrower would be unable to fulfill their payment obligations due to a purported material adverse

2    change in financial circumstances." TAC ¶ 26. On behalf of this class, Plaintiffs asserted the

3    following claims for relief: 1) a declaration that Chase violated TILA and Regulation Z based on

4    Chase's suspension of HELOC accounts in the absence of a material change in income or a

5    reasonable belief that borrowers would be unable to repay their debt obligations; 2) actual and

6    statutory damages for the same TILA and Regulation Z violations asserted in the first claim; 3)

7    actual and statutory damages under TILA and Regulation Z for Defendants' failure to give notice

8    of the specific reasons that HELOC accounts were suspended; 4) damages for breach of the

9    HELOC contracts based on suspension of HELOC accounts without any material change in income

10   or reasonable belief that borrowers would be unable to repay their debt obligations; and 5) HELOC

11   reinstatement and restitution for UCL violations based on unlawful acts (violations of TILA and

12   Regulation Z), unfair acts (suspending accounts without advance notice), and asserted fraudulent

13   acts (allegedly false statements or material omissions made when Chase communicated with

14   customers about suspended HELOC accounts).

15          In the 4AC, Plaintiffs expand upon the allegations in the TAC. Plaintiffs allege that the

16   Income Verification Letters were sent to borrowers under the "4506-T Program," a program

17   designed to reach borrowers ineligible for other HELOC-suspension programs designed by Chase

18   to suspend HELOCs. 4AC ¶ 7. Plaintiffs allege that under the 4506-T Program, Chase requested

19   that customers fill out an IRS Form 4506-T (a Request for Transcript of Tax Return) and recent

20   paystubs. 4AC ¶ 8. Plaintiffs allege that Chase then suspended the accounts of all "Incomplete

21   Responders," customers who provided only one of the requested items (either paystubs or the

22   4506-T form, but not both). 4AC ¶ 11. Plaintiffs allege Chase also suspended the accounts of

23   "Non-Responders," those who failed to submit any response to the Income Verification Letters

24   within 14 days. *Id.* A third group of customers provided both signed 4506-T forms and paystubs.[1]

25   For these customers, Chase calculated a Debt-to-Income ratio (DTI) based on the submitted

26   information. 4AC ¶ 13. If the DTI was below a certain threshold, the account was not suspended

27   _____

[1] Non-Responders and Incomplete Responders could move into the group of customers who
provided complete information if they submitted information after appealing the suspension of

28   their HELOC.

3

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

1        (or was reinstated) after a "reasonableness review."  4AC ¶ 14.  If the DTI was above a certain

2        threshold, Chase suspended the HELOC automatically.  *Id*.  If the DTI was between these two

3        thresholds, Chase compared the present DTI to the DTI at origination.  These customers' HELOCs

4        could be suspended based on factors including their disposable income and their relationship with

5        the bank.  *Id*.

6                In the 4AC, Plaintiffs allege that they used their HELOC to pay for personal, family and

7        household expenses, and "occasionally, but by no means primarily," to pay for expenses relating to

8        the family daycare the Schulkens ran out of their home since 2000.  4AC ¶¶ 17-18.  Plaintiffs

9        allege that they received an Income Verification Letter on March 17, 2009, and that they returned it

10       to Chase the same day with a signed 4506-T form and an annotation that they are both self-

11       employed.  4AC ¶ 21.  Plaintiffs allege that two days later, they found that Chase had suspended

12       their HELOC.  4AC ¶ 21.  On March 21, 2009, they received a letter from Chase stating that the

13       suspension was based on Chase's inability to verify the Plaintiffs' financial information, because

14       they did not submit paystubs.  4AC ¶ 21.

15               After this, the Plaintiffs provided additional financial information to Chase.  On March 31,

16       2009, the Plaintiffs received a letter from Chase stating that their HELOC would remain suspended

17       because Chase determined that Plaintiffs had insufficient income to satisfy their debt obligations.

