Sean P. Reis (Cal. Bar. No. 184044)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123
sreis@edelson.com

*Counsel for Plaintiffs*
[additional counsel appear on signature page]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY SCHULKEN AND JENIFER SCHULKEN, individuals, on their own behalves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL BANK, HENDERSON, NEVADA;  JPMORGAN CHASE BANK, N.A.,<br><br>Defendants. | No.  C-09-02708-LHK<br><br>**PLAINTIFFS' FIFTH AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Judge:  Hon. Lucy H. Koh |

Jeffrey and Jenifer Schulken (the "Schulkens" or "Plaintiffs"), for their Fifth Amended

Complaint, allege as follows upon information and belief, based upon, *inter alia*, investigation

conducted by their attorneys, except as to those allegations pertaining to Plaintiffs and their

counsel personally, which are alleged upon personal knowledge:

### Introduction

1.      This case is about Defendants' use of false and unfair pretenses to illegally suspend

and reduce credit limits on home equity lines of credit ("HELOCs") across the country.  JPMorgan

Chase Bank, N.A. ("Chase"), and its acquired division, Washington Mutual Bank ("WaMu")

(collectively "Defendants"), have violated the Truth-in-Lending Act and its implementing

Regulation, Regulation Z, and California's Unfair Competition law and have breached their

contracts with their HELOC account holders (collectively the "Class Members").  Defendants

1  designed and implemented a HELOC suspension program – the 4506-T Program – that resulted in

2  unjustified account suspensions based on Chase's claims that it was unable to verify borrower

3  financial circumstances and, where verifiable, Chase's false assertions that the borrowers'

4  financial circumstances had materially changed.

5        2.      Under the 4506-T Program, Chase sent a letter ("Income Verification Letter")

6  requesting that borrowers provide Chase with a signed IRS Form 4506-T and paystubs within 14

7  days. (*See* "March 13, 2009 Income Verification Letter," a true and accurate copy of which is

8  attached as Exhibit A.)  Chase failed to identify in the Income Verification Letter the ramifications

9  of failing to comply with Chase's request.  Chase then suspended the HELOCs of those customers

10  who, in Chase's opinion, did not provide complete responses to the Income Verification Letters.

11  Neither TILA nor Regulation Z allows Chase to suspend accounts based upon an inability to

12  verify financial circumstances.  Likewise, the HELOC contracts governing the relationship

13  between Defendants and their customers did not provide Defendants with the right to request such

14  information or to suspend the HELOCs of customers who failed to provide such information.  The

15  borrowers' contracts permit Chase to request "a current financial statement, new credit application

16  or both," or are silent with respect to the bank's right to request any financial information.

17        3.      Further, when assessing the financial circumstances of the bank's HELOC

18  customers, Chase ignored whether the customers' financial circumstances had in fact experienced

19  adverse material changes.  Chase compared verified current income information to whatever

20  unverified stated income value WaMu maintained in its files—values that Chase knew or should

21  have known were inflated and unreliable and that their use would lead to unjustified account

22  suspensions.

23        4.      Ultimately, Chase took aim at its HELOC portfolio in an effort to suspend as many

24  accounts as quickly as possible.  Chase overreached in the process, applying the 4506-T Program

25  logic to customers whose contracts did not allow for it.  As a result of Defendants' unlawful and

26  unfair conduct, Defendants have collectively denied their customers access to hundreds of millions

27  of dollars of credit at a critical time.

28

5.      There are two ascertainable national Classes, two California Subclasses, and a TILA Notice Subclass for Incomplete Responders.  Each member of the Classes and Subclasses had a HELOC that Chase suspended in a manner that was both illegal and unfair.  As a result of Chase' wrongful actions, Plaintiffs bring this class action on behalf of themselves and the putative Classes for statutory damages, actual damages, and attorneys' fees under the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1640(a), and its implementing regulation, Regulation Z, 12 C.F.R. § 226.5(b)), equitable and injunctive remedies under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et. seq*.), equitable and injunctive relief for Chase's alleged and continuing breaches of its HELOC contracts with the Class members, and, alternatively, declaratory relief for Chase's ongoing unlawful conduct.

**Nature of the Claim**

6.      Chase acquired WaMu in September 2008 and, through the sale, became the owner and servicer of WaMu's HELOC portfolio, including Plaintiffs' HELOC.  Combined with Chase' own portfolio (which includes Chase-originated HELOCs and HELOCs from Bank One and other institutions Chase acquired over the years), Chase currently controls and services a portfolio of well over 1.5 million HELOCs representing billions of dollars in credit.

7.      Chase had been busy shutting down its HELOCs throughout 2007 and 2008.  To accomplish this, Chase implemented several HELOC suspension strategies, including its Property Value Decline ("PVD") and Change in Financial Circumstances ("CFC") programs.  Another strategy – the 4506-T Program – is at the heart of this case.  Chase's 4506-T Program focused on borrowers who were ineligible for suspension under these other programs.  It was designed, purportedly, to verify borrowers' incomes and suspend the HELOCs of those borrowers who either did not respond sufficiently, in Chase's opinion, to the Income Verification Letter, or who did not have adequate finances to satisfy their debt obligations.

8.      Beginning in late-February 2009, and as part of the 4506-T Program, Chase sent Income Verification Letters to certain borrowers within its HELOC portfolio, including both those with WaMu and Chase-originated HELOCs, requesting that the borrowers complete and return

3

1   within 14 days a copy of an IRS Form 4506-T (a Request for Transcript of Tax Return) along with

2   recent paystubs.

3         9.      The Income Verification Letters are silent as to the consequences of failing to

4   timely respond and state that Chase has the contractual right to request such documents.

5         10.     All borrowers who were subjected to the 4506-T Program received substantially

6   identical Income Verification Letters.

7         11.     Chase then suspends the HELOCs of customers who submit incomplete responses,

8   *e.g.*, who send Chase a signed 4506-T Form but no paystubs or vice-versa (the "Incomplete

9   Responders"), as well as the HELOCs of the customers who fail to respond at all within the 14

10   days (the "Non-Responders").

11         12.     Chase sent the Non-Responders a form suspension notice stating that their

12   HELOCs had been suspended because of a failure to produce any of the requested documents.

13   Chase likewise sent a form letter to the Incomplete Responders stating that they had not provided

14   all of the requested documents and that Chase was therefore "unable to verify [the borrowers']

15   income."  In effect, the Non-Responders and Incomplete Responders had their account suspended

16   for the same reason—their "failure" to provide a complete response to Chase's Income

17   Verification Letters.

18         13.     Customers who submit complete information, either initially or upon appeal from

19   an Incomplete Responder or Non-Responder suspension, are reviewed by Chase to determine

20   whether their debt-to-income ratios ("DTI"), in Chase's opinion, support continued access to their

21   HELOCs.  To make this determination, Chase calculates the borrower's current DTI using income

22   figures verified by the submitted tax documents and paystubs.

23         14.     Borrowers with a current DTI below a certain threshold are generally not

24   suspended (or the suspension is lifted), pending a limited reasonableness test.  Borrowers whose

25   current DTI falls between a certain range are analyzed by underwriters, who compare the

26   borrower's current DTI to the DTI at origination.  Such borrowers are eligible for suspension

27   based upon various factors such as disposable income and their relationship with the bank.  Any

28

borrower whose current DTI is over a certain threshold is suspended automatically, irrespective of the borrower's DTI at origination.

**Allegations as to Plaintiffs' Individual Claims**

15.     Prior to obtaining their WaMu HELOC, the Schulkens had a HELOC with State Farm that they originally obtained to fund home renovations, including a new family room, bathroom, carpeting and plumbing.  The Schulkens also used their State Farm HELOC to purchase two vehicles for personal use, including a motorcycle and a van.

