United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| JEFFREY SCHULKEN, et al., | ) Case No.: 09-CV-02708-LHK |
|  | ) |
| Plaintiffs, | ) |
| v. | ) ORDER GRANTING IN PART AND |
|  | ) DENYING IN PART  MOTION TO |
| WASHINGTON MUTUAL BANK, | ) CERTIFY CLASS ACTION |
| HENDERSON, NV, et al., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

Jeffrey Schulken and Jenifer Schulken (collectively, "Plaintiffs") bring this putative class action against Washington Mutual Bank ("WaMu") and JPMorgan Chase ("Chase") (collectively, "Defendants"), alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing statute, Regulation Z, 12 C.F.R. 226.1, et seq.; violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and breach of contract.  Plaintiffs allege that Defendants improperly suspended and reduced credit limits on home equity lines of credit ("HELOCs").  Before the Court is Plaintiffs' motion to certify a class action. After reviewing the papers, the relevant authorities, and hearing oral argument from the parties, Plaintiffs' motion is GRANTED in part and DENIED in part.

I.      BACKGROUND

   A.  Factual Allegations

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

1    Although Plaintiffs' factual allegations have largely been discussed in the Court's prior

2   rulings in this case, a brief summary of the allegations is provided below.[1]  In October 2005,

3   Plaintiffs obtained a HELOC in the amount of $250,000 with WaMu.  5AC ¶ 16.  The Schulkens'

4   WaMu HELOC application indicated that the Schulkens' combined monthly income was $11,200:

5   $6,000 per month from Mr. Schulken's salary as an electrician and $5,200 per month from Ms.

6   Schulken's salary as the self-employed owner of a day care business.  Woodrow Decl. Ex. V.  The

7   HELOC was secured by a mortgage on the Schulken's Cupertino property.  Collado Decl. Ex. A-5.

8    The Schulken's HELOC agreement required that the Schulkens provide WaMu "with a

9   current financial statement, a new credit application or both, at any time upon our request."  5AC

10  Ex. D at ¶ 17.  If the Schulkens failed to provide "documents and information to [WaMu] (such as

11  updated financial information)," they would be in material default of the HELOC agreement, and

12  Defendants could suspend additional advances or reduce their credit limit.  5AC Ex. D at ¶14.

13   The Schulkens maintain that they used their WaMu HELOC to pay for personal, family and

14  household expenses, including income and real estate taxes, child support payments, home repairs

15  and expenses relating to their children including a Girls Scout camping trip and art camp

16  enrollment fees.  5AC ¶ 15; *see also* Woodrow Decl. Ex. R (Interrogatory Response 3).  Chase

17  maintains that the Schulkens used their HELOC to pay for business expenses associated with Ms.

18  Schulkens' day care business.  Jeff Schulken Dep. at 130 ("Jeff Schulken Dep."), Woodrow Decl.

19  Ex. P.

20   Chase acquired WaMu in September 2008.  By virtue of this sale, Chase also acquired

21  WaMu's HELOC portfolio, including Plaintiffs' HELOC.  5AC ¶ 6.  The WaMu HELOCs,

22  including the Schulkens' HELOC, were subject to Chase's Change in Financial Condition 4506-T

23  Block Program ("the 4506-T Program").  The Program operates in the following manner: Chase

24  sends out "Income Verification Letters" to HELOC customers requesting that HELOC customers

25  complete and return a copy of IRS Form 4506-T together with recent paystubs within 14 days.

26  Pursh Dep. at 17 ("Pursh Dep."), Woodrow Decl. Ex. A.  For an individual that responds to the

27

28

---

[1]  Plaintiffs' Fifth Amended Complaint ("5AC") is the operative pleading in this action.  *See* ECF
No. 170.  Defendants filed an Answer on October 28, 2011.  ECF No. 172.

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

1    Income Verification Letter, but fails to submit either a signed 4506-T form or paystubs

2    ("Incomplete Responders"), Chase suspends the borrower's HELOC and sends a letter indicating

3    that Incomplete Responder's HELOC has been suspended because Chase cannot verify that the

4    borrower's income is sufficient to satisfy her debt obligations. *See, e.g.* FAC Ex. B; Pursh Dep. at

5    24-25.  For an individual who does not respond at all to the Income Verification Letter ("Non

6    Responders"), Chase suspends the borrower's HELOC and sends a letter indicating that the Non

7    Responder's HELOC has been suspended because her failure to respond is a default of the HELOC

8    agreement.  M. Gill Decl. ¶ 3, Ex. A.  Pursh Dep. at 17-18.  Despite the different letters, the

9    HELOCs of the Non Responders and the Incomplete Responders were suspended because they

10   failed to provide a complete response to the Income Verification Letter.  Resh Dep. at 72-73,

11   Woodrow Decl. Ex. B.

12        For a borrower that provides Chase with the requested 4506-T form and paystubs, Chase

13   reviews the information to determine the borrower's debt-to-income ("DTI") ratio.  Pursh Dep. at

14   18-19.  Borrowers at or above a certain DTI ratio limit are suspended, while borrowers below a

15   lower DTI ratio are not suspended.  Those customers that fall between the low and the high DTI

16   ranges are individually reviewed by underwriters with discretion to determine whether or not the

17   HELOC should be suspended.  Pursh Dep. at 18-19; George Dep. at 117 ("George Dep."),

18   Woodrow Decl. Ex. K.  For those customers with a current DTI within the discretionary range of

19   review, Chase compares the DTI ratio at origination to the current DTI ratio based on the updated

20   4506-T form and paystubs to determine whether suspension is appropriate.  Pursh Dep. at 18-19;

21   Woodrow Decl. Ex. J at 9.

22        On March 17, 2009, Plaintiffs received an Income Verification Letter dated March 13, 2009

23   from Chase requesting that they "complete and return, via fax or mail within 14 days, a paystub

24   along with a signed 4506-T Form."  5AC Ex. A.  That same day, the Schulkens signed the IRS

25   Form 4506-T and faxed it back to Chase as instructed, indicating that they were self-employed.

26   Jeff Schulken Dep. 135-139.   On March 19, 2009, Plaintiffs checked their HELOC account via

27   Defendants' website and found that the account had a zero available balance.  Jeff Schulken Dep.

28   142; 144; 150.  On March 21, 2009, Plaintiffs received a letter dated March 18, 2009 stating that

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

their HELOC was being suspended because Chase was "unable to verify" their financial condition. 5AC Ex. B ("March 18 letter"). Chase indicated that it was unable to verify the Schulkens' financial condition because they failed to provide the 4506-T form and paystubs. *Id.* As a result of this suspension, Plaintiffs incurred financial charges and other fees. Woodrow Decl. Exs. R (interrogatory response 15), T.

