Sean Reis (SBN 184044)
Edelson McGuire, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
949-459-2124 (phone)
949-459-2123 (fax)
sreis@edelson.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY SCHULKEN AND JENIFER SCHULKEN, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL BANK and JPMORGAN CHASE BANK, N.A.<br><br>Defendants. | No. 09-cv-2708-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Location: Courtroom 8, 4th Floor<br>280 South 1st Street<br>San Jose, CA 95113<br><br>Date: July 19, 2012<br>Time: 1:30 p.m.<br><br>Honorable Lucy H. Koh |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that on July 19, 2012 at 1:30 p.m., or at such other time as may be set by the Court, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of a class action settlement reached by the Parties and attached hereto as Exhibit A, in Courtroom 8, 4th Floor, 280 South 1st Street, San Jose, California 95113, before the Honorable Lucy H. Koh.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, oral argument of counsel, all documents in the record, and any other matter that may be submitted at the hearing.

Dated: April 27, 2012                                    Respectfully Submitted,

                                                        JEFFREY AND JENIFER SCHULKEN,
                                                        individually and on behalf of the Class of
                                                        similarly situated individuals,


                                                        /s/ Steven Lezell Woodrow
                                                        _____

                                                        JAY EDELSON (*Pro Hac Vice*)
                                                        jedelson@edelson.com
                                                        STEVEN L. WOODROW (*Pro Hac Vice*)
                                                        swoodrow@edelson.com
                                                        EVAN M. MEYERS (*Pro Hac Vice*)
                                                        emeyers@edelson.com
                                                        EDELSON MCGUIRE, LLC
                                                        350 North LaSalle, Suite 1300
                                                        Chicago, IL 60654
                                                        Telephone: (312) 589-6370
                                                        Facsimile: (312) 589-6378

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    NATURE OF THE LITIGATION ..................................................................... 3

    A.  Investigation into Mass HELOC Suspensions ........................................ 3

    B.  Summary of the Litigation and Settlement Negotiations ....................... 3

    C.  Chase's Position ..................................................................................... 6

III.   TERMS OF THE SETTLEMENT AGREEMENT ........................................ 7

    A.  Class and Subclass Definitions .............................................................. 7

        1.  The "Inability to Verify Class" .................................................... 7

        2.  The "TILA Notice Subclass" ........................................................ 7

    B.  Settlement Benefits .................................................................................. 7

        1.  Cash Payment to Class Members ................................................. 7

        2.  Automatic Cash Payment to Subclass Members .......................... 8

    C.  Other Relief ............................................................................................. 8

        1.  Payment of Notice and Administrative Fees ............................... 8

        2.  Compensation to the Class Representatives ................................ 8

        3.  Payment of Attorneys' Fees and Expenses .................................. 8

    D.  Release .................................................................................................... 8

IV.    THE PROPOSED SETTLEMENT FALLS WITHIN THE RANGE OF FINAL
       APPROVAL AND THUS WARRANTS PRELIMINARY APPROVAL ........................ 9

    A.  The Settlement Enjoys a Presumption of Fairness in Light of the Process
        Used to Achieve It ................................................................................ 10

    B.  The Settlement Benefits are an Exceptional Result for Settlement Class
        Members ............................................................................................... 12

    C.  The Settlement is Either Comparable with or Superior to the Only Two
        Other HELOC Settlements Known to Class Counsel ............................ 14

V.    THE PROPOSED PLAN OF CLASS NOTICE ................................................................. 15

       A.    U.S. Mail Notice ........................................................................................... 16

       B.    Internet Publication ...................................................................................... 16

       C.    CAFA Notice ................................................................................................ 17

VI.   CONCLUSION ......................................................................................................... 17

1

**Table of Authorities**

2     United States Supreme Court Cases:

3     *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................................ 16

4

5     United States Circuit Court of Appeals Cases:

6     *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................................... 10

7     *In re GM Fuel Tank Litigation*, 55 F.3d 768 (3d Cir. 1995) ..................................................... 12

8     *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) .................................. 8

9     *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................................................ 10

10    *In re Syncor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008) ...................................................... 9, 10

11    *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................... 9

12

13    United States District Court Cases:

14    *Hamilton v. Wells Fargo Bank*, N.A., 09-cv-4152-CW, 2010 WL 1460253
      (N.D. Cal. April 12, 2010). ...................................................................................................... 2, 14
15

16    *Hopson v. Hanesbrands Inc.*, No. 08-cv-0844-EDL, 2009 WL 928133
      (N.D. Cal. Apr. 3, 2009) .............................................................................................................. 10

17    *In re California Micro Devices Sec. Litig.*, 168 F.R.D. 257 (N.D. Cal. 1996) ........................... 12

18    *In re Citibank HELOC Reduction Litig.*, 09-cv-0350MMC, 2010 WL 3447724
      (N.D. Cal. Aug. 30, 2010) ............................................................................................................ 2
19

20    *In re Heritage Bond Litigation*, No. 02-ml-01475-RGK, 2005 WL 1594403
      (C.D. Cal. June 10, 2005) ............................................................................................................ 10

21    *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................... 10

22    *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676
      (S.D.N.Y. Sept. 29, 2003) ............................................................................................................ 10
23