18       4AC ¶ 25.  Plaintiffs contacted Chase to dispute this, arguing that their income had "hardly

19       changed" since they opened the HELOC account.  4AC ¶ 26.  Chase responded that because the

20       Plaintiffs' monthly income at origination was listed as $11,500, their present income was

21       materially lower.  4AC ¶ 27.  The Plaintiffs responded that they had never earned $11,500 monthly,

22       and that WaMu must have intentionally misrepresented their income if their loan application stated

23       this.  4AC ¶ 28-29.  Plaintiffs allege that the "vast majority" of HELOC accounts processed

24       through the 4506-T Program were "stated income" loans in which the borrower's income had not

25       been objectively verified at origination.  4AC ¶ 29.  Plaintiffs further allege Chase's awareness that

26       comparing customers' verified present incomes to their stated incomes would "be more likely to

27       falsely demonstrate adverse changes in borrower financial conditions when none actually had

28       occurred," and intentionally used this method of DTI comparison to "increase the likelihood of

4

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

1    issuing a suspension." 4AC ¶ 29, 33.  Plaintiffs allege that their income had not materially

2    decreased since origination of their HELOC, that they had never missed or been late with a

3    payment on the HELOC, that their home had not significantly decreased in value, and that they had

4    substantially paid down the principal balance on the account since origination.  4AC ¶ 31.

5            Plaintiffs allege that their HELOC contract allowed Chase to request "a current financial

6    statement, a new credit application, or both," but that this language did not authorize Chase to

7    request the 4506-T form or paystubs, or to suspend their account when they failed to produce this

8    information.  4AC ¶ 34.  Plaintiffs allege that other potential class members' HELOC agreements

9    were silent about submission of additional information, and thus that Chase was not authorized to

10   request such information from those customers, either.  4AC ¶ 34.

11           Based on these allegations, Plaintiffs define the following classes and subclasses:

12   Inability to Verify Class:

13   All HELOC borrowers nationwide who were parties to the Schulken HELOC
     Contract and whose HELOCs Chase blocked through the 4506-T Program when the
14   customers did not provide either a complete IRS Form 4506-T, paystubs, or both,
     upon Chase's request.

15   Inability to Verify California Subclass:

16   All Inability to Verify Class members whose homes securing the HELOCs are
     located in California.

17   Stated Income Class:

18   All heritage WaMu HELOC borrowers nationwide whose HELOCs were originated
     based on stated incomes but who were blocked by Chase at any time through the
     4506-T Program based upon a determination by Chase that the borrowers' verified
19   current financial information showed a material adverse change in financial
     circumstances from their stated incomes on file when they opened their accounts.
20
     Stated Income California Subclass:
21
     All Stated Income Class members whose homes securing the HELOCs are located
     in California.
22

23           Plaintiffs assert the following claims on behalf of these classes: 1) account reinstatement

24   and statutory damages for TILA and Regulation Z violations on behalf of the Inability to Verify

25   Class, based on the suspension of HELOCs due to customers' failure to provide 4506-T forms,

26   paystubs, or both; 2) alternatively, injunctive relief  and a declaration that Chase violated TILA and

27   Regulation Z based on violations asserted in the first claim; 3) HELOC reinstatement and statutory

28   damages for TILA and Regulation Z violations on behalf of the Stated Income Class, based on the

5

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

1    use of verified current DTI as compared to unverified origination DTI as a basis for HELOC

2    suspension; 4) alternatively, injunctive relief  and a declaration that Chase violated TILA and

3    Regulation Z based on violations asserted in the third claim; 5) HELOC reinstatement and statutory

4    damages for TILA and Regulation Z violations on behalf of the Inability to Verify Class, based on

5    insufficient notice of HELOC reductions; 6) HELOC reinstatement for breach of contract on behalf

6    of the Inability to Verify Class; 7) HELOC reinstatement for breach of contract on behalf of the

7    Stated Income class; and 8) injunctive relief for UCL violations on behalf of the California

8    subclasses, based on unlawful and unfair acts as alleged in the other claims, and on additional

9    alleged unfair and fraudulent acts.