16.     In October 2005, the Schulkens refinanced the State Farm HELOC by obtaining a new HELOC from WaMu with a lower interest rate and a credit limit of $250,000.  The Schulkens' primary purpose in obtaining their WaMu HELOC was to pay down the balance of the State Farm HELOC at a lower interest rate.

17.     Following the refinance with WaMu, the Schulkens used their WaMu HELOC to pay for personal, family and household expenses, including income and real estate taxes, child support payments, home repairs, and expenses relating to their children including a Girls Scout camping trip and art camp enrollment fees.  The Schulkens further used their WaMu HELOC to pay their credit card bills, which primarily included the family's monthly expenses, such as groceries, clothing, household supplies, and entertainment.

18.     The Schulkens also occasionally, but by no means primarily, used the WaMu HELOC to pay for certain expenses relating to the family daycare business that Ms. Schulken has operated out of the family home since 2000.  Mr. Schulken began working as a co-operator of the daycare in October 2006.  The Schulkens thereafter used their WaMu HELOC to pay credit card bills that contained, among other expenses, certain daycare expenses, including food and cleaning supplies.  The Schulkens primarily used their credit cards, and their HELOC overall, for personal and family expenses.

19.     On March 17, 2009, the Schulkens received an Income Verification Letter, dated March 13, 2009, requesting that they complete and return, via fax or mail within 14 days, a recent paystub along with a signed 4506-T Form.  (Ex. A.)

5

20.     The same day that they received the Income Verification Letter, the Schulkens signed the 4506-T Form and faxed it back to Chase as instructed, along with a notation indicating that they were self-employed.

21.     On March 19, 2009, while checking their HELOC account via Chase's website, the Schulkens discovered that Chase had blocked their HELOC.  On or about March 21, 2009, the Schulkens received another letter from Chase, dated March 18, 2009.  (*See* March 18, 2009 Suspension Letter, a true and accurate copy of which is attached as Exhibit B.)  The March 18, 2009 Suspension Letter stated that Chase had suspended the Schulkens' HELOC effective March 18, 2009 because Chase was allegedly "unable to verify" their financial condition because Chase had not received all of the requested financial documentation, namely, the 4506-T Form and paystubs.

22.     Chase suspended the Schulkens' HELOC just five days after sending the March 13, 2009 Income Verification Letter, despite the Income Verification Letter stating that the Schulkens had 14 days in which to submit the requested financial information.

23.     Prior to Chase's suspension of their HELOC but before receiving notice, Plaintiffs had issued a check to pay their credit card.  This check was dishonored and Plaintiffs incurred finance charges as a result.

24.     Following the suspension, the Schulkens repeatedly contacted Chase's customer service department and ultimately provided Chase with over 65 pages of financial information, including tax returns and bank account statements, in addition to the executed Form 4506-T. Because the Schulkens were self-employed, they did not have any pay stubs, a fact that the Schulkens repeatedly explained to Chase.

25.     On March 31, 2009, the Schulkens received a letter from Chase, dated March 27, 2009, stating that Chase had reviewed the Schulkens' financial information and that the HELOC would remain suspended because Chase determined the Schulkens' had "insufficient income to satisfy [their] debt obligations."  (*See* March 27, 2009 Insufficient Income Letter, a true and accurate copy of which is attached as Exhibit C.)

6

26.     Upon receiving the March 29, 2009 Insufficient Income Letter, the Schulkens contacted Chase and explained that the couple's income had hardly changed since account origination.  In fact, the Schulkens had never missed or been late with any HELOC payment and had significantly paid down the principal balance of their HELOC by approximately $35,000 from October 2005 through February 2009.  Furthermore, the Schulkens maintained significant equity in their home such that Chase was secure in the HELOC.

27.     During numerous subsequent phone calls with Chase, the Schulkens learned that Chase had concluded that the Schulkens' current DTI was above the reinstatement threshold set forth in Chase's policies.  When the Schulkens asked for more information as to how that number was determined, Chase informed the Schulkens that their income at origination, as identified in their file from WaMu, was $11,200 per month, and that this differed materially from their current verified income.

28.     The $11,200 monthly income figure was false and the Schulkens did not have that high of an income at the time of the origination of the account or at any other time.  Mr. Schulken explained to Chase that the $11,200 figure was inaccurate, that neither he nor his wife had ever provided such an inflated income figure to WaMu, and that if the Schulkens' loan file indicated such an income, then WaMu had intentionally misrepresented their income.

29.     The Schulkens' HELOC with WaMu had been originated based upon "stated income," meaning that WaMu never objectively verified the Schulkens' income at origination.  The vast majority of HELOC accounts processed through the 4506-T Program were stated income loans in which the borrowers' income at origination was not objectively verified by the bank.  Well-known public filings in 2008 contained allegations from former WaMu loan processors accusing WaMu of gross underwriting irregularities, including the systematic false inflation of borrower incomes so as to loan out greater amounts of money to more people. WaMu's alleged improprieties were well known in the banking industry and, on information and belief, Chase was aware of these allegations at the time it implemented and executed the 4506-T Program.  Former WaMu employees had helped to design the program.

7

30.     In reality, the Schulkens' income at origination did not significantly or materially decline as of the March 2009 suspension of their HELOC.  In fact, the Schulkens' income declined only marginally from the time of account origination to the time of account suspension. Nevertheless, despite repeated requests, Chase refused to reinstate the Schulkens' HELOC.

31.     Chase should not have concluded, and had no reasonable factual basis to conclude, that the Schulkens had "insufficient income to satisfy [their] debt obligations," or that their income had materially changed.  The Schulkens had never missed or been late with any HELOC payment, their credit scores were very high and had actually increased since the time of account origination, their home had not significantly decreased in value, and they had substantially paid down the principal balance on the account since account origination.

### Inability to Verify Financial Circumstance and Failure to Calculate Actual Change in Financial Circumstances

32.     Chase lacked a legal basis, as well as a factual basis, for suspending its customers' HELOCs under the 4506-T Program.  Chase's HELOC contract with the Schulkens and with the other Class Members did not permit Chase to suspend the HELOCs of those Class Members who did not provide the executed 4506-T Form, paystubs, or both.

33.     Additionally, Chase never actually calculated or determined whether a borrower's financial condition had, in fact, changed since account origination, and therefore could not have reasonably believed, based upon such a non-existent change, that the borrower would be unable to meet the terms of his or her HELOC agreements.  Chase merely calculated whether a borrower's verified current income differed from the origination value on file for the borrower from WaMu that Chase knew or should have known was falsely inflated.  Chase knew that a comparison of the two figures would be more likely to falsely demonstrate adverse changes in borrower financial conditions when none actually had occurred and used the WaMu origination figures so as to increase the likelihood of issuing a suspension.

34.     Chase used the improper "triggering event" of claiming that it was unable to verify its borrowers' financial circumstances so as to justify suspending the Schulkens' HELOC and the HELOCs of the other Class and Subclass members.  Neither TILA nor Regulation Z allow for

8

suspensions in such cases.  Nor was a failure by the Schulkens or the Class or Subclass members to return Form 4506-T or paystubs a material breach of their HELOC agreements.  Their HELOC agreements allowed Chase to request a "current financial statement, a new credit application, or both" or were wholly silent with respect to any right of Chase to request such information, let alone issue a suspension in response to a borrower not complying fully with the request.