The Schulkens contacted Chase's customer service department and provided additional financial documentation. Jeff Schulken Dep. at 148. On March 31, 2009, the Schulkens received a letter from Chase, dated March 27, 2009, indicating that their HELOC would remain suspended because they did not have sufficient income to satisfy their debt obligations. 5AC Ex. C. Chase had determined that the Schulkens had a DTI ratio within the discretionary review range. Chase had further determined that the Schulkens had experienced a material adverse change in financial circumstances because the Schulkens' March 2009 verified income of $5,780 per month was well below the $11,200 stated income at origination. Woodrow Decl. ¶17, Ex. Y. Plaintiffs maintain that the $11,200 stated income was "inaccurate," and that they had never "provided such an inflated income figure to WaMu, and that if the Schulkens' file indicated such an income, then WaMu had intentionally misrepresented their income." 5AC ¶ 28.

## B.  Procedural History

Plaintiffs filed their initial complaint against Defendants on June 18, 2009. ECF No. 1. Defendants have moved to dismiss Plaintiffs' claims four times in this action. *See* ECF Nos. 34, 45, 50, 134. On November 30, 2010, shortly after this Court granted in part and denied in part Defendants' Third Motion to Dismiss, the Schulkens decided to refinance their Chase HELOC with Star One Federal Credit Union. Jeff Schulken Dep. at 194; Order, October 12, 2010, ECF No. 59. Plaintiffs moved to amend and file a Fourth Amended Complaint on June 9, 2011. *See* ECF No. 90. At that time, the Proposed Fourth Amended Complaint added significant factual detail to the allegations in the Third Amended Complaint but did not seek to add additional plaintiffs. *See* Order Granting Leave to Amend at 2, July 20, 2011, ECF No. 129. At oral argument on the instant motion for class certification, Plaintiffs' counsel indicated that he had been contacted by two potential additional named plaintiffs in 2009 and 2010, but had not sought a stipulation from

4

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

1   Defendants or sought leave of the Court to amend the pleadings to add any additional named

2   Plaintiffs.  The Fifth Amended Complaint is currently the operative pleading in this case.  ECF No.

3   170.

4       Plaintiffs' Fifth Amended Complaint seeks damages for violations of TILA and Regulation

5   Z and breach of contract.  Additionally, the Fifth Amended Complaint also seeks injunctive relief

6   for Plaintiffs' breach of contract and UCL claims.  Plaintiffs allege that two separate Chase policies

7   constituted violations of TILA and Regulation Z: (1) "Chase's practice of suspending accounts of

8   borrowers who did not provide all information requested in the Income Verification Letters

9   constituted . . . an impermissible basis for account suspension under TILA and Regulation Z"; and

10  (2) "Chase's 4506-T Program violates TILA and Regulation Z because it calls for HELOC

11  suspensions without ever actually computing whether its borrowers have in fact experienced

12  adverse material changes to their financial circumstances."  5AC ¶¶ 66, 74.

13      Plaintiffs also allege that several of Chase's practices breach the Schulkens' HELOC

14  contract and the contracts of those Chase customers that had contracts similar to the one signed by

15  the Schulkens.  Plaintiffs allege that Chase's practice of demanding that borrowers submit an

16  executed Form 4506-T, paystubs, or both, and then suspending accounts when customers do not

17  provide such information is a breach of the Schulkens' HELOC contract.  5AC ¶ 94.   Similarly,

18  Plaintiffs allege that Chase "materially breached the class members' contract terms by suspending

19  the HELOC accounts . . . without first determining that a material adverse change in financial

20  circumstances had in fact occurred."  5AC ¶ 104.

21      Plaintiffs also claim that Chase's suspension notices to the Incomplete Responders like the

22  Schulkens lack sufficient and necessary information in violation of TILA and Regulation Z.  5AC

23  ¶¶ 83-84.  Plaintiffs allege that Chase's suspension of HELOCs violated the "unfair" and

24  "unlawful" prongs of the California UCL.  5AC ¶¶ 112-115.   Finally, Plaintiffs seek a declaratory

25  judgment that Chase's policies violate TILA and Regulation Z, constitute breaches of the HELOC

26  contract and violate the UCL.

27      Plaintiffs seek to certify two classes (the "Inability to Verify Class" and the "Stated Income

28  Class") and three subclasses:

5

1. Inability to Verify Class:

All HELOC borrowers nationwide who were parties to the Schulken HELOC Contract and whose HELOCs Chase blocked through the 4506-T Program when the customers did not provide either a complete IRS Form 4506-T, paystubs, or both, upon Chase's request.

2. Inability to Verify California Subclass:

All Inability to Verify Class members whose homes securing the HELOCs are located in California.

3. Stated Income Class:

All heritage WaMu HELOC borrowers nationwide whose HELOCs were originated based on stated incomes but who were blocked by Chase at any time through the 4506-T Program based upon a determination by Chase that the borrowers' verified current financial information showed a material adverse change in financial circumstances from their stated incomes on file when they opened their accounts.

4. Stated Income California Subclass:

All Stated Income Class members whose homes securing the HELOCs are located in California.

5. TILA Notice Subclass:

All Inability to Verify Class members with the Schulken HELOC Contract to whom Chase sent a notice of suspension stating that Chase's reason for suspending the HELOC was a purported inability to verify the borrower's financial circumstances.