24    *In re JPMorgan Chase Bank, N.A., Home Equity Line of Credit Litig.*,
      794 F.Supp.2d 859 (N.D. Ill. 2011) .............................................................................................. 2

25    *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................... 9

26    Statutes:

27    Fed. R. Civ. P. 23 ...............................................................................................................*passim*

28    15 U.S.C. § 1601 ............................................................................................................................ 1

28 U.S.C § 1715 ....................................................................................................... 17

12 C.F.R. § 226.5b ..................................................................................................... 1

Cal. Bus. & Prof. Code § 17200 ................................................................................. 1


Miscellaneous:

Alba & Conte, 4 Newberg on Class Actions (4th ed. 2002) .................................. 9, 16

Manual for Complex Litigation (3d ed. 1995) .......................................................... 9

Manual for Complex Litigation (4th ed. 2004) ......................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

### I.    INTRODUCTION

This proposed class action settlement is the culmination of nearly three years of contentious and hard fought litigation between California homeowners Jeffrey and Jenifer Schulken ("Plaintiffs") and JPMorgan Chase Bank, N.A. ("Chase") over the suspension of Plaintiffs' home equity line of credit ("HELOC"). Plaintiffs alleged that Chase unlawfully implemented its "4506-T Program," whereby Chase summarily suspended the HELOCs of all borrowers who did not, upon Chase's request, provide Chase with a completed IRS form 4506-T, paystubs or both. Plaintiffs alleged that such suspensions, and the manner in which Class Members were notified of them, violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, its implementing regulation, Regulation Z, 12 C.F.R. § 226.5b, California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and breached the terms of Chase's HELOC contracts with its borrowers.

Chase vigorously opposed Plaintiffs' lawsuit by filing several motions to dismiss, propounding discovery, asserting affirmative defenses, opposing Plaintiffs' Motion for Class Certification, and otherwise defending against Plaintiffs' allegations.

In August 2011, at the direction of this Court, the Parties held a private mediation session before the Honorable Wayne Andersen (Ret.) of JAMS. Despite several hours of arm's length negotiations, the Parties were unable to reach a settlement but agreed to continue discussing settlement options. Subsequently, over the course of several months, the Parties continued exploring the possibility of a settlement and exchanged several proposals.

On January 5, 2012, this Court ruled on Plaintiffs' Revised Motion for Class Certification, certifying a Class consisting of all Chase HELOC borrowers nationwide who were parties to the "Schulken HELOC Contract" and whose HELOCs were suspended through the 4506-T Program. The Court also certified a Subclass of all Class Members to whom Chase sent a notice of HELOC suspension stating that Chase was unable to verify their financial circumstances. Finally, the Court appointed Jeffrey and Jenifer Schulken as Class and Subclass Representatives and the undersigned

1   counsel as Class Counsel.

2        This ruling and the subsequent status hearing catalyzed the Parties' settlement

3   negotiations. Following those events, the Parties engaged in active settlement discussions,

4   exchanged drafts of the settlement agreement, and conducted several telephonic discussions,

5   including several overseen by Judge Andersen. As a result, on March 7, 2012, the Parties reached

6   an agreement on all aspects of the relief to the Class and Subclass and, subsequently, negotiated an

7   incentive award for the Class Representatives and attorneys' fees for Class Counsel.

8        The result of this effort is a particularly strong nationwide Class Action Settlement

9   Agreement worthy of this Court's approval. (*See* "Settlement Agreement," a copy of which is

10  attached to this Motion as Exhibit A.) As explained below, Chase has agreed to pay $75 to all

11  Class Members who submit a claim form verifying damages that they have incurred as a result of

12  their HELOC suspension. In addition, Chase will automatically send a $25 check to all Subclass

13  Members, without requiring them to submit claim forms. Subclass Members are also eligible to

14  receive the $75 award available to all Class Members upon submission of the claim form. For the

15  overwhelming majority of the Class Members, these amounts will sufficiently compensate them

16  for the damages they incurred, if any, as a result of their HELOC suspension through the 4506-T

17  Program.

18       While similar HELOC suspension cases have been brought against other national banks in

19  the wake of the financial crisis and ensuing collapse of the housing market,[1] the instant case is the

20  only class action in the country challenging the validity of HELOC suspensions through an

21  income verification program. As a result, this is the first nationwide settlement of its kind.

22  The exceptional results achieved by the Settlement Agreement are well beyond those required for

23  preliminary approval. Accordingly, Plaintiffs move the Court to preliminarily approve the instant

24  Settlement. For the convenience of the Court, proposed dates and deadlines leading to a final

25

26      [1] *See, e.g., In re JPMorgan Chase Bank, N.A., Home Equity Line of Credit Litig.*, 794 F.Supp.2d 859 (N.D. Ill. 2011); *In re Citibank HELOC Reduction Litig.*, 09-cv-0350MMC (N.D.

27  Cal. Aug. 30, 2010); *Hamilton v. Wells Fargo Bank, N.A.*, 09-cv-4152-CW, 2010 WL 1460253 (N.D. Cal. April 12, 2010).

28

1 approval hearing are provided in the proposed order separately submitted to the Court.