10         III.    LEGAL STANDARD

11             Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a

12    matter of course within 21 days of serving it.  Fed. R. Civ. Pro. 15(a)(1).  After that initial period

13    has passed, amendment is permitted only with the opposing party's written consent or leave of the

14    court.  *Id.* 15(a)(2).  Rule 15 instructs that "[t]he court should freely give leave when justice so

15    requires."  *Id.*  Although this rule "should be interpreted with extreme liberality, leave to amend is

16    not to be granted automatically."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)

17    (internal citation and quotation marks omitted).  Courts commonly consider four factors when

18    determining whether to grant leave to amend: (1) bad faith on the part of the movant; (2) undue

19    delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment.  *Foman v.*

20    *Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980,

21    986 (9th Cir. 1999).  "[I]t is the consideration of prejudice to the opposing party that carries the

22    greatest weight."  *Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs*, 833 F.2d at 185).

23    "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a

24    *presumption* under Rule 15(a) in favor of granting leave to amend."  *Id.* (citation omitted).  "The

25    party opposing leave to amend bears the burden of showing prejudice."  *Serpa v. SBC Telecomms.,*

26    *Inc.*, 318 F. Supp. 2d 865, 870 (N.D. Cal. 2004) (citing *DCD Programs*, 833 F.2d at 187).

27         IV.    DISCUSSION

28

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

1    Chase argues that Plaintiffs should be denied leave to amend their complaint to add the

2    allegations and claims relating to Chase's comparison of stated income and verified income. Chase

3    moves on two grounds.  First, Chase argues that Plaintiffs unreasonably delayed seeking to amend

4    their complaint, because they knew that their own HELOC was suspended based on a comparison

5    of verified and stated income as of April 2009 and therefore could have stated this claim much

6    sooner.  Second, Chase argues that it will be prejudiced if the Court allows the amendment,

7    because it will lose the opportunity to challenge Plaintiffs' individual claims in a dispositive

8    motion to be decided before class certification.[2]  Neither argument provides a sufficient basis for

9    the Court to deny leave to amend.

10    a.    Undue Delay

11    It does appear that Plaintiffs could have stated their claims based on the income

12    comparisons sooner than they did.  In the proposed 4AC, Plaintiffs allege that they were aware of

13    the circumstances of their own HELOC suspension before the initial complaint was filed.  See 4AC

14    ¶¶ 27, 28 ("Mr. Schulken explained to Chase that the $11,200 figure was inaccurate, that neither he

15    nor his wife had ever provided such an inflated income figure to WaMu, and that if the Schulkens'

16    loan file indicated such an income, then WaMu had intentionally misrepresented their income.").

17    Plaintiffs argue that they could not assert this theory until they had additional detail regarding the

18    HELOC contracts of potential class members, which they did not obtain until "starting in February

19    2011."  However, Plaintiffs submitted their first four complaints without the benefit of this

20    discovery.  It is not clear why the TILA and breach of contract claims asserted in the TAC could be

21    pled without discovery of class members' contracts while the income comparison claims could not.

22    In addition, while Plaintiffs complain that Chase failed to produce discovery of putative class

23    members' contracts and its policies until starting early in 2011, it appears that Plaintiffs could have

24    been more diligent in asserting their rights to discovery.  For example, the Court granted-in-part

25    and denied-in-part Chase's third motion to dismiss in October, 2010.  It is not clear why Plaintiffs

26    waited until a CMC in February 2011 to raise deficiencies in Chase's production with the Court.

27

28
_____
[2] The Court set a deadline of April 7, 2011 for Chase to move for summary judgment on Plaintiffs' individual claims as pled in the TAC, but Chase did not file such a motion.

7

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

1          Even accepting Plaintiffs' argument that they could not, in good faith, allege that Chase

2    applied its policy of income comparison to the entire class until discovery of this policy, it still

3    appears that Plaintiffs could have moved to amend their complaint before filing their motion for

4    class certification.  Chase points out that by April 8, 2011, Plaintiffs' expert had articulated and

5    opined on the income comparison theory.  Surely if Plaintiffs' expert could express his opinion of

6    the theory by that time, Plaintiffs had a good faith basis to plead claims based on the theory.  Had

7    Plaintiffs moved to amend their complaint before submitting their motion for class certification,

8    these issues could have been resolved before the deadline for filing a class certification motion.