35.     Furthermore, Chase knowingly and intentionally falsely claimed that the Schulkens' and other customers' financial circumstances had changed so as to "trigger" Chase's right to suspend their HELOCs.  As a result, Chase, in violation of federal law, suspended the HELOC accounts of many homeowners, including Plaintiffs, whose financial circumstances had not materially worsened, or for whom Chase did not actually make such a calculation, which prevented Chase from having a reasonable basis for concluding that Plaintiffs and other accountholders would be unable to meet the terms of their loans.

36.     Although federal law allows a creditor to freeze or reduce a credit line where the creditor reasonably believes that the consumer will be unable to make payments as agreed because of a material change in the consumer's financial circumstances, this exception requires both a material change in a borrower's financial situation and the creditor's reasonable belief that, based upon the identified material change in financial circumstances, the borrower will not be able to repay the HELOC account as agreed.  With respect to Plaintiffs and the Class members, Chase froze accounts without calculating whether material changes in the borrowers' financial situations had in fact occurred, thereby depriving Chase of any reasonable belief that the borrowers would be unable to repay their HELOC accounts as agreed.  As a result, Chase's intentional, systematic suspension of its customers' HELOCs, as well as its use of standards that are inconsistent with Regulation Z, was and remains illegal.

37.     Chase's HELOC reductions are not only illegal, they are patently unconscionable.  On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343.  As part of this law, Chase obtained, on information and belief, approximately $25 billion from an unprecedented $700 billion bailout funded entirely by American taxpayers.  The

9

1   rationale advanced for the bailout by its proponents was that the banks needed the money to ensure

2   liquidity in the face of the worsening subprime mortgage disaster.  Despite Chase's statements to

3   Congress to the contrary, Chase has intentionally failed to meet its obligations to its customers and

4   has intentionally deprived those customers of billions of dollars in affordable consumer credit at a

5   critical time.

6          38.     In stark contrast, Defendants' HELOC borrowers such as Plaintiffs, like most

7   American consumers, are struggling in a faltering economy, yet they continue to meet their

8   mortgage obligations.  These customers were denied access to their bargained-for lines of credit

9   and were injured as a result.  Chase considers the 4506-T Program to be an effective line

10  management tool, continues to maintain suspensions of accounts pursuant to the 4506-T Program,

11  and would deploy the 4506-T Program in the future.

12                              **The Schulken HELOC Contract**

13         39.     The "Schulken HELOC Contract" refers to the group of form HELOC contracts

14  that applied to the Schulkens and other Inability to Verify Class members.  (See "Schulken

15  HELOC Contract" attached hereto as Exhibit D.)  Only heritage WaMu customers had the

16  Schulken HELOC Contract, as Chase's HELOC contracts had materially different provisions

17  regarding the type and nature of information Chase could request.  Contracts comprising the

18  Schulken HELOC Contract group either state that the borrower must provide, upon Chase's

19  request, "a current financial statement, new credit application, or both" or are wholly silent with

20  respect to any right of the bank to request any financial information.  Chase-originated HELOC

21  contracts, and even some WaMu-originated HELOC contracts, grant the bank the broad authority

22  to request "financial information" or whatever information the bank deems necessary.  One set of

23  Chase HELOCs contains a provision allowing Chase to request "a current financial statement, new

24  credit application, or both, *on forms provided by us*."  (Emphasis added.)  The Schulken HELOC

25  contract is markedly different and limits the financial information that the borrowers agreed to

26  provide to the bank.  Chase's files contain each borrower's respective HELOC contract, and Chase

27  further identifies each contract with a different product code.  When Chase first implemented the

28                                        10

4506-T Program, it incorrectly assumed that all of the accounts to be processed through the program contained contract language identical to the Chase contracts.  Chase failed to verify ahead of time whether contracts like the Schulken HELOC Contract contained the required authorizing language and, as a result, improperly included customers like the Schulkens in the 4506-T Program.

<b>Parties</b>

40.     **Plaintiffs Jeffrey and Jenifer Schulken:**  Plaintiffs maintain their primary residence in Cupertino, CA (the "subject matter property").  In or around October 2005, Plaintiffs obtained a HELOC from WaMu in the amount of $250,000 secured by the subject matter property to refinance a prior HELOC with State Farm.  During the pendency of this lawsuit, the Schulkens, wanting the security of having access to a HELOC and having failed during the litigation to convince Chase to reinstate access to their HELOC while the litigation was pending, closed their Chase HELOC and opened a HELOC at Star One Credit Union.  The Schulkens continue to maintain a credit card with Chase and would return to Chase as HELOC customers if Chase changed the business practices complained of in this litigation.

41.     **Defendant Washington Mutual Bank, Henderson, Nevada:**  WaMu is a bank with its main office located at 2273 North Green Valley Parkway Henderson, Nevada, 89014.  On September 25, 2008, the United States Office of Thrift Supervision (OTS) seized WaMu from its holding company, Washington Mutual, Inc., and placed WAMU into the receivership of the Federal Deposit Insurance Corporation ("FDIC").  The FDIC sold the banking subsidiaries, minus unsecured debt or equity claims, to Chase for $1.9 billion.  Chase specifically assumed "all mortgage servicing rights and obligations of" WaMu, including WaMu's HELOC accounts.  WaMu is now integrated into Chase such that former WaMu customers are Chase customers.  At the time Chase suspended the Schulkens' and other class members' HELOCs through the 4506-T Program, Chase operated WaMu as a division.

42.     **Defendant JPMorgan Chase Bank, N.A.:**  Chase is a national banking association with its main office located at 1111 Polaris Parkway Columbus, OH 43240.  Under the

11

Purchase and Assumption Agreement, Chase specifically assumed "all mortgage servicing rights and obligations of" WaMu, including WaMu's HELOC accounts.  Chase operates and/or controls WaMu as a subsidiary and/or division.

### Jurisdiction and Venue

43.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).  This Complaint alleges claims on behalf of two national classes of homeowners who are minimally diverse from Defendants.  On information and belief, the aggregate of these claims exceeds the sum or value of $5,000,000.  This Court further has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under the Truth in Lending Act, 15 U.S.C. § 1647, and its implementing Regulation, Regulation Z, 12 C.F.R. § 226.5(b).  This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

44.     a.     Defendant WaMu's main offices are located in Nevada, and is considered a citizen of Nevada for the purposes of diversity jurisdiction.

b.     Defendant Chase is a national banking association with its main offices located in Ohio, and is considered a citizen of Ohio for the purposes of diversity jurisdiction.

45.     Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

46.     This Court has personal jurisdiction over Defendants because some of the acts alleged herein were committed in California (specifically in Santa Clara County, California), and because Defendants are registered to do business in this state and actively conduct business in this District.

### Class Certification Allegations

47.     Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3) of one national class and a TILA Notice Subclass for claims for statutory damages under TILA and Regulation Z, and seek certification under Federal Rule of Civil Procedure 23(b)(2) of one

national class and two California subclasses for injunctive and declaratory relief for Chase's

breaches of contract and violations of the UCL.

48.     **Definition of the "Inability to Verify" Class:**  Pursuant to Fed. R. Civ. P. 23,

Plaintiffs bring this Complaint against Defendants on behalf of the following Class and Subclass:

*Inability to Verify Class***:**

All HELOC borrowers nationwide who were parties to the Schulken HELOC
Contract and whose HELOCs Chase blocked through the 4506-T Program when
the customers did not provide either a complete IRS Form 4506-T, paystubs, or
both, upon Chase's request.

*Inability to Verify California Subclass***:**

All Inability to Verify Class members whose homes securing the HELOCs are
located in California.

49.     **Definition of the "Stated Income" Class:**  Pursuant to Fed. R. Civ. P. 23,

Plaintiffs further bring this Complaint against Defendants on behalf of the following Class and

Subclass:

*Stated Income Class***:**

All heritage WaMu HELOC borrowers nationwide whose HELOCs were originated based
on stated incomes but who were blocked by Chase at any time through the 4506-T Program
based upon a determination by Chase that the borrowers' verified current financial
information showed a material adverse change in financial circumstances from their stated
incomes on file when they opened their accounts.