Plaintiffs have defined the "The Schulken HELOC Contract" as "the group of form HELOC contracts that applied to the Schulkens and other Inability to Verify Class members." 5AC ¶ 39. These contracts (1) arise from heritage WaMu customers, and (2) "either state that the borrower must provide, upon Chase's request, 'a current financial statement, new credit application, or both' or are wholly silent with respect to any right of the bank to request any financial information." *Id.*

## II.   LEGAL STANDARDS

Class certification of Plaintiffs' claims is governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bear the burden of establishing that all four requirements of Rule 23(a) are met, as well as one requirement of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Whether or not to certify a class is within the discretion of the Court. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL-CIO CLC v. ConocoPhilips Co.*, 593 F.3d 802, 807 (9th Cir. 2010).

Under Rule 23(a), Plaintiffs must establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

1    claims or defenses of the representative parties are typical of the claims or defenses of the class;

2    and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.

3    R. Civ. P. 23(a).  These requirements are typically referred to as the numerosity, commonality,

4    typicality and adequacy requirements.  "The United States Supreme Court requires district courts to

5    engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs

6    seeking class certification have met the requirements of Rule 23." *Ellis v. Costco Wholesale Corp.*,

7    657 F.3d 970, 980 (9th Cir. 2011) (*citing Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161

8    (1982)).  Additionally, Plaintiffs must establish one of the three requirements of Rule 23(b).

9    Plaintiffs here seek to certify classes for injunctive relief pursuant to Rule 23(b)(2) as well as

10   classes for claims seeking damages under TILA, Regulation Z, and breach of contract pursuant to

11   Rule 23(b)(3).  5AC ¶¶ 57-58.  Because Plaintiffs seek certification pursuant to both Rule 23(b)(2)

12   and 23(b)(3), the Court will first address Plaintiffs' motion as it relates to injunctive relief, and then

13   address the motion to certify as it relates to Plaintiffs' damages claims.

14       **A.  Injunctive and Declaratory Relief**

15       As an initial matter, Defendants argue that the Schulkens may not seek to certify a class for

16   injunctive or declaratory relief pursuant to Rule 23(b)(2).  Essentially, Defendants argue that

17   because Plaintiffs refinanced their HELOC with another bank, the Schulkens (1) no longer have

18   standing to bring claims for injunctive and declaratory relief, and (2) are not adequate class

19   representatives.  As discussed in the Court's Order on Defendants' Motion to Dismiss Plaintiffs'

20   Fourth Amended Complaint, there is some ambiguity as to whether issues like the one raised by

21   Defendants are properly understood as adequacy, mootness or standing issues.  *See* Order, October

22   11, 2011, ECF No. 169.  The Court agrees that Plaintiffs' claims for injunctive and declaratory

23   relief cannot proceed on a class wide basis.

24       Plaintiffs' class certification motion for injunctive and declaratory relief fails because the

25   Schulkens are not adequate class representatives for both a damages class and a class seeking

26   prospective relief.[2]  Rule 23(a)(4) permits class certification only if the "representative parties will

27   ───────────────
     [2]   Analyzing this issue under the Rule 23 adequacy requirement appears to be an appropriate

28   analytical framework at this stage in the litigation.  *See* Charles Alan Wright, et al., *Federal
     Practice and Procedure* § 3533.9.1 at 524 (suggesting that Article III standing analysis should be

                                                     7

     Case No.: 09-CV-02708-LHK
     ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

1  fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Schulkens no

2  longer have a HELOC with Chase.  Therefore, the Schulkens are unlikely to benefit from much of

3  the injunctive and declaratory relief sought, including the removal of the HELOC suspension and

4  an order prohibiting Chase from including class members in the future 4506-T Program. *See* 5AC

5  ¶¶ 98, 101, 122.  As a result, they do not "share an interest with class members whose primary goal

6  is to obtain injunctive relief," such as those class members that have maintained their contractual

7  relationship with Chase and currently have suspended HELOCs. *Ellis*, 657 F.3d at 986

8  (concluding that former employees are not adequate representatives of a class for injunctive relief

9  arising out of gender discrimination claims); s*ee also Falcon*, 457 U.S. 147, 149 (1982) (plaintiff

10  alleging that he was passed over for a promotion because of race was not an adequate

11  representative to "maintain a class action on behalf of Mexican-American applicants" who were

12  not hired by the same employer).

13       Nor is the Court persuaded by Plaintiffs' argument that the Schulkens plan to return to

14  Chase as HELOC customers.  The likelihood that the Schulkens will obtain another Chase HELOC

15  is highly speculative at best.[3]  As a general matter, the Schulkens indicated that they have no plans

16  and no desire to return to Chase as HELOC customers, and that several conditions would have to

17  be met before they would even consider returning as Chase HELOC customers. *See* Jeff Schulken

18  Dep. at 197 (stating that in the future he would "hypothetically" consider reopening a HELOC, but

19  that he is "happy that [the Chase HELOC is] not hanging over my head anymore"), Collado Decl.

20  Ex. A; Jenifer Schulken Dep. at 93-94 (stating that "I don't think, honestly, at this point we would

21  _____

22  applied at the outset of the suit and Rule 23 should control thereafter in class certification cases in
   which plaintiffs' claims become mooted during the pendency of the litigation).  Therefore, the
23  Court need not address the similar arguments that the Schulkens lack standing to bring injunctive
   relief, or that the claims for injunctive relief are moot.
   [3] The cases Plaintiffs rely upon to establish that an "intent to return" is sufficient to establish
24  adequacy of class representatives are also unpersuasive. *Doe v. Hagee*, 473 F. Supp. 2d 898, 996
   (N.D. Cal. 2007) (denying motion to dismiss on mootness grounds because plaintiffs intended to
25  enlist in the marines and thus were likely to be subject to alleged constitutional violations in the
   future); *Deitz v. Comcast Corp.*, C 06-06352-WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006)
26  (granting motion to dismiss injunctive relief claims based on Article III standing because plaintiff
   had not "demonstrated that there exists a definitive likelihood that he will once again become a
27  subscriber of defendants' cable services.").  For one, these cases do not occur in the context of a
   class certification motion.  Additionally, the factual record in this case does not establish with any
28  degree of certainty that Plaintiffs have manifested a definitive intent to re-open a Chase HELOC.