2 **I.     NATURE OF THE LITIGATION**

3     **A.     Investigation Into Mass HELOC Suspensions**

4     In the wake of the financial crisis and collapse of the housing market in late 2008, Class

5 Counsel began receiving and analyzing hundreds of complaints from HELOC customers of all

6 major banks, including Chase, claiming that their respective HELOC lenders had unilaterally

7 suspended their accounts without justification. (*See* Declaration of attorney Steven L. Woodrow

8 ("Woodrow Decl.") ¶ 4, a true and accurate copy of which is attached as Exhibit B.) These

9 complaints and inquiries prompted Class Counsel to engage in a wide-ranging investigation into

10 the entire banking industry's HELOC suspensions, to compare and contrast various banks'

11 suspension policies and practices, and to determine which banking practices were in compliance

12 with TILA, Regulation Z, and the borrowers' HELOC contracts. (*Id.* ¶ 5.) To date, Class

13 Counsel's investigation has included the gathering of information and documents from hundreds

14 of aggrieved homeowners whose HELOCs have either been suspended or reduced by Chase and

15 other banks, as well as a review of thousands of pages of formal, informal, and confirmatory

16 discovery produced throughout the litigation. (*Id.* ¶¶ 4, 12.) Class Counsel's investigation also

17 included collaborating with federal and state lawmakers, regulators, and other public officials in

18 an effort to share information and bring to light the legal issues and impact of unjustified HELOC

19 suspensions. (*Id.* ¶ 7.)

20     As a result of this comprehensive investigation, Class Counsel were retained by the named

21 Plaintiffs in this case as well as by other homeowners aggrieved by such national lenders as Wells

22 Fargo Bank, N.A., Citibank, N.A., National City Bank, GMAC Mortgage, LLC, and OneWest

23 Bank, F.S.B. (*Id.* ¶ 9.)

24     **B.     Summary of the Litigation and Settlement Negotiations**

25 *Initiation of the litigation and motion practice*

26     On June 18, 2009, the Schulkens initiated this class action litigation alleging that Chase

27 unlawfully suspended their HELOC through the bank's 4506-T Program. (Dkt. 1.) Specifically,

28 the Schulkens alleged that in March 2009, Chase sent them a letter requesting that they complete

1   and return an IRS Form 4506-T, along with certain additional financial documentation, within 14

2   days. (*Id.* ¶ 18.) Even though they promptly submitted the requested information, Chase suspended

3   the Schulkens' HELOC well before the expiration of the 14-day time period set in its initial letter

4   and, shortly thereafter, sent the Schulkens another letter stating that their HELOC had been

5   suspended due to Chase's inability to verify their financial circumstances. (See *id.* ¶¶ 4, 20.) The

6   Schulkens claimed that such a suspension violated TILA, Regulation Z, the UCL, and breached

7   the express and implied terms of their HELOC contract. (Dkt. 1.)

8         Chase contested Plaintiffs' allegations through three (3) consecutive motions to dismiss,

9   asserting each time that Plaintiffs failed to state their claims on various grounds. (Dkt. 17, 34, 45.)

10   All of these motions were granted in part and denied in part. (Dkt. 30, 43, 59.) On October 27,

11   2010, Plaintiffs filed their Third Amended Complaint (Dkt. 62), and on November 10, 2010 Chase

12   filed its Answer and Affirmative Defenses (Dkt. 65).

13   *Discovery and further litigation*

14         Plaintiffs began the discovery process early on in this case – while Chase's second Motion

15   to Dismiss was still pending. (Woodrow Decl. ¶ 10.) On May 25, 2010, Plaintiffs propounded

16   their first set of discovery requests, including interrogatories and requests to produce, upon Chase

17   and subsequently followed up with two additional sets. (*Id.*) In response, Chase produced

18   extensive answers and, ultimately, over 5,300 pages of documents. (*Id.*) After diligently reviewing

19   Chase's production, Class Counsel deposed two members of Chase's upper management

20   knowledgeable of Chase's design and implementation of its 4506-T Program. (*Id.* ¶ 11.)

21         On January 5, 2011, Chase propounded its own discovery upon Plaintiffs. (*Id.* ¶ 12.) After

22   extensive preparation, Plaintiffs responded to 18 interrogatories and, eventually, produced over

23   5,100 pages of documents responsive to Chase's 35 requests for production. (*Id.*) In addition, in

24   May 2011, both of the Schulkens sat for their respective depositions. (*Id.* ¶ 13.) Finally, on June 7,

25   2011, Chase deposed Plaintiffs' class certification expert. (*Id.*)

26         On June 9, 2011, after receiving the benefit of the discovery conducted by both Parties,

27   Plaintiffs moved for leave to file a Fourth Amended Complaint (Dkt. 90), which was granted in

28   part and denied in part (Dkt. 129). After the Fourth Amended Complaint was filed, however,

1   Chase moved to strike and dismiss a number of Plaintiffs' new allegations. (Dkt. 142.) Following

2   full briefing, the Court denied Chase's Motion to Strike, granted in part and denied in part Chase's

3   Motion to Dismiss, and instructed Plaintiffs to file a Fifth Amended Complaint. (Dkt. 169.) Per the

4   Court's instruction, on October 14, 2011, Plaintiffs filed their Fifth Amended Class Action

5   Complaint, which remains an operative pleading in this proceeding. (Dkt. 170.)

6   *Initial Settlement Negotiations*

7        In August 2011, and at the direction of this Court, the Parties prepared for and attended a

8   mediation session presided over by Judge Wayne Andersen (Ret.). (Woodrow Decl. ¶ 14.) Despite

9   a good faith attempt to settle this case during the mediation, the Parties were unable to come to an

10   agreement and decided to go forward with the litigation. (*Id.*) Nevertheless, following the

11   mediation session, the Parties agreed to continue exploring settlement options and engaged in an

12   on-going dialogue in furtherance of those efforts while otherwise proceeding with the litigation.