9          Despite all of this, the Court finds that Plaintiffs' delay is not so significant that leave to

10   amend should be denied.  Since the filing of the initial complaint, Chase has been on notice that

11   Plaintiffs alleged Chase suspended HELOCs in the absence of a material change in customer

12   income.  The additional details Plaintiffs seek to add in the 4AC regarding comparison of stated

13   and verified income flesh out a theory Plaintiffs have stated all along.  Clearly, it would have been

14   preferable for Plaintiffs to move to amend their complaint as soon as possible—and certainly

15   before filing a motion for class certification asking the Court to certify classes that were not even

16   described in the operative complaint.  However, the fact that Plaintiffs moved to amend in a matter

17   of days after their class certification motion was filed enabled the Court to address this issue before

18   the class certification motion itself.  Delay alone is not a sufficient ground to deny leave to amend.

19   *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is

20   insufficient to justify denying a motion to amend.").

21         Chase cites two cases in which courts denied motions for leave to amend class action

22   complaints, but these cases are distinguishable.  In one, discovery had been closed for nine months

23   when the motion for leave to amend was filed, and the court noted it would likely need to be

24   reopened if the amendments were allowed.  *In re Taco Bell Wages and Hours Actions,* No. 1:07-

25   cv-01314 OWW DLB, 2011 U.S. Dist. LEXIS 47758 at *16-*18 (E.D. Cal. May 3, 2011).  In the

26   other case, the court denied leave to amend not solely based on the plaintiff's delay, but also

27   because amendment would prejudice the defendant by vastly increasing the scope of discovery, and

28   would be futile.  *Mansfield v. Midland Funding, LLC,* No. 09cv358 L(WVG), 2011 U.S. Dist.

8

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

1   LEXIS 34102 at *12-*17 (S.D. Cal. Mar. 30, 2011).  As discussed below, the Court rejects Chase's

2   argument that Chase will be prejudiced by the proposed amendment.  Plaintiffs' delay in moving to

3   amend, by itself, is insufficient to deny leave to amend.  *Bowles,* 198 F.3d at 758.  However, the

4   Court asks that both parties cooperate to avoid any further delays in this litigation.  Such delays

5   unnecessarily complicate case management and waste the resources of the Court and the parties.

6   　　　　　b.  Prejudice

7   　　　　Chase argues that it will be prejudiced if Plaintiffs are permitted to file their 4AC.  Chase

8   cites no authority for either of its prejudice arguments, and the Court does not find them

9   persuasive.[3]  Chase argues that because the deadline for filing summary judgment motions relating

10   to the named Plaintiffs' individual claims has passed, Chase will lose the opportunity to have such

11   a motion regarding the income comparison claims determined before class certification is decided.[4]

12   Although it would have been preferable to decide such a motion before considering class

13   certification, this is not a sufficient basis to deny Plaintiffs leave to amend.  Chase can move for

14   summary judgment at any time before the November 17, 2011 deadline for dispositive motions.

15   Because Chase has not yet had an opportunity to move for summary judgment of the Schulken's

16   individual income comparison claims, it may do so before the November 17, 2011 deadline.

17   　　　　Similarly, Chase argues the amendment will deprive it of the opportunity to bring a motion

18   to dismiss the "income comparison" claims before class certification is decided.  Chase has raised

19   some of the arguments it says it might have brought in a motion to dismiss in its opposition to the

20   motion for class certification (for example, its argument that the named Plaintiffs do not have

21   standing to seek certain relief).  The Court will address those arguments when it resolves the

22   renewed class certification motion, if any.  Chase also states its belief that Plaintiffs' "income

23   comparison" claims should be dismissed for failure to state a claim.  However, Chase could have

24   opposed leave to amend on the grounds of futility by demonstrating that Plaintiffs had failed to

25   state a claim, but Chase chose not to.  If Chase has a meritorious argument that the newly-added

26   _____

[3] The Court notes that Chase has been on notice of Plaintiffs' income comparison theory for several
months.  In its opposition, Chase admits that the income comparison theory was disclosed no later

27   than April 8, 2011, when Plaintiffs served their expert report.  *See* Opp'n at 4.
[4] As noted above, Chase was provided the opportunity to move for summary judgment on

28   Plaintiffs' claims in the TAC, but chose not to.

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

1   income comparison theory fails to state a claim, Chase may move to dismiss in lieu of answering

2   the 4AC.  However, Chase is cautioned against filing a meritless motion to dismiss.  Three motions

3   to dismiss have already been decided in this case.