*Stated Income California Subclass***:**

All Stated Income Class members whose homes securing the HELOCs are located
in California.

50.     **Definition of the TILA Notice Subclass:**

All Inability to Verify Class members with the Schulken HELOC Contract to whom
Chase sent a notice of suspension stating that Chase's reason for suspending the
HELOC was a purported inability to verify the borrower's financial circumstances.

Excluded from the Classes and Subclasses are 1) any Judge or Magistrate presiding over

this action and members of their families; 2) Defendants, Defendants' subsidiaries, parent

companies, successors, predecessors, and any entity in which Defendants or their parent companies

have a controlling interest and their current or former employees, officers and directors; 3) persons

who properly execute and file a timely request for exclusion from the class; and 4) the legal

13

1   representatives, successors or assigns of any such excluded persons.

2       Plaintiffs may need to further amend the Class definitions following additional discovery.

3       51.   **Numerosity:**  Chase has admitted that each Class and Subclass contains over 100

4   members and upwards of thousands of members, and it is clear that individual joinder is

5   impracticable.  Defendants sent their form Income Verification Letters to over 100,000 HELOC

6   customers, and hundreds if not thousands of those recipients of those letters fall into one or more

7   Class and Subclass definitions.  Class and Subclass members can be easily identified through

8   Defendants' records and public records and Chase has offered to identify all members of any

9   certified class.

10      52.   **Commonality:**  Common questions of fact and law exist, to which this litigation

11  will provide common answers, as to all members of the Inability to Verify Class and California

12  Subclass.  These common questions include:

13      (a)   Does Chase use an improper triggering event, in violation of TILA and Regulation

14      Z, by suspending the HELOCs of Incomplete Responders and Non-Responders

15      who had the Schulken HELOC Contract based on alleged inabilities to verify such

16      customers' respective financial circumstances?

17      (b)   Does a HELOC customer with the Schulken HELOC Contract materially breached

18      the agreement by failing to provide Chase with either a completed Form 4506-T,

19      paystubs, or both?

20      (c)   Did Chase breach the Schulken HELOC Contract with respect to Inability to Verify

21      class members by blocking their HELOC accounts in response to the Class

22      members' failure to provide IRS Form 4506-T, paystubs, or both?

23      (d)   Do IRS Form 4506T and paystubs constitute "a current financial statement, a new

24      credit application, or both" such that borrowers with the Schulken HELOC

25      Contract were obligated to provide Chase with such documents upon request?

26      (e)   For the California Subclass, does Chase's 4506-T Program policy requiring the

27      suspension of HELOCs for Incomplete Responders and Non-Responders who are

28                             14

1    parties to the Schulken HELOC Contract constitutes an unlawful or unfair business

2    practice under California's UCL?

3        53.    Common questions of fact and law also exist, to which this litigation will provide

4    common answers, as to all members of the Stated Income Class and California Subclass.  These

5    common questions include:

6        (a)    Whether Chase actually determines that its WaMu HELOC customers had in fact

7               experienced material adverse changes in their financial circumstances when the

8               bank compares verified current income to unverified stated income on file with

9               WaMu at account origination.

10       (b)    Whether comparing verified current income to the stated income on file with

11              WaMu at account origination would reveal an actual change in financial

12              circumstances such that, as a result of the change, Chase had a reasonable belief

13              that the borrower would be unable to meet the payment terms of the HELOC

14              agreement.

15       (c)    Whether it violates TILA and Regulation Z, and breaches Chase's HELOC

16              contracts, to compare verified current income to the stated income on file with

17              WaMu at account origination to determine whether a HELOC customer has in fact

18              experienced a material adverse change in financial circumstances.

19       (d)    When did Chase first learn of allegations or facts concerning WaMu's loan

20              origination practices of falsely inflating borrower incomes?

21       (e)    Whether the Schulkens and the Stated Income Class members are entitled to relief,

22              and the nature of such relief.

23       (f)    For the California Subclass, whether Chase violated the UCL's prohibition on

24              unfair practices by relying on inflated WaMu origination values when calculating

25              whether borrowers' incomes had experienced material adverse changes.

26       54.    Common questions of fact and law also exist, to which this litigation will provide

27    common answers, as to all members of the TILA Notice Subclass.  These common questions

28
                                    15

include:

    (a)    Did the suspension notices sent to Incomplete Responders comply with TILA and Regulation Z?

    (b)    Did the suspension notices to Incomplete Responders contain an improper triggering event?

55.    **Typicality:**  The Schulkens are members of both Classes and Subclasses.  The Schulkens' claims are typical of and co-extensive with the claims of other members of the Classes and Subclasses.  The Schulkens and other members received the same form Income Verification Letters, were all subjected to the same uniform 4506-T Program policies, procedures and account suspension standards, and were all injured and had their respective HELOCs suspended based on the wrongful conduct of Defendants.  For purposes of this litigation, the Schulkens have the same HELOC contract as the other Inability to Verify Class members, and like the other Class members, had their account blocked as a result of their supposed incomplete response to the same Income Verification Letter.  Like the other Stated Income Class members, the Schulkens' HELOC was originated based on unverified stated income and was suspended by Chase based on Chase's comparison of the unverified stated income at origination to their verified current income.  Consequently, the Schulkens and the Stated Income Class members suffered the same injury from the same conduct by Chase.  The California and federal laws under which the Schulkens' claims arise do not conflict with the laws of any other state in any material way.

56.    **Adequate Representation:**  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes and Subclasses, and have retained counsel competent and experienced in complex class actions.  Plaintiffs have no conflict or interest antagonistic to those of the Classes or the Subclasses and Defendants have no defenses unique to Plaintiffs.  Plaintiffs' Counsel have been retained by additional Class members, including an Incomplete Responder and Non-Responder, each of whom had the Schulken HELOC Contract, and each of whom would be willing to represent the Classes or Subclasses in the event the Schulkens are for any reason adjudged to be inadequate to represent any Class or Subclass.

16

57.     **Certification Under Rule 23(b)(2):**  Chase has acted on grounds that apply generally to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes and Subclasses as a whole.  All members of both Classes were processed through Chase's 4506-T Program, which Chase applied uniformly—Chase improperly suspended all borrowers who failed to provide a complete 4506-T Form or paystubs.  Likewise, all HELOCs that were originated based upon stated income were suspended based upon current verified income.  Injunctive relief is the primary and central relief being sought by Plaintiffs, on behalf of themselves and the putative Classes, including the removal of the improper suspensions and a restoration of borrower access to their HELOCs, along with a commitment from Chase to not include them in any future runs of the 4506-T Program.  Any statutory or actual damages are incidental to, and flow from, the injunctive relief sought.  The policies of Chase challenged herein apply and affect members of both Classes uniformly, and Plaintiffs' challenge of these policies hinges on Chase's conduct, not on facts or law applicable only to Plaintiffs.