8

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

apply with Chase" and that they currently have no plans to apply for a HELOC with Chase),

Collado Decl. Ex. B.  As it stands, the likelihood that the Schulkens will benefit from the injunctive

and declaratory relief sought is too theoretical to establish that they are adequate class

representatives.

"As long as the proposed class satisfies the requirements of Rule 23, the court may certify

the class conditioned upon the substitution of another named plaintiff."  *Nat'l Fed'n of Blind v.*

*Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007).  However, in this case the Court

declines to manage the class by permitting substitution of named plaintiffs.  This suit was filed in

June of 2009, and the Plaintiffs are currently operating under the Fifth Amended Complaint.

Plaintiffs have had five chances to amend their pleadings.  Moreover, Plaintiffs' counsel has known

since November 2010 that the Schulkens had refinanced their HELOC with another lender, but has

not moved to add additional named plaintiffs.  Indeed, the most recent motion to amend, filed in

June 9, 2011, while the first motion to certify a class was pending, did not seek leave to include

additional named plaintiffs.  ECF No. 90.  Finally, Plaintiffs' counsel has been aware of, since

2009 and 2010, additional class members potentially willing to act as named plaintiffs.  Allowing

substitution of class representatives would be unduly prejudicial to Defendants and would unfairly

delay this litigation further.

Moreover, it isn't clear that allowing Plaintiffs to add new named plaintiffs would remedy

all the issues that make class certification of the current injunctive and declaratory relief classes

inappropriate under Rule 23(b)(2).  Rule 23(b)(2) permits class actions for declaratory or injunctive

relief if "the party opposing the class has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Supreme Court has explained that the key to

class actions for injunctive relief pursuant to Rule 23(b)(2) is the "indivisible nature of the

injunctive or declaratory remedy warranted."  *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541,

2557 (2011).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory

judgment would provide relief to each member of the class.  It does not authorize class certification

9

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

**United States District Court**
For the Northern District of California

1    when each individual class member would be entitled to a *different* injunction or declaratory

2    judgment against the defendant." *Id.* (emphasis in original).

3           In this case, Plaintiffs seek injunctive relief requiring Chase to remove class members'

4    HELOC suspensions, note in its files that the class members' accounts were "improperly

5    suspended," and reinstate class members' HELOCs, as well as an order prohibiting Chase from

6    including class members in future 4506-T Program. *See* 5AC ¶¶ 98, 101, 122, Prayer for Relief.

7    There are at least two problems with the breadth of the requested injunctive and declaratory relief

8    sought by Plaintiffs.  First, some of the injunctive relief sought is individualized in nature and

9    therefore class certification under Rule 23(b)(2) would be inappropriate.  For example, Plaintiffs

10   seek to have HELOC accounts reinstated for all class members.  Although some class members

11   may, at least theoretically, be open to returning as Chase HELOC customers under the right terms

12   and conditions, it isn't clear that all members of the class feel the same way.  Class members like

13   the Schulkens who have decided to refinance with other banks may not wish to have their accounts

14   reinstated without individualized approval.  Such injunctive relief for all class members, without

15   notice and the right to opt-out, would raise due process concerns.  *Cf. Dukes*, 131 S.Ct. at 2558-59

16   (explaining that Rule (b)(2) classes are mandatory because they relate to conduct which is

17   "remedied by a single classwide order," whereas Rule (b)(3) classes are permissive, but afford

18   absent class members greater procedural safeguards such as mandatory notice and an opportunity

19   to opt out).

20          Second, the future injunctive and declaratory relief sought is not appropriate for the *class as*

21   *a whole*.  Plaintiffs seek an order enjoining Chase from future suspensions or reductions of

22   HELOCs.  The classes Plaintiffs seek to certify include both class members that still maintain

23   HELOCs with Chase and class members who, like the Schulkens, no longer maintain HELOCs

24   with Chase.  For those class members who no longer have HELOCs with Chase, it is unclear why

25   these class members would need the requested relief because they are not currently in a position to

26   benefit from a change in Chase's policies and practices.  *Cf. Dukes*, 131 S.Ct. 2560 (former

27   employees of Wal-Mart have not standing to seek injunctive or declaratory relief against Wal-

28   Mart's employment practices and as a consequence injunctive and declaratory relief is not

                                                        10

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

appropriate respecting the class "*as a whole*") (emphasis in original).  For these reasons, the Court finds that the Schulkens may not seek declaratory and injunctive relief pursuant to Rule 23(b)(2).[4]

### B.  Rule 23(a) Requirements[5]

Although the Plaintiffs may not seek injunctive and declaratory relief, the classes seeking damages claims may yet be certified pursuant to Federal Rule of Civil Procedure 23(b)(3).  Each of the requirements for certification under Rule 23(a) and 23(b)(3) is discussed below.

#### 1.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," although "[a]ll questions of fact and law need not be common to satisfy the rule.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551.  As the Supreme Court explained in *Dukes*, the key consideration in assessing commonality is "not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal citations and quotation omitted).  Plaintiffs have moved to certify two separate classes: the Stated Income class and the Inability to Verify class.  Each class will be considered in turn.

#### a. Stated Income Class

The Stated Income class challenges Chase's policy of comparing a borrower's stated income at origination with the borrower's verified income at the time the account was processed through the 4506-T program.  Plaintiffs argue that the 4506-T Program expressly avoided requesting any verified information from the year of origination and Chase knew or should have known that WaMu's stated income values were falsely inflated.  Plaintiffs argue that because

---

[4]   Accordingly, the Court denies certification of the California subclasses as Plaintiffs appear to seek only injunctive relief for their UCL claims.  *See* 5AC, Prayer for Relief; July 21, 2011 Transcript at 3:8-10 ("And then the UCL claims for the California Subclasses will remain under 23(b)(2) as well.").