13   (*Id.*)

14   *Class Certification*

15        On June 2, 2011, Plaintiffs filed their Motion for Class Certification, which was fully

16   briefed by the Parties. (Dkt. 83, 96, 124.) That Motion was based on Plaintiffs' proposed Fourth

17   Amended Complaint, which sought, among other things, injunctive relief for reinstatement of

18   suspended HELOC accounts pursuant to Plaintiffs' TILA claims. (Dkt. 90-1.) On July 20, 2011,

19   the Court denied the Motion for Class Certification without prejudice after finding that Plaintiffs

20   could not seek injunctive relief as a remedy for the alleged TILA violations. (Dkt. 129 at 12.) In

21   light of its ruling, the Court ordered that Plaintiffs file a revised Motion for Class Certification.

22   (*Id.*)

23        On August 10, 2011, Plaintiffs filed their revised Motion for Class Certification (Dkt. 146),

24   which was fully briefed and argued by the Parties (Dkt. 171). On January 5, 2012, the Court issued

25   an Order granting in part and denying in part Plaintiffs' Motion (the "Order"). (Dkt. 184.) The

26   Court held that Plaintiffs met all the requirements of Rule 23 and certified the "Inability to Verify

27   Class" and the "TILA Notice Subclass," defined as follows:

28

The Inability to Verify Class: All HELOC borrowers nationwide who were parties to the "Schulken HELOC Contract" and whose HELOCs Chase blocked through the 4506-T Program when the customers did not provide either a complete IRS Form 4506-T, paystubs, or both, upon Chase's request.

The TILA Notice Subclass: All Inability to Verify Class members with the Schulken HELOC Contract to whom Chase sent a notice of suspension stating that Chase's reason for suspending the HELOC was a purported inability to verify the borrower's financial circumstances.

(Dkt. 184 at 23.) The Court also appointed the undersigned counsel as Class Counsel and the Schulkens as Class Representatives. (*Id.*)

*Subsequent Settlement Negotiations*

Following the Court's ruling on class certification, the Parties resumed their settlement efforts, exchanging drafts of the settlement documents and engaging in telephone and email communications, often with Judge Andersen's involvement. (Woodrow Decl. ¶ 15.) On February 21, 2012, Class Counsel forwarded Chase the latest draft of the Settlement Agreement and Class notices and, on March 7, 2012, Chase's counsel responded with a counter-proposal. (*Id.* ¶ 16.) As a result, on March 7, 2012, the Parties reached an agreement on all aspects of the relief to the Class. (*Id.*) Only after the Parties reached agreement with respect to the relief to be made available to the Class and Subclass did the Parties begin negotiating an incentive award for the Class Representatives and the amount of attorneys' fees for Class Counsel. (*Id.*)

**C. Chase's Position**

Chase has denied and continues to deny any wrongdoing or that it committed any of the wrongful acts or violations of law or duty alleged in the Complaint. (Settlement Agreement, Recital E.) Chase contends that it has acted properly in all regards in connection with its implementation of the 4506-T Program and the resultant treatment of its customers' HELOCs, and further asserts that it has meritorious defenses to the claims alleged in the Complaint and that it would have prevailed had the case proceeded to trial. (*See id.*) Nonetheless, Chase has agreed to settle the case in the manner and upon the terms and conditions set forth in the attached Settlement Agreement. (*Id.*)

III.     **TERMS OF THE SETTLEMENT AGREEMENT**

The key terms of the Settlement Agreement are briefly summarized as follows:

A.     **Class and Subclass Definitions**

The Parties entered into the Settlement Agreement with respect to the following Class and Subclass definitions, as certified by the Court (Dkt. 184):

1.     The "Inability to Verify Class" (the "Class"): All HELOC borrowers nationwide who were parties to the "Schulken HELOC Contract"[2] and whose HELOCs Chase blocked through the 4506-T Program when the customers did not provide either a complete IRS Form 4506-T, paystubs, or both, upon Chase's request.

2.     The "TILA Notice Subclass" (the "Subclass"): All Inability to Verify Class members with the Schulken HELOC Contract to whom Chase sent a notice of suspension stating that Chase's reason for suspending the HELOC was a purported inability to verify the borrower's financial circumstances.

B.     **Settlement Benefits**

Chase agreed to make the following payments to Class and Subclass Members:

1.     Cash Payment to Class Members: All Class Members are entitled to receive a flat payment in the amount of $75 by submitting a claim form containing a sworn declaration that they have incurred damages as a result of their HELOC suspension through Chase's 4506-T Program. (Settlement Agreement, § 3.2.)