4               c.   Futility in Amendment

5        In its opposition to the class certification motion, Chase argued that Plaintiffs cannot seek

6   equitable relief under TILA because such relief is not available as a matter of law.  Although Chase

7   did not raise this argument in its opposition to the motion for leave to amend, the Court will

8   address it now because there is no point in granting leave to amend to claim relief that is not

9   available.  Chase relies on an opinion by the Eleventh Circuit holding that TILA does not allow

10  equitable relief (such as injunctive or restitutionary relief).  *Christ v. Ben. Corp.,* 547 F.3d 1292

11  (11th Cir. 2008).  The Eleventh Circuit noted that in enacting TILA, Congress "designated certain

12  federal agencies, including the Federal Trade Commission, as the primary enforcement agencies of

13  TILA, with the power to enforce compliance through 'all of its functions and powers,' including

14  orders of restitution."  *Christ*, 547 F.3d at 1297 (internal brackets and citations omitted).  In

15  addition, Congress provided private rights of action to consumers, but limited the potential relief to

16  actual damages, statutory damages, and attorney's fees and costs.[5]  *Id*.  In the context of class

17  actions, Congress further limited the potential relief by capping the recovery at "the lesser of

18  $500,000 or 1 per centum of the net worth of the creditor."  *Id*.  In light of TILA's "comprehensive

19  statutory scheme of remedies" and Congress's silence as to any equitable relief available to private

20  litigants, the Eleventh Circuit found no implied right to injunctive or other equitable relief under

21  TILA.  *Id*., 547 F.3d at 1289.

22       As Chase points out, numerous district courts outside the Eleventh Circuit have followed

23  the Eleventh Circuit's reasoning, or independently arrived at the same conclusion, and ruled that

24  equitable relief is not available to individuals or classes asserting TILA violations.  *See, e.g.,*

25  *Watkinson v. MortgageIT, Inc.,* No. 10-CV-327 - IEG (BLM), 2010 U.S. Dist. LEXIS 53540 at

26  *32-33 (S.D. Cal. June 1, 2010) (relying on *Christ* and finding that equitable remedies of

27  restitution and disgorgement are not available under TILA); *Volovnik v. Benzel-Busch Motor Car*

_____

[5] In certain situations, other relief (such as rescission) is available.  *See* 15 U.S.C. § 1635(a).

10

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

United States District Court
For the Northern District of California

*Corp.,* No. 09 Civ. 10595 (DAB) (JLC), 2010 U.S. Dist. LEXIS 97046 at \*25-26 (S.D.N.Y. July

29, 2010) (following the "trend among other courts" in finding enumerated TILA remedies

exclusive);  *Reeder v. HSBC USA, Inc.,* No. 09-cv-2043, 2009 U.S. Dist. LEXIS 114651 at \*26-27

(N.D. Ill. Dec. 8, 2009) (relying on *Christ* and finding that TILA does not provide injunctive relief

for class claims).  In addition, courts in this district have relied on similar reasoning to find that

other statutory remedies are exclusive.  *See Yasin v. Equifax Info. Servs., LLC,* No. C-08-1234

MMC, 2008 U.S. Dist. LEXIS 111051 at \*6-11 (N.D. Cal. July 16, 2008) (finding no implied right

to equitable relief under the Fair Credit Reporting Act in part based on delegation of enforcement

of the FCRA to federal agencies).