58.     **Certification Under Rule 23(b)(3):**  Certification under Rule 23(b)(3) is appropriate for all claims seeking damages under TILA, Regulation Z and breach of contract.  Questions of law or fact common to class members predominate over any questions affecting only individual members:  Every Inability to Verify Class member, notwithstanding any purported individual issues, had his or her HELOC suspended in response to an improper triggering event (Chase's claim that it was unable to verify the borrower's financial circumstances).  Likewise, notwithstanding any individual issues regarding how a borrower's financial circumstances may or may not have in reality fluctuated or changed since the origination of the HELOC account, for none of the borrowers in the Stated Income Class did Chase have a reasonable belief – based upon an actual material adverse decline in the borrower's financial circumstances – that the borrowers would be unable to meet the terms of their HELOC agreements.  For the TILA Notice Subclass of Incomplete Responders, none of the Class members' suspension notices properly stated any recognized basis for suspending their HELOCs.  Furthermore, a class action here is superior to other available methods for fairly and efficiently adjudicating the controversy.  Public

17

enforcement in this case is non-existent as the Federal government continues building the new Consumer Financial Protection Bureau.  Additionally, Class members do not generally have an interest, under the circumstances, in individually controlling the prosecution or defense of separate actions.  The opposite is true, as Class members are better served pooling their resources into one proceeding.  The extent and nature of this litigation for the past two years has yielded significant information regarding the Defendant's HELOC practices, including evidence of substantial violations of TILA, Regulation Z, and breaches of Chase's contracts.  It is desirable to concentrate the claims in this forum with a Court that is well versed in the facts of the case.  Finally, the Class members are readily ascertainable and the case does not threaten to present difficulties in managing a class action.

59.     **Certification Under Rule 23(c)(4):**  Rule 23(c)(4) provides that, when appropriate, an action may be brought or maintained as a class action with respect to particular issues.  In this case, notwithstanding any other argument or claimed basis for denying class certification, certification should be granted here on the issues of whether Chase was allowed to include borrowers with the Schulken HELOC Contract in the 4506-T Program, whether Chase was permitted to, for borrowers that fell in between Chase's specified range of DTI ratios, to rely on WaMu stated income values, and whether Chase's suspension notices to Incomplete Responders complied with TILA.  Each of the Class members has valid claims on these facts, and the litigation will be greatly advanced if these issues were determined in a single forum.

### Count I: Violation of TILA and Regulation Z
### (on behalf of Plaintiffs and the Inability to Verify Class)

60.     Plaintiffs incorporate the above allegations by reference.

61.     TILA and Regulation Z prohibit Chase from changing any of the terms of a mortgage or HELOC, including the credit limit, absent limited and specific circumstances.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).

62.     Additionally, Regulation Z prohibits financial institutions from using:

"triggering events" or responses that the regulation expressly addresses in a manner different from that provided in the regulation.  For example, an agreement may not provide that the margin in a variable-rate plan will increase if there is a material

18

> change in the consumer's financial circumstances, because the regulation specifies that temporarily freezing the line or lowering the credit limit is the permissible response to a material change in the consumer's financial circumstances.  Similarly, a contract cannot contain a provision allowing the creditor to freeze a line due to an insignificant decline in property value since the regulation allows that response only for a significant decline.

12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(i) at 2.

63.     The Schulkens and the other Inability to Verify Class members obtained HELOCs from Defendants.  (*See* The Schulken HELOC Contract, Ex. D.)  The terms of these HELOC agreements constitute valid contracts between the Class members and Defendants.

64.     The HELOC agreements between Defendants and the Inability to Verify Class members contain terms that largely track Regulation Z with respect to when Defendants may suspend the borrowers' credit lines.  Under Chase's 4506-T Program, all customers were sent Income Verification Letters, and Chase suspended the HELOCs of both Incomplete Responders and Non-Responders—all borrowers who allegedly failed to properly respond to Chase by producing the requested Form 4506-T, paystubs, or both.

65.     The Inability to Verify Class members were all parties to the Schulken HELOC Contract.  The Schulken HELOC Contract did not require borrowers to produce a Form 4506-T or paystubs.  Rather, under such agreements, Chase was limited to requesting a "current financial statement, new credit application, or both" or had no authority at all where the contract was silent.  Consequently, as it pertained to the Schulkens and the hundreds (and perhaps thousands) of borrowers who had the Schulken HELOC Contract, Chase's 4506-T Program was premised on suspending HELOCs for failure to provide certain documents that customers were not contractually required to produce.

66.     Chase's practice of suspending the accounts of borrowers who did not provide all information requested in the Income Verification Letters constituted a material breach of the HELOC agreements and constituted an impermissible basis for account suspension under TILA and Regulation Z.  Such suspensions further constituted an impermissible "triggering event" under TILA and Regulation Z.

67.     As a result, the Schulkens and the other Inability to Verify Class members were

19

injured by being denied access to their bargained-for credit, and suffered incidental damages such as the increased price of credit, lost interest, and attorneys' fees.

68.     The Schulkens, on their own behalf and on behalf of the other Inability to Verify Class members, seek statutory damages of $500,000 under 15 U.S.C. § 1640(a)(2)(B), actual damages, and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

**Count II:  Violation of TILA and Regulation Z**
**(on behalf of Plaintiffs and the Stated Income Class)**

69.     Plaintiffs incorporate the above allegations by reference.

70.     The HELOC agreements of the Schulkens and all Stated Income Class members contain a term that tracks Regulation Z and provides that Defendants may reduce or suspend additional extensions of credit during times when the Defendants "(b) …reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances."  (Ex. D.)

71.     There is an exception under TILA and Regulation Z for any period in which the creditor reasonably believes that the consumer will be unable to make payments as agreed because of a material change in the consumer's financial circumstances.  This exception requires both a material change in a borrower's financial situation and the creditor's reasonable belief that, based upon the identified material change, the borrower will not be able to repay the HELOC account as agreed.  15 U.S.C. § 1647; 12 C.F.R. § 226.5(b)(f)(3)(vi), comment 7.  Regulation Z permits a lender to suspend or reduce a HELOC account only when the designated circumstances exist, and the regulatory commentary emphasizes that credit privileges must be timely reinstated when those circumstances cease.

72.     Further, Regulation Z prohibits financial institutions from using:

"triggering events" or responses that the regulation expressly addresses in a manner different from that provided in the regulation.  For example, an agreement may not provide that the margin in a variable-rate plan will increase if there is a material change in the consumer's financial circumstances, because the regulation specifies that temporarily freezing the line or lowering the credit limit is the permissible response to a material change in the consumer's financial circumstances.  Similarly, a contract cannot contain a provision allowing the creditor to freeze a line due to an

20

insignificant decline in property value since the regulation allows that response only for a significant decline.

12 C.F.R. Part 226, Supp. I, ¶ 5b(f)(3)(i) at 2.  Hence, because TILA and Regulation Z allow for account suspension or reduction when a customer's finances experience an adverse material change such that the bank reasonably believes the customer will not be able to meet the terms of the agreement, a bank may not suspend or reduce an account in response to an immaterial change in income or without a reasonable belief that, as a result of a change in income, the customer will no longer be able to meet the terms of the HELOC.

73.     Before suspending its customers' HELOCs, Chase had the obligation to ensure both that the customers' financial circumstances had in fact experienced adverse material changes and that, based upon such a change, it had a reasonable belief that the customer would be unable to meet the terms of the agreement.

74.     Chase's 4506-T Program violates TILA and Regulation Z because it calls for HELOC suspensions without ever actually computing whether its borrowers have in fact experienced adverse material changes to their financial circumstances.  First Chase calculates a borrower's current DTI.  Borrowers who fall below a minimum DTI threshold are supposedly not suspended.  If the DTI is above a certain percentage, Chase suspends the HELOC without performing any comparison – not even a pre-textual one – of the borrower's initial financial circumstances to his or her current finances.  If the current DTI falls in between the minimum and maximum DTI thresholds, Chase underwriters compare the borrower's current verified income to the unverified stated income at origination.  By comparing verified current income to the unverified stated income at origination determined by WaMu, Chase never actually determined that there had been, in fact, a material decline in financial circumstances for any given borrower.  As a result, Chase did not have, and could not have had, a reasonable belief based upon such a change (since it was never calculated) that any Stated Income Class member would be unable to satisfy his or her debt obligations to the bank.  All such suspensions of Stated Income Class members were based on an unlawful triggering event under TILA and Regulation Z.