[5]   Defendant has conceded that the proposed classes meet the numerosity requirement.  *See* Woodrow Decl. Exs. Z-1, Z-2, Z-3.

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Chase's uniform policy of comparing stated income to verified income created a likelihood of falsely inflated values as to all class members, the commonality requirement is met. Plaintiffs present the common issues as:

- Whether comparing verified current income to the unverified stated income on file with WaMu at account origination would reveal an actual change in financial circumstances such that, as a result of the change, Chase had a reasonable belief that the borrower would be unable to meet the payment terms of the HELOC agreement.

- Whether it violates TILA and Regulation Z, and breaches Chase's HELOC contracts, to knowingly compare verified current income to the unverified stated income on file with WaMu at account origination to determine whether a HELOC customer has in fact experienced a material adverse change in financial circumstances.

Pl's Revised Mot. for Class Cert. ("Mot. for Class Cert.") at 15. Chase, on the other hand, argues that commonality is not met because determining whether all class members did or did not suffer a material decline in their financial circumstances will require reviewing the personal financial information of each absent class member.

Despite the fact that Chase applied a uniform policy of processing customers pursuant to the 4506-T Program, the Court does not find that the questions raised by Plaintiffs create the "capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551. The Court agrees with Defendants that Chase's policies would not necessarily always result in an unjustified suspension, and that the class claims will require an individual analysis of the financial circumstances of each class member.

Plaintiffs rely heavily on their expert, Richard George,[6] to argue that Chase's reliance on customers' stated incomes at origination increased the risk of unjustified suspensions. Mot. for Class Cert at 15. Mr. George explained that the "flawed" and "unfair" aspect of the 4506-T Program was:

"[Chase's reliance on] a comparison of verified current financial information as against unverified stated income, which they knew overwhelmingly was potentially inflated and, as such, using inflated numbers compared against today's numbers is going to increase the probability of there being a negative difference that would potentially prompt a suspension of a line unfairly, inaccurately."

---

[6] Because the Court declines to certify the Stated Income class, the Court need not reach Defendants' Daubert challenge to Richard George.

12

1    George Dep. at 139 ("George Dep."), Woodrowl Decl. Ex. K.  However, even if the Court accepts

2    Mr. George's opinion that Chase's program increased the *risk* of unjustified suspensions, such an

3    opinion does not establish whether any given class members' HELOC was improperly suspended

4    by Chase giving rise to liability.

5          The Stated Income class members' breach of contract claims and TILA claims are

6    substantially similar because the HELOC agreements contain terms that track Regulation Z.  *See*

7    5AC ¶ 101.  TILA and Regulation Z prohibit lenders from changing material terms of a mortgage

8    or HELOC, except under certain circumstances.  One of these exceptions is when the creditor "has

9    reason to believe that the consumer will be unable to comply with the repayment requirements of

10   the account due to a material change in the consumer's financial circumstances." 15 U.S.C. §

11   1647(c)(2)(C).  Similarly, Regulation Z provides that creditors may only reduce HELOC credit if

12   they have a "reasonable belief" that the consumer will be unable to repay the debt due to a

13   "material change in financial circumstances."  12 C.F.R. § 226.5b(f)(3)(vi).  In the official staff

14   interpretation of Regulation Z, a "material change" is defined as follows:

15        Two conditions must be met for § 226.5b(f)(3)(vi)(B) to apply.  First, there must be a
          'material change' in the consumer's financial circumstances, such as a significant decrease
16        in the consumer's income.  Second, as a result of this change, the creditor must have a
          reasonable belief that the consumer will be unable to fulfill the payment obligations of the
17        plan.  A creditor may, but does not have to, rely on specific evidence (such as the failure to
          pay other debts) in concluding that the second part of the test has been met.  A creditor may
18        prohibit further advances or reduce the credit limit under this section if a consumer files for
          or is placed in bankruptcy.

19   12 C.F.R. § 226 Supp. I, ¶5b(f)(3)(vi), Note 7.

20        In order to lawfully reduce a HELOC, Regulation Z requires both that a material change in

21   income has occurred and that the lender has a reasonable belief based on that material change that

22   the consumer will be unable to fulfill their debt obligations. Thus, in order to succeed on their

23   TILA claim, Plaintiffs will have to establish that either (1) there was no material change in income

24   for all class members, or (2) that Chase did not have a "reasonable belie[f] that the consumer [was]

25   unable to fulfill the payment obligations of the plan," as a result of the material change in income

26   as to all class members.  *Id.*

27

28

United States District Court
For the Northern District of California

13

Similarly, Plaintiffs' breach of contract claim for the Stated Income class alleges that the HELOC agreements at issue allow Defendants to reduce or suspend additional extensions of credit during times when the Defendants "(b) reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances." 5AC ¶¶ 101-105; Ex. D. Thus, Plaintiffs' breach of contract claims will mirror Plaintiffs' TILA claims.

Plaintiffs' claims pursuant to the Stated Income class do not rise and fall based on common factual or legal issues. Even assuming that the stated income at origination was likely to be inflated for many class members, it cannot be said that *all* class members' stated incomes were necessarily inflated. Whether each class member suffered a material adverse change in income will require an inquiry into the specific circumstances of each individual, including an analysis as to whether their initial incomes were inflated, and whether their incomes have changed.

Moreover, Chase's policy of comparing a borrower's verified income to her stated income at origination does not necessarily mean that Chase's belief that an individual consumer would be unable to fulfill the payment obligations of the plan was unreasonable. As explained above, those customers whose DTI ratios fell within a certain range were subjected to underwriter review. In those situations, Chase's underwriters "made a determination . . . whether there had been a material adverse change in the financial condition of that borrower from the time the loan was originated to the time under review." George Dep. at 113-14, Collado Decl. Ex. C. Chase's underwriters relied on "the individual borrower information" which "had to be obtained and factored into a decision to suspend or not." George Dep. at 117. As Mr. George admitted, "the underwriter had to make a call and they made it based on either that single number or they looked into additional information that might give some corroboration or negate the negative impression of that higher DTI. That's truly an underwriting call at that point." George Dep. at 117. Chase's common policy thus treats each class member uniquely because a review of whether the underwriters' decision to suspend was reasonable will depend on a host of factors relating to the financial circumstances of the borrower, what information was considered by the underwriters, and the weight that such information was given. The mere fact that the stated income at origination may have been inflated

14

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

is insufficient to establish that all underwriters' decisions were objectively unreasonable.  Thus, there is no single common factual or legal issue likely "to drive the resolution of the litigation" with respect to the Stated Income class.  *Dukes*, 131 S.Ct. at 2551.  Accordingly, Plaintiffs have not met their burden of establishing all Rule 23(a) requirements and Plaintiffs' motion to certify the Stated Income class is DENIED.