Several potential categories of damages are covered by the Settlement, including: (1) insufficient/NSF fees incurred when checks drawn on a HELOC were dishonored following the suspension, (2) appraisal fees, application costs, and other expenses incurred in connection with applying for and/or obtaining a new HELOC, (3) any annual fees paid to a new lender for any

---

[2] The Court defined the "'Schulken HELOC Contract' to include only those [Class] members who signed contracts that (1) arise from heritage WaMu customers, and (2) state that the borrower must provide, upon the lender's request, 'a current financial statement, new credit application, or both.'" (Dkt. 184 at 18.) The Settlement Agreement utilizes this definition.

replacement HELOC, and (4) any other damages resulting from the suspension of the HELOC for which Class Members swear they incurred. (*Id.* § 7.2.)

2.      <u>Automatic Cash Payment to Subclass Members</u>: Chase shall automatically mail a check for $25 to Class Members who also fall within the definition of the Subclass as defined above, without the need for such Subclass Members to submit any further information. If Subclass Members also choose to submit a valid Claim Form swearing on oath that they have incurred damages, Chase will send these Subclass Members a settlement payment of $100 total (the $25 automatic payment plus the $75 available to any Class Member who submits a valid claim form). (*Id.* §§ 3.3, 7.2.)

**C.      Other Relief**

In addition to the settlement benefits discussed above, Chase has agreed to provide the following relief:

1.      <u>Payment of Notice and Administrative Fees</u>: Chase will pay all settlement administration expenses, including without limitation notice expenses and the cost of processing claims.

2.      <u>Compensation to the Class Representatives</u>: Chase has agreed to pay, subject to approval of the Court, an incentive award to the named Plaintiffs, Jeffrey and Jenifer Schulken, in the cumulative amount of $10,000. (*Id.* § 10.3.)

3.      <u>Payment of Attorneys' Fees and Expenses</u>: Under the Settlement Agreement, Chase has agreed not to oppose Class Counsel's request for $613,000 for attorneys' fees and reimbursement of expenses, and agrees that these amounts are reasonable. (*Id.* § 10.1.) The requested fees are subject to Court approval and Class Counsel will provide appropriate support for the requested amount prior to final approval and, consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010), prior to the deadline for filing objections.

**D.      Release**

In exchange for the relief provided above, and upon the entry of a final order approving this Settlement, Chase and each of its related affiliates and entities will be released from any claims, whether know or unknown, arising out of or relating to Chase's HELOC treatment

policies, systems, standards and procedures, including, without limitation, its HELOC account suspensions and reinstatement standards and processes, that relate to Chase's implementation of the 4506-T Program and were or could have been alleged in the Complaint. (*Id.* §§ 1.29-1.31, 4 (containing the full release)).

## IV.   THE PROPOSED SETTLEMENT FALLS WITHIN THE RANGE OF FINAL APPROVAL AND THUS WARRANTS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* Alba & Conte, 4 Newberg on Class Actions §11.25 at 3839 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." Newberg, §11.25 at 3839 (*quoting* Manual for Complex Litigation §30.41 (3d ed. 1995)); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). This hearing is not a fairness hearing. *Id.* Its purpose, rather, is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *Id.* Notice of a settlement should be sent where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement, made by a court on the basis of written submissions and informal presentation from the settling parties. Manual for Complex Litigation, § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. Newberg, §11.25 at 3839.

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor ERISA Litigation,* 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper

deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Further, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A settlement negotiated with the assistance of an experienced private mediator indicates that the settlement was likely reached fairly and provides adequate relief. *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D. N.Y. Sept. 29, 2003). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

Here, the proposed Settlement Agreement is well within the range of possible approval. First, it is presumptively reasonable in light of the process used to achieve it. Second, even without the presumption, the Settlement is reasonable as it conveys adequate cash payments upon Class and Subclass Members. Finally, the Settlement is comparable or superior to the only two other HELOC settlements known to Class Counsel, neither of which had the benefit of adversarial class certification. As such, the instant Settlement Agreement should be preliminary approved.

### A.   This Settlement Enjoys a Presumption of Fairness in Light of the Process Used to Achieve It.

As an initial matter, the fact that the settlement agreement was reached (1) by counsel experienced in similar litigation, (2) through arm's length negotiations, and (3) after relevant investigation and discovery has taken place "creates a presumption that the agreement is fair." *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (internal quotations omitted); *In re Heritage Bond Litig.*, No. 02-ml-1475-RGK, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005); *Hopson v. Hanesbrands Inc.*, No. 08-cv-0844-EDL, 2009 WL 928133 at *7 (N.D. Cal. Apr. 3, 2009).