Judge Alsup, of this Judicial District, has held otherwise.  In *Hofstetter v. Chase Home Fin.,*

*LLC,* No. C 10-01313 WHA. 2011 U.S. Dist. LEXIS 38124 at \*27-\*28 (N.D. Cal. Mar. 31, 2011),

Judge Alsup held that "[t]he cited TILA provision does not address equitable remedies, much less

preclude them."  This Court respectfully disagrees with Judge Alsup, and finds the Eleventh

Circuit's reasoning in *Christ* persuasive.  The Ninth Circuit has warned against reading too much

into statutory silence, and that a court must "construe the details of an act in conformity with its

dominating general purpose . . . read text in the light of context and . . . interpret the text so far as

the meaning of the words fairly permits so as to carry out in particular cases the generally

expressed legislative policy."  *Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1169

(9th Cir. 2006).  If TILA simply provided a private right of action and the enumerated remedies, it

would be harder to say whether Congress' silence regarding injunctive relief for private actions

indicated an intention to preclude such relief.  But in light of TILA's "comprehensive statutory

scheme of remedies," including designation of the FTC as the primary TILA enforcement agency,

the Eleventh Circuit's conclusion that Congress intentionally limited the remedies available to

private parties bringing TILA claims gains support.  *See Christ*, 547 F.3d at 1289.  This conclusion

is further supported by the fact that Congress has explicitly limited the remedies available in class

actions asserting TILA claims.  Plaintiffs characterize their claim to $500,000 in statutory damages

as "incidental" to an injunction requiring reinstatement of millions of dollars in HELOC accounts,

but TILA says that $500,000 is all Plaintiffs, as a class, can recover.  15 U.S.C. § 1640(a)(2)(B).

11

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

**United States District Court**
For the Northern District of California

1     "In the few cases that have considered the applicability of Rule 23(b)(2) classes in a TILA context,

2     classes have been rejected where monetary relief was the primary objective of the litigation."  6

3     Alba Conte & Herbert Newberg, Newberg on Class Actions § 21:9 (4th ed. 2002).

4          Plaintiffs' first through fifth claims in the proposed 4AC seek injunctive relief based on

5     asserted TILA violations.  Because the Court concludes that Plaintiffs are not entitled to this relief

6     as a remedy for a TILA violation, Plaintiffs' request for leave to amend their complaint to claim

7     injunctive relief for the asserted TILA violations is DENIED.  Otherwise, Plaintiffs' request for

8     leave to amend is GRANTED.

9     V.     CONCLUSION

10         Accordingly, Plaintiffs are GRANTED leave to amend their complaint as specified in the

11    4AC, but must remove any claims to a right to injunctive relief based on violations of TILA or

12    Regulation Z.  Plaintiffs shall file their 4AC within **seven calendar days of the date of this**

13    **Order**.  In light of this Order, the briefing on the pending motion for class certification is largely

14    focused on irrelevant issues.  Accordingly, the Court DENIES the motion for class certification

15    without prejudice.  The hearing on this motion set for July 21, 2011 is hereby VACATED.  The

16    CMC scheduled to follow the hearing will go forward as planned.  The parties shall come to the

17    CMC prepared to discuss ADR.

18         Plaintiffs shall file any renewed motion for class certification within **21 days of the date of**

19    **this Order**.  In briefing a renewed motion for class certification, the Court would appreciate it if

20    the parties would address whether Plaintiffs may seek injunctive relief for their breach of contract

21    claims, and what subpart of Rule 23(b) Plaintiffs should move under to certify a class seeking

22    statutory damages under TILA.  The motion shall be briefed under the Civil Local Rules (meaning

23    that the opposition is due 14 days after the motion is filed, and the reply is due 7 days after the

24    opposition is filed). *See* Civ. L.R. 7-3.  The class certification motion is set for hearing on October

25    6, 2011 at 1:30 p.m. in courtroom eight on the fourth floor.  Otherwise, the case schedule remains

26    as set.

27

28

12

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND

**United States District Court**
For the Northern District of California

1     **IT IS SO ORDERED.**

2     Dated: July 20, 2011

3                                                 _____
                                                  LUCY H. KOH
                                                  United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

Case No.: 09-CV-02708-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS LEAVE TO AMEND