75.     Furthermore, Chase knew or should have known of alleged improprieties regarding

21

WaMu's loan origination and underwriting practices, including widespread inflation of borrower incomes on stated income loans.  Thus, Chase knew or should have known that comparing current verified income to WaMu's inflated stated income at origination would increase the risk Chase would falsely calculate a material adverse change in the customer's financial circumstances and issue unjustified account suspensions.

76.     Chase suspended the HELOCs of Class members whose financial circumstances had not materially worsened since account origination and/or for whom Chase did not have a reasonable belief that the borrower would be unable to satisfy his or debt obligations to the bank.

77.     With respect to the Schulkens, Chase's conclusion that they would unable to satisfy their debt obligations was demonstrably unreasonable in light of the fact the Schulkens' income at origination had been intentionally inflated by WaMu, the Schulkens' income had not materially changed since account origination, they never missed a HELOC payment, their credit scores were high and had increased, and they had significantly paid down the principal of their HELOC balance.  Chase had been unable to suspend the Schulkens through the bank's PVD and CFC programs, further evidencing that the couple's home had retained significant equity and that their creditworthiness was sound.

78.     Chase's violations of TILA and Regulation Z caused injury to the Schulkens and the other Stated Income Class members.  These injuries included lost access to their bargained-for credit lines, as well as the increased price of credit, lost interest, and attorneys' fees.

79.     The Schulkens, on their own behalf and on behalf of the other Stated Income Class members, seek statutory damages under 15 U.S.C. § 1640(a)(2) (B), actual damages, and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

**Count III: Violation of TILA and Regulation Z**
**(on behalf of Plaintiffs and the TILA Notice Subclass)**

80.     Plaintiffs incorporate the above allegations by reference.

81.     Where a creditor prohibits additional extensions of credit or reduces the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected.  The notice must be provided not later than three business days after the action is taken

22

1   and shall contain specific reasons for the action."  Regulation Z, 12 C.F.R. § 226.9(c)(3).

2        82.    Chase provided Plaintiffs and members of the Inability to Verify Class with notices

3   of their HELOC reductions and suspensions that lacked sufficient and necessary information,

4   including the specific reasons for Chase's actions.

5        83.    Chase's notices to the Incomplete Responders like the Schulkens fail to state any

6   recognized basis for suspending their HELOCs.  The HELOC suspension notices sent by Chase to

7   Plaintiffs and the TILA Notice Subclass are further deficient because they do not indicate what

8   change in financial circumstances Defendants consider "material" and do not include what adverse

9   information Defendants obtained from credit agencies that purportedly justified account

10  suspension or reduction.  Without this information, Plaintiffs and other Class members were

11  deprived of critical information needed to determine whether to challenge Chase's actions and

12  seek account reinstatement.

13       84.    The Schulkens, along with other TILA Notice Subclass members, received

14  suspension notices that stated that the reason for account suspension was a failure to produce the

15  documents requested by the Income Verification Letters thus creating an "inability to verify"

16  income, which is not a recognized ground for suspension under TILA and Regulation Z.  Without

17  a valid reason for the suspension, the notice was improper.

18       85.    As a result of Chase's violations of TILA and Regulation Z, the Schulkens and the

19  other TILA Notice Subclass members were injured by being denied access to their bargained-for

20  credit, and suffered incidental damages such as the increased price of credit, lost interest, and

21  attorneys' fees.

22       86.    The Schulkens, on their own behalf and on behalf of the other TILA Notice

23  Subclass members, seek statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the

24  action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

**Count IV: Breach of Contract**
**(on behalf of Plaintiffs and the Inability to Verify Class)**

26       87.    Plaintiffs incorporate the above allegations by reference.

27       88.    The Schulkens and the other Class members obtained HELOCs from Defendants.

28                                    23

(Ex. D.)  The terms of these HELOCs constitute a contract between the Class members and Defendants.

89.     The HELOC agreements contain terms that largely track Regulation Z with respect to when Defendants may suspend the borrowers' credit lines.  (Ex. D.)

90.     The availability of credit and the triggering events the lender could use to suspend credit extensions were material terms of the HELOC contracts.

91.     The Schulkens and the other Class members made all payments due to Defendants and otherwise fully performed under their HELOCs with Defendants.

92.     Under Chase's 4506-T Program, all customers that were subjected to the program were sent Income Verification Letters, and Chase suspended the credit lines of all such borrowers who failed to produce the requested Form 4506-T, paystubs, or both.

93.     In response to Chase's request for IRS Form 4506-T and paystubs, the Schulkens supplied the requested information, namely a signed Form 4506-T and a notation that the couple was self-employed (meaning they did not have paystubs).

94.     The Inability to Verify Class members were all parties to the Schulken HELOC Contract.  The Schulken HELOC Contract limits the circumstances where Chase may suspend HELOCs.  The Schulken HELOC Contract does not allow Chase to demand that borrowers submit an executed Form 4506-T, paystubs, or both, and does not permit Chase to suspend the accounts when customers "fail" to provide such information.

95.     The Schulken HELOC Contract does not obligate borrowers to produce a Form 4506-T, paystubs, or both, upon Chase's request.  Chase's 4506-T Program therefore included customers (those with the Schulken HELOC contract) whose HELOC contracts differed from the contracts of other customers whose agreements allowed Chase to demand such information. Chase's suspension of the Class members' HELOC accounts, pursuant to the 4506-T Program, based on their supposed failure to produce all documents requested in the Income Verification Letters constituted a material breach of the Schulken HELOC Contract and, accordingly, the Class members' agreements.  Chase therefore materially breached the Class and Subclass members'

24

HELOCs by going outside the grounds set forth in the Schulken HELOC Contract for suspending HELOCs.

96.     As a result of Chase's breach of contract, the Schulkens and the other Inability to Verify Class members were injured by being denied access to their bargained-for credit, and suffered incidental damages such as the increased price of credit, lost interest, and attorneys' fees.

97.     There exists no adequate remedy at law for the Schulkens' and the Class members' injuries.  Monetary damages would be inadequate to provide adequate relief to the Schulkens and the Class members for Chase's breach of contract.  The primary wrong committed upon them by Chase, and their primary injury resulting therefrom, was and continues to be the deprivation of access to their bargained-for credit lines.  Monetary damages representing this lost access, together with other damages that would be necessary to afford adequate relief, would be extremely difficult to ascertain.  Restoring the Class members' access to their HELOCs, lifting the suspensions based upon improper grounds and in breach of the Class members' HELOC contracts, declaring the respective rights of the Parties and prohibiting the inclusion of the Class members in future runs of the 4506-T Program as presently designed is the only way to fully restore the Class members to the positions they bargained for under their HELOC contracts.  Moreover, the credit lines of the Class members are unique, and Class members have been and will continue to be irreparably harmed by the continuous and/or on-going denial of access to their bargained-for lines of credit.  Such irreparable harm to consumers strongly tips the balance of equities in favor of the equitable relief being sought by the Class members.

98.     Consequently, the Schulkens, on their own behalf and on behalf of the other Inability to Verify Class members, seek an equitable remedy of the removal of their suspensions issued under the 4506-T Program, notations to Chase's internal files reflecting that the Class members' accounts had been improperly suspended under the 4506-T Program based upon an improper claim of an Inability to Verify the customer's financial circumstances, reinstatement of suspended HELOCs, and an order prohibiting Chase from including the Inability to Verify Class members in any future running of the 4506-T Program as it is currently designed, as well as actual

damages, interest, reasonable attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count V:  Breach of Contract**
**(on behalf of Plaintiffs and the Stated Income Class)**

99.     Plaintiffs incorporate the above allegations by reference.

100.    The Schulkens and the other Class members obtained HELOCs from Defendants. (Ex. D.)  The terms of these HELOCs constitute a contract between the Class members and Defendants.