### b. Inability to Verify Class

The Inability to Verify class challenges the aspect of Chase's 4506-T Program under which Chase suspends the HELOCs of customers who, in response to the Income Verification Letters, fail to send Chase either a signed 4506-T form or paystubs or who do not respond at all.  Plaintiffs allege that this aspect of Chase's 4506-T program breaches the form agreements and likewise violates TILA and Regulation Z.

Members of the Inability to Verify class all signed one of two types of HELOC contracts with WaMu.  *See* Woodrow Decl. Exs. X-1 and X-4.  Both Plaintiffs and Defendants rely on the interpretation of the HELOC contracts to support their claims or defenses.  Plaintiffs argue that Chase breached the class members' contracts by blocking HELOCs in response to class members' failure to provide IRS Forms, paystubs or both.  Defendants argue that Plaintiffs materially breached the agreement by failing to provide all the income information requested.  Thus, interpretation of these form contracts is likely to drive the outcome of Plaintiffs' claims in the Inability to Verify class.  *See Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534, 540-41 (N.D. Cal. 2010) ("[T]he Court here is asked to focus on the loan documents, not representations made to each individual class member.  Therefore, there are common questions of law and fact.").

Moreover, for the Inability to Verify class, unlike the Stated Income class, class members were subject to the same Chase policy that did not include a discretionary review into each individual class members' financial status.  Instead, class members appear to have been treated uniformly – based on their failure to provide all financial documentation requested.  Accordingly, commonality is met for the Inability to Verify class.

### 2. Typicality

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

1   The typicality inquiry under Rule 23(a)(3) requires that Plaintiffs establish "the claims or

2   defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.

3   Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury,

4   whether the action is based on conduct which is not unique to the named plaintiffs, and whether

5   other class members have been injured by the same course of conduct." *Hanon v. Dataproducts*

6   *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense

7   of the class representative, and not to the specific facts from which it arose or the relief sought."

8   *Id.* (internal citation and quotation marks omitted). Moreover, representative claims are typical if

9   they are "reasonably coextensive with those of absent class members; they need not be

10  substantially identical." *Hanlon*, 150 F.3d at 1020.

11   Defendants argue that Plaintiffs' claims are different from those class members that did not

12  submit any additional information or had their HELOCs subsequently reinstated. Opp'n at 19.

13  These factual differences between the Plaintiffs and other class members, however, do not establish

14  that the Schulkens' claims are atypical. Plaintiffs allege that the same triggering event – failure to

15  fully respond to the Income Verification letters – led to automatic HELOC suspensions. Plaintiffs'

16  claim is based on the same triggering event that they, and the remainder of the class members,

17  faced. Plaintiffs' claims are therefore typical of the class regardless of whether the class members'

18  HELOCs were later ultimately reinstated or whether the class members later submitted any

19  additional information.

20   "Class certification is inappropriate, however, where a putative class representative is

21  subject to unique defenses which threaten to become the focus of the litigation." *Plascencia v.*

22  *Lending 1st Mortgage*, 259 F.R.D. 437, 443-444 (N.D. Cal. 2009). In *Hanon*, for example, the

23  Ninth Circuit found that the named plaintiff did not satisfy Rule 23(a)'s typicality requirement

24  because his "unique background and factual situation require[d] him to prepare to meet defenses

25  that [were] not typical of the defenses which may be raised against other members of the proposed

26  class." *Hanon*, 976 F.2d at 508.

27   Defendants also argue that the Schulkens' TILA claims are not typical because "resolution

28  of these claims will require determination of Chase's defense that the Schulkens used their HELOC

16

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

1   primarily for business purposes." Opp'n at 20.  In order to bring a TILA claim, a plaintiff must

2   establish that the HELOC was used "primarily for personal, family, or household purposes."  *See*

3   15 U.S.C. § 1603(1).  Defendants argue that the Schulkens used their HELOC in part to pay for

4   expenses relating to a daycare business they run out of their home, and that therefore they are

5   subject to unique defenses with respect to their TILA claims.  Opp'n at 20-21.

6          The Court finds Defendants arguments unavailing for two reasons.  First, it appears based

7   on the record before the Court that the Schulkens used their HELOC primarily for personal, family,

8   or household purposes.  Indeed, the Schulkens' HELOC was in the Schulkens' names and not the

9   name of the business and was secured by a mortgage on their personal residence.  *See* Collado

10  Decl. Ex. A-5; *see also* Pursh Dep. at 180.  Moreover, although the Schulkens conceded that they

11  used their HELOC to pay off credit card expenses, some of which were related to their home

12  daycare business, such expenses were "minimal compared to [their] personal expenses." *See, e.g.*,

13  Jeff Schulken Dep. at 130.

14         Second, this "unique defense" is faced by every member of the proposed class, and is not,

15  in fact, unique to the Schulkens.  "The need to show that the transactions involved are consumer

16  transactions is inherent in every [TILA] class action."  *Peoples v. Sebring Capital Corp.*, No. 01-

17  5676, 2002 WL 406979, at *8 (N.D. Ill. March 15, 2002) citing 12 C.F.R. pt. 226, supp. I, §

18  226.3(a)-2.  The Court agrees with Plaintiffs that following Defendants' line of reasoning would

19  potentially create an endrun around TILA class actions.  In almost every case, a named plaintiff in

20  a TILA class action would be susceptible to the defense that the purpose of the HELOC was not

21  primarily for personal use.  If that defense alone were sufficient to preclude class certification,

22  there would be no class actions under TILA.  "Such a result would be inconsistent with the TILA's

23  express provision for class actions."  *See id.*  In this case, it does not appear that a "unique defense"

24  threatens to become the focus of the litigation.  *Plascencia*, 259 F.R.D. at 443-444.