All three factors strongly favor applying the presumption here. First, as explained above, Class Counsel have prosecuted similar class actions alleging improper HELOC suspensions against other major banks, including Wells Fargo, Citibank, and Bank of America. (Woodrow Decl. ¶ 9.) Indeed, as this Court noted in its Order on Plaintiffs' Revised Motion for Class

Certification, "Plaintiffs are represented by qualified and competent counsel at the firm of Edelson McGuire, LLC." (Dkt. 184, at 19.) The Court further noted that Class Counsel have "demonstrated experience in handling complex consumer class actions" in the area of HELOC litigation. (*Id.*) Likewise, it is undisputed that Chase's counsel, Burke, Warren, MacKay & Serritella, P.C., is a nationally recognized class action defense law firm that represents banks and large financial institutions. (Woodrow Decl. ¶ 8.) In addition to representing Chase in the instant proceeding, Chase's counsel also represents Chase in the multi-district litigation challenging the bank's allegedly unlawful HELOC suspensions based on purported declines in home values. (*See In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, No. 10-cv-03647, MDL 2167, Dkt. 16.) As such, counsel for the Parties are undoubtedly experienced in consumer class actions in general and in the area of HELOC litigation in particular.

Second, the Settlement enjoys a presumption of fairness insofar as it was negotiated over the course of several months, at arm's length, and with the substantial assistance of Judge Wayne Andersen, a nationally respected mediator and a former judge with 19 years of experience on the federal bench resolving complicated consumer class actions. (Woodrow Decl. ¶ 14.) Judge Andersen ensured that there was no collusion of any sort between the Parties. (*Id.* ¶ 15.) In terms of Judge Andersen's involvement in the settlement process, the Parties first attended a formal mediation with him and thereafter continued settlement discussions over the phone and via email with his oversight. (*Id.* ¶ 14,15.) In total, the negotiation process spanned over the course of eight months—this was not a quick sell-out settlement for either Party. (*Id.* ¶ 14-16.) To the contrary, both sides communicated their willingness to go forward with the litigation on multiple occasions during the negotiation process, including at the conclusion of the mediation session. (*Id.* ¶ 14.) Finally, the Parties discussed Class Counsel's attorneys' fees only after an agreement with respect to the Class relief was reached. (*Id.* ¶ 16.)

Third, the negotiations were informed by Class Counsel's comprehensive investigation into the HELOC suspension practices of all the major banks, including Chase, by informal, formal, and confirmatory discovery, and by this Court's order granting Plaintiffs' Motion for Class Certification. Indeed, as stated above, Class Counsel undertook a comprehensive investigation into

Chase's HELOC suspension practices before this lawsuit was filed. (*Id.* ¶¶ 4-5.) In addition, the Parties each propounded and responded to extensive interrogatories and requests for production, and collectively exchanged over 10,400 pages of documents. (*Id.* ¶¶ 10, 12.) Moreover, Plaintiffs deposed two of Chase's top executives responsible for various aspects of the 4506-T Program and Chase, in turn, deposed both Plaintiffs and Plaintiffs' expert witness. (*Id.* ¶¶ 11, 13.) As such, each Party was fully informed of the strengths and weaknesses of the other Party's position.

And finally, this Settlement should be presumed fair and reasonable because it was reached only after this Court certified the instant Class and Subclass in its ruling on Plaintiffs' Motion for Class Certification. (Dkt. 184); *see In re California Micro Devices Sec. Litig.*, 168 F.R.D. 257, 261 (N.D. Cal. 1996) (citing *In re GM Fuel Tank Litigation*, 55 F.3d 768, 788 (3d Cir. 1995) ("The problems unique to pre-certification settlements . . . implicate the adequacy of the class' representation.").

Accordingly, this Settlement, coming after Class Certification, is the product of nearly three years of hard-fought litigation and negotiations between experienced counsel on both sides, at arm's length, overseen by a seasoned mediator. As a result, it rightfully enjoys a presumption of fairness and reasonableness.

**B.      The Settlement Benefits are an Exceptional Result for Settlement Class Members.**

Even without a presumption of reasonableness, the Settlement is demonstrably fair, reasonable, and adequate. The results for the Class and Subclass are exceptional. Because the Schulkens closed their Chase HELOC and refinanced with another bank, this Court held that they are not entitled to seek injunctive relief. (Dkt. 184 at 7.) Therefore, the Settlement Agreement focuses on the potential damages Class Members may have incurred as a result of their HELOC suspension. (*See* Settlement Agreement, § 3.)

First, and as described above, all Class Members – *i.e.*, all Chase borrowers with the Schulken HELOC Contract whose HELOCs were suspended through the 4506-T Program – will be entitled to a cash payment of $75 upon submitting a claim form declaring on oath that they have incurred damages as a result of their HELOC suspension. (*Id.*) The possible categories of

damages that Class Members may have incurred include, without limitation: (1) insufficient/NSF fees incurred when checks drawn on a HELOC were dishonored following its suspension, (2) appraisal fees, application fees and costs, and other expenses incurred in connection with applying for and/or obtaining a new HELOC, (3) any annual fees paid to a new lender for any replacement HELOC, and (4) any other damages that the borrower verifies were incurred. (*Id.* at § 7.2. ) No submission of actual proof of damages is required other than the sworn statement to that effect and the checking of boxes to signify the type of damages incurred. This flat payment of $75 will be sent to Class Members regardless of the actual amount of their damages, even if such damages amount to non-sufficient funds fees, finance charges, and costs incurred when closing a Chase HELOC and opening a new one, like those alleged by the Schulkens in this case. (*See* Fifth Amended Complaint, ¶ 23 (Dkt. 170).) Moreover, Class Counsel's investigation has revealed that the $75 payment is more than sufficient to cover most other categories of damages as well, such as a $50 annual fee paid to the new lender. (Woodrow Decl. ¶ 6.) Accordingly, as a result of this Settlement, most of the Class Members will be compensated wholly for the damages they have incurred as a result of their HELOC suspensions.