101.    The HELOC agreements contain a term that tracks Regulation Z and provides that Defendants may reduce or suspend additional extensions of credit during times when the Defendants "(b) …reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances."  (Ex. D.)

102.    The Schulkens and the other Class members made all payments due to Defendants and otherwise fully performed under their HELOCs with Defendants.

103.    The availability of credit and the triggering events the lender could use to suspend credit extensions were material terms of the HELOC contracts.

104.    Chase materially breached the class members' contract terms by suspending the HELOC accounts for the Schulkens and other Class members' HELOCs without first determining that a material adverse change in financial circumstances had in fact occurred that would give Chase a reasonable belief that the borrowers would be unable to fulfill their payment obligations under their agreements.

105.    By comparing borrowers' verified current income to unverified stated income at origination – especially when Chase knew or should have known of alleged improprieties with WaMu's loan originations – Chase never calculated whether an actual material adverse change in financial circumstances occurred.  Accordingly, Chase did not have, nor could have had, a reasonable belief that "as a result of this change" a borrower would not be able to satisfy his or her debt obligations.

106.    With respect to the Schulkens, Chase's conclusion that they would unable to satisfy their debt obligations was demonstrably unreasonable in light of the fact that the Schulkens'

26

income at origination was intentionally inflated by WaMu, the Schulkens' income had not materially changed since account origination, they never missed a HELOC payment, their credit scores were high and had increased, their home had not significantly declined in value, and they had significantly paid down the principal of their HELOC balance.

107.    As with the Schulkens, Chase's comparison of borrowers' unverified stated incomes at origination to their current verified incomes resulted in Chase suspending the accounts of Class members whose financial circumstances had not materially declined since account origination and/or for whom Chase did not have a reasonable belief that such borrowers would be unable to satisfy their debt obligations to the bank.  Such unjustified account suspensions constituted material breaches of the borrowers' HELOC agreements.

108.    As a result of Chase's breach of contract, the Schulkens and the other Stated Income Class members were injured by being denied access to their bargained-for credit, and suffered incidental damages such as the increased price of credit, lost interest, and attorneys' fees.

109.    There exists no adequate remedy at law for the Schulkens' and the Class members' injuries.  Monetary damages would be inadequate to provide adequate relief to the Schulkens and the Class members for Chase's breach of contract.  The primary wrong committed upon them by Chase, and their primary injury resulting therefrom, was and continues to be the deprivation of access to their bargained-for credit lines.  Monetary damages representing this lost access, together with other damages that would be necessary to afford adequate relief, would be extremely difficult to ascertain.  Restoring the Class members' access to their HELOCs, lifting the suspensions based upon improper grounds and in breach of the Class members' HELOC contracts, declaring the respective rights of the Parties and prohibiting the inclusion of the Class members in future runs of the 4506-T Program as presently designed is the only way to fully restore the Class members to the positions they bargained for under their HELOC contracts.  Moreover, the credit lines of the Class members are unique, and Class members have been and will continue to be irreparably harmed by the continuous and/or on-going denial of access to their bargained-for lines of credit. Such irreparable harm to consumers strongly tips the balance of equities in favor of the equitable

Plaintiffs' Fifth Amended Class Action Complaint
No.  C-09-02708-LHK

1  relief being sought by the Class members.

2    110.    The Schulkens, on their own behalf and on behalf of the other Stated Income Class

3  members, seek an equitable remedy of the removal of their account suspensions, notations to

4  Chase's internal files reflecting that the Class members' accounts had been improperly suspended,

5  reinstatement of their suspended HELOCs, and an order prohibiting the Class members' inclusion

6  in any future running of the 4506-T Program as it is currently designed, as well as actual damages,

7  interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

8    **Count VI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
   **(on behalf of Plaintiffs, the Inability to Verify Subclass, the Stated Income Subclass, and the**
9    **TILA Notice Subclass)**

10    111.    Plaintiffs incorporate the above allegations by reference.

11    112.    Chase's suspension of the HELOCs of the Schulkens and the members of the

12  Inability to Verify California Subclass, the Stated Income California Subclass, and the TILA

13  Notice Subclass members violated TILA, Regulation Z, and the UCL.  The homes securing the

14  Schulkens' and members of the Subclasses' HELOCs are located in California.  With respect to

15  the Inability to Verify Subclass, Chase's practice of requesting financial information by a

16  deadline, and then proceeding to suspend accounts based on purported failures to submit the

17  requested information well before the deadline was unlawful, unfair, and deceptive.  These

18  unlawful, deceptive, and unfair acts and practices constitute unfair competition in violation of the

19  UCL.

20    113.    Chase has engaged in unlawful, unfair, and fraudulent business acts and practices

21  as set forth above.

22    114.    Chase has violated the "unlawful" prong of the UCL in that Chase's conduct was

23  undertaken in violation of TILA and Regulation Z, as alleged above.

24    115.    Chase has also violated the "unfair" prong of the UCL by suspending or reducing

25  the HELOC accounts without providing notice (in its notice letters or in its HELOC agreements)

26  that failure to timely provide the requested financial information could constitute grounds for

27  account suspension.

28

Plaintiffs' Fifth Amended Class Action Complaint
No.  C-09-02708-LHK

116.     Chase further acted unfairly and deceptively by requiring that certain financial information be submitted within 14 days but then suspending Inability to Verify Class members' accounts in less than 14 days.  Chase acted unfairly in suspending Plaintiffs' HELOC in only 5 days after sending Plaintiffs the Income Verification Letter.  Mandating an arbitrary deadline without identifying the potential ramifications for noncompliance, and then suspending accounts prior to the expiration of that deadline, is an unfair, deceptive and unscrupulous action.

117.     Additionally, with respect to the Stated Income California Subclass members, comparing verified current income to unverified stated income at origination was both unlawful under TILA and Regulation Z, as set forth above, as well as unfair, particularly in light of the facts that Chase could have taken steps to verify the borrowers' income as of the time of origination, and that Chase knew or should have known of the alleged improprieties in WaMu's loan origination process.  Chase suspended accounts without actually calculating the borrowers' financial circumstances and in the absence of any reasonable basis to conclude that the Stated Income Subclass members would be unable to satisfy their debt obligations to the bank.  This unfairness is further evidenced by the Schulkens, whose income was intentionally inflated by WaMu, whose income did not materially decline, who had never missed a payment, who had very high credit scores, and who had significantly paid down the principal balance on their account.

118.     Additionally, Chase's 4506-T Program policy of requiring the suspension of HELOCs for Incomplete Responders and Non-Responders who are parties to the Schulken HELOC Contract is unlawful and unfair, as the Schulken HELOC Contracts did not provide Chase the right to demand an executed Form 4506-T, paystubs or both, and did not permit Chase to suspend accounts based on a failure to provide such information.

119.     Chase's actions caused substantial injury to Plaintiffs and the members of both California Subclasses.  The injury caused by Chase's conduct is not outweighed by any countervailing benefits to consumers or competition; Chase's actions benefitted only Chase while causing nothing but injury to the Subclass members by wrongfully depriving them of access to affordable credit at a critical time.  The injury caused by Chase's conduct could not reasonably

1    have been avoided by the Subclass members themselves, as Chase exercised its discretion
2    unilaterally to suspend or reduce the HELOC accounts.