25         Additionally, Defendants argue that the Schulkens' claims are not typical of all class

26  members because the form contract signed by the Schulkens is materially different than the form

27  contracts of other members of the class.  Defendants' Opposition to Pl.'s Mot. for Class Cert

28  ("Opp'n") at 19-20.  Some contracts, like the Schulkens' contract, state that the borrower must

17

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

provide, upon Chase's request, "a current financial statement, new credit application, or both,"

while other class members signed contracts that are wholly silent as to what information

Defendants can demand.  Thus, Defendants argue that the Schulkens' breach of contract claim is

not typical of the class.  The Court agrees.  A class that contains multiple form contracts with

materially different language raises the possibility that there may be a breach of contract for some

class members but not others.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331,

340 (4th Cir. 1998).  In such a case as this one, Plaintiffs' claims cannot be typical of the class as a

whole.  *Id.*  Accordingly, Plaintiff cannot bring claims against those class members who signed

form contracts which are silent with respect to the information that Chase can demand.[7]  This issue

is remedied, however, by a modification to the proposed class definition offered by the Plaintiffs.

Accordingly, the Court amends the definition of "Schulken HELOC contract" to include only those

members who signed contracts that (1) arise from heritage WaMu customers, and (2) state that the

borrower must provide, upon the lender's request, "a current financial statement, new credit

application, or both."

### 3.  Adequacy

Rule 23(a)(4) permits class certification only if the "representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This factor requires: "(1)

that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class,

and (2) that Plaintiffs are represented by qualified and competent counsel."  *Hanlon*, 150 F.3d at

1020.  "Adequate representation depends on, among other factors, an absence of antagonism

between representatives and absentees, and a sharing of interest between representatives and

absentees."  *Ellis*, 657 F.3d at 985.

---

[7]  Defendant argues that Plaintiffs cannot bring claims for the notices received by Non-Responders because the Schulkens were Incomplete Responders that received different letters from Chase indicating why their HELOC account was suspended.  Opp'n at 19 n.14.  This argument is cured, however, by the fact that Plaintiffs' TILA notice subclass claim only challenges notices sent to Incomplete Responders like the Schulkens, not Non-Responders.  5AC ¶ 84 & Ex. B; Mot. to Cert. Class at 14.

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

United States District Court
For the Northern District of California

1    The Schulkens are adequate representatives who will protect the interests of the classes

2  seeking monetary relief.[8]  There is no indication in the record that there are any conflicts of interest

3  between the Schulkens and the proposed classes.  Indeed the record reflects that the Schulkens

4  have been committed to pursuing this litigation since its inception.  Woodrow Decl. ¶¶ 5-6.

5    Moreover, it appears that Plaintiffs are represented by qualified and competent counsel at

6  the firm of Edelson McGuire, LLC.[9]  Attorneys with Edelson McGuire have identified and

7  investigated the claims at issue in this litigation.  *See* Fed. R. Civ. P. 23(g)(1)(A)(i).  Moreover, the

8  Court has reviewed the declaration of Steven Woodrow and the accompanying firm resume and

9  finds that the firm has demonstrated experience in handling complex consumer class actions in the

10  applicable area of law.  *See* Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii); Woodrow Decl. ¶¶ 10-12; Ex. AB.

11  Finally, the Court is persuaded that Plaintiffs' counsel has the necessary resources to commit to

12  representing the class.  *See* Fed. R. Civ. P. 23(g)(1)(A)(iv).  Therefore, the Court finds that both

13  class representatives and Plaintiffs' counsel are adequate.

14  **C.  Rule 23(b)(3) Requirements**

15    In order to certify a class pursuant to Rule 23(b)(3) the court must find that "questions of

16  law or fact common to class members predominate over any questions affecting only individual

17  members, and that a class action is superior to other available methods for fairly and efficiently

18  adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As explained below, Plaintiffs have met

19  their burden in establishing that common questions of law or fact predominate and that the class

20  action is superior to other available methods in (1) the Inability to Verify Class and (2) the TILA

21  Notice Subclass.

22    **1.  Predominance**

23    The predominance inquiry "tests whether proposed classes are sufficiently cohesive to

24  warrant adjudication by representation."  *Hanlon,* 150 F.3d at 1022 (quoting *Amchem Prods., Inc.*

25  *v. Windsor*, 521 U.S. 591, 623 (1997)).  The mere existence of common issues of fact or law is

26

27  [8]  Defendants argue that Plaintiffs are inadequate class representatives because they lack standing
to seek injunctive relief.  The Court need not address this argument here given that it has already
determined that Plaintiffs may not seek injunctive relief.
28  [9]  Defendants have not contested the adequacy of Plaintiffs' counsel.

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

insufficient, as such commonality is already required by Rule 23(a)(2).  Predominance is met where common questions, which can be resolved for all members on a class-wide basis, are such a significant aspect of the case that they present "a clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*

### a. Inability to Verify Class – Contract Claims

As explained above, interpretation of the form contracts is likely to drive the outcome of Plaintiffs' claims in the Inability to Verify class.  *See Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534, 540-41 (N.D. Cal. 2010) ("[T]he Court here is asked to focus on the loan documents, not representations made to each individual class member.  Therefore, there are common questions of law and fact.").  Plaintiffs' theory of liability rests on a common interpretation of WaMu's form contract.  Specifically, Plaintiffs argue that their form HELOC contract only requires that the borrowers provide, upon the lender's request, "a current financial statement, new credit application, or both."  Plaintiffs allege that Chase may not suspend a HELOC for failure to provide both the IRS 4506 form and paystubs.  Plaintiffs' claim is contingent upon contract interpretation common to all.