Second, all Subclass Members – *i.e.*, those Class Members who received a letter from Chase stating that their HELOC was suspended because Chase was unable to verify their financial circumstances – will automatically receive a check for $25. (Settlement Agreement § 3.3.) Subclass Members will not need to show they incurred any damages and will not have to submit a claim form to receive the Subclass settlement payment. (*Id.*) This payment will likely be a windfall for many of the Subclass Members or will help to further offset damages incurred as a result of their HELOC suspension. It is, therefore, evident that the Settlement provides a reasonable and adequate cash relief for the Class and Subclass Members.

Although Plaintiffs and Class Counsel are confident in the strength of their legal claims and that they would ultimately prevail at trial, they also recognize that litigation is inherently risky. (Woodrow Decl. ¶ 17.) When the strengths of Plaintiffs' claims are weighed against the legal and factual obstacles they face and combined with the complexity of class action practice against experienced defense counsel, it is apparent that the proposed Settlement is in the best

1    interest of the Class and Subclass as it provides immediate and substantial monetary relief. (*Id.*)

2        **C.    The Settlement Is Either Comparable with or Superior to the Only Two Other HELOC Settlements Known to Class Counsel.**

3        Finally, the Court need not judge the fairness, reasonableness, and adequacy of the

4    proposed Settlement against a blank slate—the Settlement achieves superior results for the Class

5    and Subclass Members when compared with the only two other HELOC settlements known to

6    Class Counsel. *See Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-4152-CW (N.D. Cal.,

7    settlement preliminarily approved Jan. 25, 2011); *Greenwald v. AmTrust Fin. Corp.*, No. 09-cv-

8    681596 (Ohio Ct. of Common Pleas, Cuyahoga County, settlement finally approved Dec. 18,

9    2009).[3]

10       First, in *Hamilton*, the plaintiffs alleged that Wells Fargo unlawfully restricted their

11   HELOCs by claiming either that their financial circumstances had worsened or that their home

12   value had significantly declined. (*See* the *Hamilton* settlement agreement, a true and accurate copy

13   of which is attached as Exhibit C.) All five named plaintiffs remained Wells Fargo's HELOC

14   customers at the time of the preliminary approval. (Woodrow Decl. ¶ 9.) The settlement agreement

15   provided for comprehensive injunctive relief in the form of HELOC reinstatements and service

16   enhancements – such as restrictions on the use of outdated automated valuation models and

17   improved HELOC suspension notices – for current HELOC customers of Wells Fargo. (Exhibit C,

18   § 3.1.) Only former customers who closed their HELOCs in response to the bank's decision, paid

19   a deferred origination fee in the process, and who submit valid claim forms, are entitled to a cash

20   award of $150. (*Id.* § 3.3.)

21       Here, in contrast, all Class Members, including current Chase HELOC customers, are

22   eligible for a $75 cash award—not just former customers like the Schulkens. (Settlement

23   Agreement, § 3.2.) In addition, all Subclass Members will automatically receive a $25 cash

24   payment, without submitting a Claim Form and regardless of whether they have incurred any

25

26   _____

27       [3] A true and accurate copy of the *Hamilton* preliminary approval order and a true and accurate copy of the *Greenwald* final approval order are attached as Exhibits E and F, respectively.

28

1    damages as a result of the HELOC suspension. (*Id.* § 3.3.) Such monetary relief is fully

2    comparable – for former customers – to the predominantly injunctive settlement approved by the

3    *Hamilton* court.

4         Second, the instant Settlement is far superior to the *Greenwald* settlement, where the

5    plaintiff alleged on behalf of himself and all residents of Ohio that AmTrust Bank suspended

6    HELOCs based on purported declines in home values without regard for the actual market value

7    of the homes. (*See Greenwald* settlement agreement, a true and accurate copy of which is attached

8    as Exhibit D, Recital A.) The parties entered into a settlement that provided class members with a

9    cash award in the amount of 35% of the annual fee paid while their HELOCs were restricted. (*Id.*

10   § 2.)[4] The bank was also required to issue credit for an unpaid annual fee to a very select group of

11   borrowers. (*Id.*) This is the only relief the *Greenwald* class members were entitled to under the

12   settlement agreement. (*See id.*)

13        Here, the Class and Subclass Members will receive more than a small fraction of an annual

14   fee, which was not charged to customers who were processed through the 4506-T Program.

15   (Woodrow Decl. ¶ 6.) Similarly, Subclass Members will also receive $25 regardless of whether

16   they paid any fees or incurred any damages, while under the *Greenwald* settlement they would

17   have received nothing. It is therefore evident that while both settlements are cash-only settlements,

18   the instant Settlement is much more beneficial to the Class Members.

19        In sum, this Settlement was achieved after this Court certified the Class and Subclass,

20   through arm's length negotiations, and with substantial assistance from an experienced mediator.