3          120.    Chase has also violated the "fraudulent" prong of the UCL in that Chase's
4    statements or material omissions to their HELOC customers whose lines Chase suspended, made
5    both in writing through their HELOC notices and letters and orally over the telephone through
6    their customer service representatives when aggrieved customers contacted Chase to discuss the
7    suspensions or reductions, were false and were likely to deceive a reasonable consumer, including
8    Chase's statements:

9          a.    in the suspension notices and over the phone indicating that the Inability to Verify
10   Subclass members' HELOC contracts gave Chase the right to suspend HELOCs based on a
11   borrowers' failure to provide an executed Form 4506-T, paystubs, or both;

12         b.    indicating that any potential suspension of credit through the HELOCs would only
13   occur through a material adverse change in financial condition when, in fact, Chase knew (i) that it
14   was suspending accounts without reasonably calculating any change in the borrowers' financial
15   circumstances, (ii) that it was suspending accounts without any reasonable belief that the
16   borrowers would be unable to satisfy their debt obligations to Chase, and (iii) that it was
17   suspending accounts based on comparisons of verified current income to unverified stated income
18   that it knew or should have known was or may have been inflated and inaccurate;

19         c.    in the written correspondence to borrowers concerning the amount of time that a
20   customer has to respond to Chase's request for financial information, including the potential
21   consequences of not fully complying with its information request within the stated 14-day period –
22   particularly in light of Chase' illustrated willingness to suspend accounts in less than half that
23   time.

24         121.    Plaintiffs and the members of the Subclasses suffered injury in fact as a result of
25   Chase's violations of the UCL, including being denied access to their bargained-for credit, lost
26   interest, lost opportunity, finance charges, and adversely impacted credit.

27

28                                 30

122.    The Schulkens, on their own behalf and on behalf of the other Subclass members, seek an order preliminarily and permanently enjoining Chase's unfair competition alleged herein and requiring Chase to restore Subclass members' access to their respective HELOC credit lines and cease suspending or reducing HELOCs in violation of Regulation Z, as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count VII: Declaratory Relief under 27 U.S.C. § 2201**
**(on behalf of Plaintiffs and all of the Classes, in the Alternative)**

123.    Plaintiffs incorporate the above allegations by reference.

124.    The Inability to Verify Class members and Defendants have adverse legal interests, and there is a substantial controversy between the Inability to Verify Class members and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Chase was allowed to suspend their HELOCs when they did not return IRS Form 4506-T and paystubs within 14 days, or whether Chase violated TILA, Regulation Z, and the UCL, and breached the class member's HELOC contracts, by issuing such suspensions.

125.    The Schulkens, on their own behalf and on behalf of the other Inability to Verify Class members, seek declaratory relief under 27 U.S.C. § 2201 declaring that Chase's suspension of HELOCs for failure to produce Form 4506-Ts, paystubs, or both pursuant to its 4506-T Program violates TILA and Regulation Z and that Chase's 4506-T Program, as designed, could not have included, and may not going forward include, customers with the Schulken HELOC Contract.

126.    The Stated Income Class members and Defendants have adverse legal interests, and there is a substantial controversy between the Stated Income Class members and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Chase's past, current and future suspensions of the Stated Income Class members' HELOCs – pursuant to its 4506-T Program based on a purported material adverse change in financial circumstances that Chase computes by comparing verified current financial information to unverified stated income information at account origination – constitute breaches of contract and violate TILA, Regulation Z and the UCL.

31

127.    The Schulkens, on their own behalf and on behalf of the other Stated Income Class members, seek a declaration under 27 U.S.C. § 2201 that Chase's suspension of HELOCs, pursuant to its 4506-T Program, based on a comparison of borrowers' verified current income to their unverified stated income at WaMu account origination, violates TILA and Regulation Z and that Chase could not, and may not going forward, rely on WaMu's stated income values as a point of comparison when determining whether borrowers have in fact experienced a material adverse change in financial circumstances.

128.    The TILA Notice Subclass members and Defendants have adverse legal interests, and there is a substantial controversy between the TILA Notice Subclass members and Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Chase's suspension notices to Incomplete Responders violate TILA, Regulation Z and the UCL.

129.    The Schulkens, on their own behalf and on behalf of the other TILA Notice Subclass members, seek a declaration under 27 U.S.C. § 2201 that Chase's suspension notices violate TILA, Regulation Z and the UCL and that Chase could not, and may not going forward, use such notices when suspending HELOC accounts.

130.    The relief sought in this claim is sought in the alternative to any claim to the extent that monetary damages (Counts I – III), or injunctive relief (Counts IV – VI) are deemed insufficient to provide full and complete relief to the Class members.

WHEREFORE, Plaintiffs pray that the Court enter judgment and Orders in their favor and against Defendants as follows:

(a)    Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Classes and Subclasses;

(b)    Awarding statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Counts I, II and III;

(c)    Awarding preliminary and permanent equitable and injunctive relief for the Classes, including: (1) enjoining Chase from further violations of the UCL; (2)

32

Plaintiffs' Fifth Amended Class Action Complaint
No.  C-09-02708-LHK

1    enjoining Chase from continued breaches of the Schulken HELOC Contract; (3)

2    enjoining Chase from continuing its wrongful suspensions of HELOCs through the

3    4506-T Program for the Class and Subclass members; (4) reinstating the suspended

4    HELOCs of the Class and Subclass members; (5) requiring Chase to make a

5    notation in the Class members' internal files that any previous suspension through

6    the 4506-T Program was improper and without effect; and (6) restitution of any

7    property gained by the unfair competition alleged herein and an order for

8    accounting of such property;

9    (d)    Awarding actual damages under Counts I, II, IV and V;

10   (e)    Entering declaratory judgment under 27 U.S.C. § 2201 on Count VII that Chase's

11          4506-T Program HELOC suspensions violate federal law and breach the Class

12          members' HELOC contracts with respect to the Class and Subclass Members;

13   (f)    Awarding Plaintiffs and the Classes reasonable costs and attorneys' fees;

14   (g)    Awarding pre- and post-judgment interest; and

15   (h)    Granting such other and further relief as the Court may deem just and proper.

16                          **JURY TRIAL DEMAND**

17   The Plaintiffs hereby demand a trial by jury of all issues so triable.

18
19   Dated: October 14, 2011                    JEFFREY AND JENIFER SCHULKEN,
                                                 individually and on behalf of a class of
20                                               similarly situated individuals

21                                               By:____/s/ Sean P. Reis_____
                                                 Sean P. Reis
22                                               EDELSON MCGUIRE LLP
                                                 30021 Tomas Street, Suite 300
23                                               Rancho Santa Margarita, CA 92688
                                                 Tel: (949) 459-2124
24                                               Fax: (949) 459-2123
                                                 sreis@edelson.com
25
                                                 Jay Edelson
26                                               Steven Woodrow (*pro hac vice*)
                                                 Evan M. Meyers (*pro hac vice*)
27                                               EDELSON MCGUIRE, LLC
                                                 350 North LaSalle, Suite 1300
28                                               Chicago, IL 60654

                                        33

Tel: (312) 589-6370
Fax:  (312) 589-6378
jedelson@edelson.com
swoodrow@edelson.com
emeyers@edelson.com

34

1

2

3

4

5

### CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2011, I electronically filed the forgoing *PLAINTIFFS' FIFTH AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND* with the Clerk of the Clerk using the CM/ECF system.  Notice of this filing is sent to the following parties by operation of the Court' electronic filing system.  Parties may access this filing through the Court's system:

6

7

8

By: /s/ Sean Reis
Sean Reis

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Fifth Amended Class Action Complaint
No.  C-09-02708-LHK