Although individual damages issues may exist for Plaintiffs' contract claim, the Court does not agree that they will predominate over the common question of liability.  Damages issues may require an individual determination without destroying class certification.  *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").  Moreover, Plaintiffs have offered several potential solutions to addressing the damages calculation including severing the liability phase from a damages phase or crafting a class notice that requests additional information from class members.  The court therefore concludes that Plaintiffs' breach of contract claim does not raise individual issues likely to be the object of most of the court's and the parties' efforts.  *See Menagerie Prods. v. Citysearch,* 2009 U.S. Dist. LEXIS 108768, at *36, 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) (quoting *Kleiner v. First Nat'l Bank,* 97 F.R.D. 683, 691 (N.D. Ga.1983)) ("[w]hen viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such").

20

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

**United States District Court**
For the Northern District of California

### b.  Inability to Verify Class – TILA Claims

As explained above, TILA and Regulation Z prohibit lenders from changing material terms of a mortgage or HELOC, except under certain circumstances.  Plaintiffs' theory of liability is that by way of the 4506-T Program, Chase suspended class members' HELOCs based upon their failure to fully respond to Chase's request for financial documentation.  Plaintiffs argue that Chase's reason for suspending the HELOCs was not a permissible rationale for suspending borrowers' HELOCs pursuant to TILA.  *See generally* 15 U.S.C. § 1647.  Thus, Plaintiffs' TILA claim will likewise turn on common factual issues related to the 4506-T program implemented by Chase.

Defendants argue that Plaintiffs will need to prove reliance on Chase's TILA violations in order to establish liability, and that proof of individual reliance will allow individual issues to predominate over common issues.  Opp'n at 27.  *In re Ferrell*, a case cited by Defendants, establishes that a Plaintiff must show detrimental reliance in order to recover actual damages for violations of TILA's disclosure requirements.  539 F.3d 1186 (9th Cir. 2008).  However, Plaintiffs' theory of TILA liability is not based on a material non-disclosure or misrepresentation at loan origination but rather on the bank's unilateral decision to suspend HELOCs on a class-wide basis.  Thus, the requirement of detrimental reliance is inapplicable here.  Accordingly, the Court finds that common issues predominate in the Inability to Verify class members' TILA claims.

### c.  Inability to Verify Class – TILA Notice Subclass

Pursuant to 12 C.F.R. § 226.9(c)(3) lenders are required to "mail or deliver written notice of the action to each consumer who will be affected.  The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action."  Chase sent class members form notices that their HELOCs were being suspended.  *See* Gill Decl. ¶¶ 1-3; Pursh Dep. at 24.  Thus, an evaluation of whether Chase violated TILA notice requirements can be evaluated based on class wide proof.  Moreover, because Plaintiffs seek statutory damages, individual damage issues will not predominate.  Accordingly, predominance is satisfied with respect to Plaintiffs' TILA notice claim.

### 2. Superiority

21

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

Rule 23(b)(3) tests whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(3) the court must evaluate whether a class action is a superior method of adjudicating plaintiffs claims by evaluating four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).

In this case, the Court finds that a class action is the preferred method for bringing claims. Individual recovery is likely to be small, while the size of the class is likely to be large.  These facts suggest that class treatment would be appropriate because individual claimants are unlikely to proceed against Chase individually and on their own behalf.  Moreover, class actions are explicitly permitted under TILA, suggesting that the class vehicle is the preferred method for bringing those claims.  15 U.S.C. 1640 (a)(1)(2)(B).

The Court foresees no difficulties in managing this class action.  However, should it become apparent through the remainder of the litigation that individual issues predominate over class-wide issues or that class treatment otherwise fails to meet the requirements of Rule 23, the Court will consider decertifying the class.

**D.  Proposed Class Notice and List**

Given that the Court has concluded that class certification pursuant to Rule 23(b)(3) is appropriate for some of Plaintiffs' claims, the parties are ordered to meet and confer regarding a proposed notice that complies with Federal Rules of Civil Procedure 23(c)(2)(B) and file a joint stipulated class notice within 21 days of the date of this Order.  If the parties cannot agree, then each side may file a proposed notice and a brief, up to three pages, in support of their proposed notice.  To the extent that they have not yet done so, Defendants are also ORDERED to produce the class list to Plaintiffs' counsel within 21 days of the date of this order.

**III.    CONCLUSION**

22

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS

1    Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B), CERTIFIES the following class

2    and subclass, defined as follows:

3        1.   Inability to Verify Class:

4        All HELOC borrowers nationwide who were parties to the Schulken HELOC
         Contract and whose HELOCs Chase blocked through the 4506-T Program when the
5        customers did not provide either a complete IRS Form 4506-T, paystubs, or both,
         upon Chase's request.

6        2.   TILA Notice Subclass:

7        All Inability to Verify Class members with the Schulken HELOC Contract to whom
         Chase sent a notice of suspension stating that Chase's reason for suspending the
8        HELOC was a purported inability to verify the borrower's financial circumstances.

9        The Court further defines the "Schulken HELOC contract" to include only those HELOC

10   contracts that (1) arise from heritage WaMu customers, and (2) state that the borrower must

11   provide, upon the lender's request, "a current financial statement, new credit application, or both."

12   The Court further certifies the above class and subclass as to TILA and Regulation Z claims for

13   damages as well as the breach of contract claims for damages.

14       The named Plaintiffs Jeffrey and Jenifer Schulken will serve as the class representatives.

15   The Court has considered the factors for appointing lead counsel pursuant to Federal Rule of Civil

16   Procedure 23(g) and believes that the law firm of Edelson McGuire can litigate this case

17   competently.  The Court therefore APPOINTS the law firm of Edelson McGuire as lead counsel.

18       A further case management conference is set for February 15, 2012 to discuss the status of

19   the case and mediation, the case schedule, and any issues regarding the class notice.

20   **IT IS SO ORDERED.**

21   Dated: January 5, 2012

22                                           LUCY H. KOH
                                             United States District Judge
23

24

25

26

27

28

Case No.: 09-CV-02708-LHK
ORDER GRANTING IN PART MOTION TO CERTIFY CLASS