21   The Settlement conveys substantial cash benefits upon Class and Subclass Members and

22   potentially represents more than Class Members would have received had the case proceeded to

23   trial. Finally, the Settlement is comparable or superior to the only two HELOC settlements known

24   to Class Counsel. Accordingly, this Settlement easily falls "within the range of possible approval,"

25   _____

26        [4] The *Greenwald* settlement agreement gives an example that if the annual fee amounted to
     $50, the class members would recover $17.50. If the annual fee was $25, the class members would
27   receive $8.75.  If the particular class members were not charged an annual fee, there would be no
     recovery. (*See* Ex. D, n.1.)
28

1   is fair, reasonable and adequate, and should be preliminarily approved.

2   **V.    THE PROPOSED PLAN OF CLASS NOTICE**

3         To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides

4   that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best

5   notice practicable under the circumstances, including individual notice to all members who can be

6   identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*,

7   417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly advises that "[t]he court must direct notice in a

8   reasonable manner to all class members who would be bound by a proposed settlement, voluntary

9   dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood

10  by the average class member." Newberg, § 11:53 at 167. The substance of the notice to the

11  settlement class must describe the nature of the action, the definition of the class to be certified,

12  and the class claims and defenses at issue, as well as explain that settlement class members may

13  enter an appearance through counsel if so desired, request to be excluded from the settlement

14  class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R.

15  Civ. P. 23(c)(2)(B).

16        In this case, the Settlement Agreement contemplates a comprehensive notice plan designed

17  to reach as many potential Class Members as possible. (Settlement Agreement, § 5.) As explained

18  below, it is the best notice practicable under the circumstances and fully comports with due

19  process.

20        **A.    U.S. Mail Notice**

21        Within 30 days of entry of the Order granting preliminary approval of the Settlement

22  Agreement, Chase will send or cause a Notice of Class Action Settlement to be sent to all Class

23  Members via U.S. Mail, directed to the last known address of each Class Member as reflected in

24  Chase's records. (*See* Ex. 1 to the Settlement Agreement.) The direct notice mailing will also

25  include a paper copy of the Claim Form for those Class Members wishing to submit the Claim

26  Form via U.S. Mail. (Settlement Agreement § 5.1(a).)

27        **B.    Internet Publication**

28        Within 14 days of entry of the Order granting preliminary approval of the Settlement

1  Agreement, traditional "long form" notice will be provided on the settlement website at url

2  www.Chase4506THELOCSettlement.com or a comparable url. (*Id.* § 5.1(b).) The long form

3  notice describes the terms of the Settlement and provides a mechanism for the Class Members to

4  download and review both the Settlement Agreement and the Claim Form. (*See* Ex. 2 to the

5  Settlement Agreement.)

6        **C.**     **CAFA Notice**

7       The Settlement Agreement further requires Chase to comply with the requirements of the

8  Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), by serving notice of the proposed

9  Settlement along with all other required documentation to any appropriate state and federal

10  government officials. (Settlement Agreement, § 5.1(c).)

11       With respect to oversight, Chase and/or the Settlement Administrator are required by the

12  Settlement Agreement to provide a declaration prior to the final fairness hearing confirming that

13  the notices were sent in accordance with the Court's anticipated Order granting preliminary

14  approval. (*Id.* § 5.2.)

15       The format and language of each form of notice has been drafted so that it is in plain

16  language, is easy to read, and will be readily understood by the Class and Subclass members. (*See*

17  Exs. 1 & 2 to the Settlement Agreement.) Accordingly, the proposed notice plan comports with

18  Rule 23 and the requirements of Due Process and should be approved by this Court.

19  **VI.**   **CONCLUSION**

20       For the foregoing reasons, Plaintiffs Jeffrey and Jenifer Schulken respectfully request that

21  the Court grant preliminary approval of the proposed Settlement Agreement, approve the form and

22  manner of notice described above, and grant such further relief the Court deems reasonable and

23  just.

24

25

26

27

28

1   Dated: April 27, 2012                    Respectfully Submitted,

2                                            JEFFREY AND JENIFER SCHULKEN,
                                             individually and on behalf of the Class and
3                                            Subclass of similarly situated individuals,

4

5                                             /s/ Steven L. Woodrow
                                             One of Plaintiffs' Attorneys

6

7
    SEAN REIS (SBN 184004)
8   sreis@edelson.com
    EDELSON MCGUIRE, LLP
9   30021 Tomas Street, Suite 300
    Rancho Santa Margarita, California 92688
10  Telephone: (949) 459-2124
    Facsimile: (949) 459-2123
11

12  JAY EDELSON (*Pro Hac Vice*)
    jedelson@edelson.com
13  STEVEN L. WOODROW (*Pro Hac Vice*)
    swoodrow@edelson.com
14  EVAN M. MEYERS (*Pro Hac Vice*)
    emeyers@edelson.com
15  EDELSON MCGUIRE, LLC
    350 North LaSalle, Suite 1300
16  Chicago, IL 60654
    Telephone: (312) 589-6370
17  Facsimile: (312) 589-6378
18

19  *ATTORNEYS FOR PLAINTIFFS AND THE CLASS*

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 27, 2012, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: April 27, 2012                              EDELSON MCGUIRE, LLP

                                                    By:    /s/ Sean P. Reis
                                                           Sean P. Reis